# EXHIBIT A

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID GROBER;<br>MOTION PICTURE MARINE<br><br>Plaintiffs,<br><br>v.<br><br>MAKO PRODUCTIONS, INC.;<br>AIR SEA LAND PRODUCTIONS, INC.;<br>CINEVIDEO TECH, INC.;<br>SPECTRUM EFFECTS, INC.;<br>OPPENHEIMER CINERENTAL, LLC.;<br>BLUE SKY AERIALS, INC.;<br>JORDAN KLEIN, SR.; and<br>JORDAN KLEIN, JR.<br><br>Defendants. | CASE NO. CV 04-08604 SGL (OPx)<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION |

This matter is before the Court on the motion to dismiss for lack of personal jurisdiction brought by defendants Air Sea Land Productions, Inc., CineVideoTech, Inc., Oppenheimer Cine Rental, LLC., Jordan Klein, Sr., and Jordan Klein, Jr. As set forth herein, the Court **GRANTS** the motion as to defendants Oppenheimer Cine Rental, LLC., Jordan Klein, Sr., and Jordan Klein, Jr., and **DENIES** the motion as to defendants Air Sea Land Productions, Inc., and CineVideoTech, Inc.

**I. Background**

Mako Products, Inc. ("Mako") developed and owns the MakoHead stabilizing platform system, ("MakoHead"), which it rents for use in movie and television

production. (Pl. Mot. Dismiss, at 5). Plaintiffs David Grober ("Grober") and Motion Picture Marine (hereafter referred to collectively as "plaintiffs") allege that the MakoHead infringes on their patent rights. (Id.).

Defendants Jordan Klein, Jr. and Jordan Klein, Sr. (hereafter referred to collectively as "the Klein defendants" or "the Kleins") are the only two shareholders of Mako, a Florida corporation with its only place of business in Florida, owning a 90% and 10% share of Mako respectively. (Supp. Grober Decl., Ex. QQ, at 18; Klein, Sr. Decl., ¶ 3). The Klein defendants are both on the board of directors of Mako and attend board meetings. (Klein, Jr. Decl., ¶ 4; Klein, Sr. Decl., ¶ 4). Further, the Kleins are listed as the only two "officer/director[s]" in Mako's corporate records with the state of Florida. (Pl. Decl., Ex. G, at 33). The Kleins performed demonstrations of the MakoHead at a trade show in California in 2004 "for the sole purpose of promoting the MakoHead product." (Klein, Jr. Decl., ¶ 5; Klein Sr. Decl., ¶ 5). Jordan Klein, Jr. also performed a demonstration of the device at the Academy Awards Ceremony in California in 2004. (Grober Decl., ¶ 2; Pl. Opp., Ex. B, at 16). Plaintiffs contend that the Klein defendants were and continue to be highly involved in all aspects of the MakoHead's development, manufacture, and marketing. (Pl. Supp. Opp., at 3-5).

Defendants CineVideoTech, Inc. ("CVT"), Air Sea Land Productions, Inc. ("ASL"), and Oppenheimer Cine Rental, LLC. ("Oppenheimer") (hereinafter referred to collectively as "the rental house defendants") are rental houses that rent hundreds of products, including the MakoHead, to the movie and television industry. (Pl. Mot. Dismiss, at 5). CVT is incorporated and has its principle place of business in Florida. (Id. at 41). ASL is a New York corporation with its principle place of business in New York. (Id. at 37). Representatives from both businesses aver that these corporations have "never rented, sold, or offered to rent or sell" the MakoHead in California. (Id. at 37, 41). However, plaintiffs supplied CVT invoices for MakoHead rentals which list California shipping addresses (as opposed to billing

2

addresses, which are listed separately). (Confid. Lauson. Decl., Ex. C, at 40-46). CVT President Egon Stephen, Jr. ("Stephen") avers that these rentals occurred outside of California and were used in jobs outside of California. (D. Reply, Ex. B, at 2).

Similarly, plaintiffs have supplied ASL invoices for the MakoHead listing only California addresses, some of which reference shipping costs ($900 for 2-day shipping in one instance). (Confid. Lauson Decl., Ex. B, at 10-18). However, the invoices do not specify whether the addresses are for billing or shipping. (Id. at 10-18). Moreover, at least one invoice references a "shoot" location outside of California, while none of the invoices reference a California "shoot" location. (Id. at 10, 14-15, 17).

Similarly, a representative of Oppenheimer has stated under oath that Oppeheimer is located in Washington and that he has personally "never used the MakoHead in the State of California." (Id. at 28). However, he does not explicitly state that he and his company have never <u>rented</u> the MakoHead in California. (Id.). Additionally, as part of its lease agreement, Oppenheimer advertises the MakoHead twice a year in ICG, a nation-wide trade publication based in California.[1] (Grober Decl., ¶ 33-34; Schewe Decl., Ex. J, at 116). The advertisement lists Oppenheimer as the "North West" contact for the MakoHead and lists two other "West Coast" contacts. (Grober Decl., Ex. Q, at 58). The same contacts are listed on Mako's website. (Grober Decl., ¶ 30). Further, plaintiffs have supplied receipts for shipments of unspecified items between Oppenheimer and defendant Spectrum Effects, Inc. of California. (Schewe Decl., Ex. J, at 117-18). Oppenheimer has also exhibited other non-MakoHead products at a California trade show. (Grober Decl.,

---

[1] Grober avers in his declaration that Peter McCarthy, ICG's advertising representative, stated to him that ICG distributes 70% of its magazines in California, 20% in New York, and 10% in Chicago. (Grober Decl., ¶ 34). However, this information is inadmissible hearsay and will not be considered by the Court.

3

¶ 35).

One of Mako's standard equipment lease agreements specifies that each lessee must "actively market the Mako equipment . . . in its territory." (Pl. Opp., Ex. F, at 27). However, the agreement also states that the lessee ". . . is an independent contractor and *is not an agent* or employee of [Mako]." (Id. at 29) (emphasis added). Plaintiffs have provided numerous emails and faxes between the Kleins and the rental house defendants in which they discuss pricing terms for third party MakoHead rentals and coordinate shipments of MakoHead units between each other. (Confid. Lauson Decl., Ex. B, at 16, 19, 20, 22-34, 36, 37, 39). However, the emails which make reference to California were not sent to or from Oppenheimer and do not mention Oppenheimer. Id.

The Klein defendants and the rental house defendants have moved to dismiss this lawsuit against them for lack of personal jurisdiction.

## II. Discussion

A defendant may move to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). In a patent infringement action such as this, Federal Circuit precedent controls on the issue of personal jurisdiction, not the law of the regional circuit. See Inamed Corp. v. Kuzmak, 249 F.3d 1356, 1359 (Fed. Cir. 2001); Akro Corp. v. Luker, 45 F.3d 1541, 1543 (Fed. Cir. 1995). If, as in this case, the court decides not to hear evidence, the plaintiff must establish a prima facie case for jurisdiction in order to defeat the motion. Elecs. For Imaging, Inc. v. Coyle, 340 F.3d 1344, 1350 (Fed. Cir. 2003). In analyzing plaintiff's showing, the district court must accept the uncontroverted allegations in the plaintiff's complaint as true and resolve any factual conflicts in the record in the plaintiff's favor. Id. at 1349.

Since there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which it sits. 3D Sys. v. Aarotech Lab., 160 F.3d 1373, 1376-77 (Fed. Cir. 1998). "Because California's long-arm

1  jurisdictional statute is coextensive with federal due process requirements, our only
2  inquiry is whether or not exercising personal jurisdiction over the defendants in
3  California comports with federal due process." Id. at 1377. Under the United States
4  Constitution, a district court may only exercise personal jurisdiction where the
5  defendant has established "minimum contacts" with the forum state "such that the
6  exercise of jurisdiction would not offend traditional notions of fair play substantial
7  justice." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291-292 (1980)
8  (citing International Shoe Co. v. Wash., 326 U.S. 310, 316 (1945)).

**A. Oppenheimer and the Klein Defendants**

Grober contends that Oppenheimer has sufficient contacts with the state of California to warrant exercising general jurisdiction. Where a foreign defendant's contacts with the forum state are sufficiently "continuous and systematic," they may give rise to personal jurisdiction over the party with respect to claims unrelated to those contacts. See Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 448 (1952). However, courts are reluctant to find general jurisdiction, even where the contacts are quite extensive. See Amoco Egypt Oil Co. v. Leonis Navigation Co., 1 F.3d 848, 851 n.3 (9th Cir. 1993).

Plaintiffs have failed to establish a prima facie case that Oppenheimer has sufficiently continuous and systematic contacts with the forum state to warrant the exercise of general jurisdiction. Oppenheimer is located outside of California. Based on the evidence before the Court, Oppenheimer's only contacts with the forum state consist of several shipments of unspecified items between themselves and defendant Spectrum Effects, Inc. of California, one or more advertisements in a nationally-distributed magazine based in California, their exhibition of unrelated products at a California trade show, and Mako's website which lists Oppenheimer as a contact. These contacts are minimal and cannot possibly warrant general jurisdiction. Stairmaster Sports/Med. Prods., Inc. v. Pacific Fitness Corp., 916 F. Supp. 1049 (W.D. Wash. 1995), aff'd, 78 F.3d 602 (Fed. Cir. 1996) (finding that the

1 court could not exercise general jurisdiction where defendant's only contacts with
2 the forum state were isolated visits by defendant's agents and products shipped into
3 forum which were unrelated to suit and constituted only three percent of total sales);
4 Congoleum Corp. v. DLW Aktiengesellschaft, 729 F.2d 1240, 1242-43 (9th Cir.
5 1984) (holding that a foreign corporations marketing efforts in the forum state,
6 including solicitation of orders, promotion of products through mail and showroom
7 displays, and attendance at trade shows and sales meetings, were insufficient
8 contacts to assert general jurisdiction).  There has been no showing that
9 Oppenheimer derives a significant percentage of its business through transactions
10 with California.  Rather, the record is barren on this question.

11       Grober also contends that Oppenheimer and the Kleins have sufficient
12 contacts with the state of California to justify specific jurisdiction.  In analyzing
13 specific personal jurisdiction over a nonresident defendant, the court considers
14 whether: " (1) the defendant purposefully directed its activities at residents of the
15 forum state, (2) the claim arises out of or relates to the defendant's activities with
16 the forum state, and (3) assertion of personal jurisdiction is reasonable and fair."
17 Elecs. For Imaging, Inc. v. Coyle, 340 F.3d 1344, 1350 (Fed. Cir. 2003).  The
18 plaintiff has the burden of proving the first two parts of the test. Id.  Upon such a
19 showing, the burden shifts to the defendant to prove that personal jurisdiction is
20 unreasonable. Id.  The Federal Circuit has previously held that this allows the court
21 to subject companies lacking a physical presence in the state to personal
22 jurisdiction where they ship infringing products into the state. N. Am. Philips Corp.
23 v. Am. Vending Sales, Inc., 35 F.3d 1576, 1580 (Fed. Cir. 1994).

24       Plaintiffs fail to establish a rebuttable presumption that their claims against
25 Oppenheimer arise out of Oppenheimer's contacts with the forum state.  Plaintiffs
26 have not provided any evidence of specific instances where Oppenheimer has
27 shipped or rented the MakoHead in California.  Instead, plaintiffs draw attention to
28 Marty Oppenheimer's failure to directly deny renting or shipping the device to a

1 California Resident (as opposed to "using" the device in California). Pl. Supp. Opp.
2 at 2, 3. However, such silence is not sufficient to prove that Oppenheimer did so.
3 Plaintiffs' also provide evidence that Oppenheimer advertised the MakoHead twice
4 per year in ICG, a nationally-distributed trade publication based in California.
5 However, this magazine was distributed across America, not merely in California
6 and thus, does not warrant the exercise of specific jurisdiction. See Cascade Corp.
7 v. Hiab-Foco AB, 619 F.2d 36, 37-38 (9th Cir. 1980) (Holding that an ad in a
8 national publication available in the forum state was not a sufficient basis for
9 specific jurisdiction). See Cf. Quantum Corp. v. Sony Corp., 16 USPQ2d 1447,
10 1450 (N.D. Cal. 1990) (Holding that merely displaying a product for promotional
11 purposes does not constitute an infringing use). Further, the advertisement was not
12 an attempt by Oppenheimer to solicit California business, as it merely lists
13 Oppenheimer as a North West contact. California customers would presumably
14 contact one of the two West Coast contacts also listed in the advertisement.
15 Similarly, the shipments between Oppenheimer and California defendant Spectrum
16 Effects are of no moment. There is no evidence to suggest that these shipments
17 were of the MakoHead, rather than any of the hundreds of other products
18 Oppenheimer offers for rent. Thus, the evidence presented is insufficient to warrant
19 the exercise of specific jurisdiction over Oppenheimer based on the three part test
20 from Elecs. For Imaging.

21 Likewise, plaintiffs allege that the Kleins have established the requisite
22 minimum contacts for specific jurisdiction by performing a demonstration of the
23 MakoHead at a California trade show and at the Academy Awards Ceremony in
24 California, thereby infringing on plaintiffs' patent rights. Assuming these activities
25 are grounds for specific jurisdiction, the Klein defendants are still protected by the
26 fiduciary shield doctrine. This doctrine shields corporate officers from personal
27 jurisdiction where their only relevant contacts with the forum state result from
28 activities done for their corporation. See Kransco Mfg., Inc. v. Markwitz, 656 F.2d

7

1376, 1379 (9th Cir. 1981) (citation omitted). Plaintiffs aver that both of the Kleins are officers of Mako. Similarly, the Kleins state that they are on the board of directors and regularly attend board meetings.

Further, defendant's uncontested evidence indicates that the Kleins attended the California trade show for the sole purpose of promoting the MakoHead on behalf of Mako. Intuitively, performing promotional demonstrations of a company product is a typical corporate responsibility of an officer or director. Plaintiffs also assert that their evidence shows that the Kleins were heavily involved in developing and marketing the MakoHead. Assuming these activities could give rise to personal jurisdiction, they also fall within the Klein's responsibilities as officers or directors of the company. Therefore, the Kleins are not subject to personal jurisdiction in California based on these activities.

Plaintiffs argue that the Court should disregard these corporate protections because Mako Products, Inc., is an alter ego of the Kleins and holding otherwise would sanction injustice. Because this issue is not unique to patent law, the Federal Circuit applies the law of the forum state to determine whether a corporation is the alter ego of an individual. Wechsler v. Macke Int'l Trade, Inc., 486 F.3d 1286, 1295 (Fed. Cir. 2007). In California, the acts and obligations of a corporation may be legally recognized as those of a particular person where two elements are satisfied: (1) "[T]he corporation is not only influenced and governed by that person", but rather "there is such a unity of interest and ownership that the individuality, or separateness, of the said person and corporation has ceased; and (2) the particular circumstances are such that "an adherence to the fiction of the separate existence of the corporation would . . . sanction a fraud or promote injustice." Minifie v. Rowley, 187 Cal. 481, 487 (1921). However, the court should not lightly disregard the corporate form; a corporation's veil may not be pierced merely because it has only one owner. See Nelson v. Adams USA, Inc., 529 U.S. 460, 470-71 (2000).

Although plaintiffs have presented evidence of the unity of interest and ownership between Mako and the Kleins, they have failed to produce any evidence that the adherence to the corporate fiction would sanction a fraud or promote injustice. The affidavits and discovery materials in no way show that Mako and the Kleins share bank accounts, that the Kleins have transferred assets from Mako's accounts, or that Mako is otherwise undercapitalized or insolvent such that it would be unable to pay any judgment that may be entered against it in this case. Cf. Sys. Div., Inc. v. Teknek Elecs., Ltd., 253 Fed. App. 31, 34-35 (refusing to overturn the exercise of personal jurisdiction based on the alter ego theory where the owners fraudulently transferred assets from the original defendant corporation, leaving it undercapitalized and insolvent). Because plaintiffs have failed to establish a prima facie case with respect to the second element, the Court rejects the alter ego theory.

In another argument, plaintiffs contend that all the defendants participated in a conspiracy to willfully infringe plaintiffs' patent, and that the Court should exercise jurisdiction over Oppenheimer and the Kleins based upon their co-conspirators' contacts with the forum state. However, plaintiffs have admittedly failed to offer even a single Federal Circuit case where conspiracy has been used as a basis for personal jurisdiction. Additionally, they have not offered any authority showing that patent infringement may be used as a basis for conspiracy. For its part, the Court has not found any such authority. Moreover, plaintiffs cite several cases, including one from within the Ninth Circuit, which reject their assertion that personal jurisdiction may be acquired based on the forum-related conduct of any single conspirator. See Kipperman v. McCone, F.Supp. 860 (N.D. Cal. 1976). Facing this complete lack of supporting precedent, the Court rejects plaintiffs' conspiracy argument for personal jurisdiction.

Plaintiffs also contend that Oppenheimer and the Kleins are subject to personal jurisdiction based on agency. Plaintiffs fail to specify which defendant is

9

the principle and which is the agent.  Rather, they generally allege that defendants are agents of one another and therefore, the actions of the defendants should be imputed to each other.  For the purposes of personal jurisdiction, the actions of an agent are attributable to the principle.  Sher v. Johnson, 911 F.2d 1357, 1362 (9th Cir. 1990).  In determining if an agent relationship exists, the court considers three essential characteristics:

> (1) an agent or apparent agent holds a power to alter the legal relations between the principle and third persons and between the principle and himself;
>
> (2) an agent is a fiduciary with respect to matters within the scope of the agency; and
>
> (3) a principle has the right to control the conduct of the agent with respect to matters entrusted to him.

Garlock Sealing Techs., LLC v. Nak Sealing Techs. Corp., 148 Cal. App. 4th 937, 964 (Ct. App. 3 Dist., 2007) (internal quotation and citation omitted).

In analyzing the similar situation of an intermediary receiving goods from another for resale to a third party, a California appellate court has held that the intermediary is not thereby the other's agent in the transaction.  Id. (internal citation and quotations omitted).  "Whether he is an agent for this purpose or is himself a buyer depends upon whether the parties agree that his duty is to act primarily for the benefit of the one delivering the goods to him or is to act primarily for his own benefit."  Id. (citing Restatement (Second) of Agency § 14(J) (1958)).

Plaintiffs have failed to make a prima facie showing that any defendant owes a fiduciary duty to any other with regards to the MakoHead product.  Plaintiffs offer proof of cooperation between the defendants, such as email conversations where they discuss third-party rental terms and coordinate the shipment of MakoHead units between each other.  However, this does not create a presumption that any defendant owes a duty to act primarily for the benefit of any other defendant.

Indeed, each defendant is a distinct business entity, suggesting that their obligation is to act in their own interest. Plaintiffs also point to a provision in Mako's general rental agreement requiring the lessee to "actively market the Mako equipment . . . in its territory." Pl. Opp., Ex. F, at 27. However, the very same agreement states that the lessee "is an independent contractor and *is not an agent* or employee of [Mako]." Id. at 29 (emphasis added). Thus, plaintiffs have failed to meet their burden with regard to the agency theory of personal jurisdiction.

In a similar argument, plaintiffs allege that all defendants are partners and that this somehow warrants personal jurisdiction. The Ninth Circuit has held that the contacts of partners may be imputed to the partnership for personal jurisdiction purposes. Sher v. Johnson, 911 F.2d 1357, 1365 (9th Cir. 1990). However, the opposite is not true: the contacts of the partnership may not be imputed to individual partners. Id. at 1366. Thus, there is no basis for jurisdiction over the individual defendants based on the actions of this alleged partnership.

For the aforementioned reasons, the Court **GRANTS** the motion to dismiss as to defendants Oppenheimer, Jordan Klein, Jr., and Jordan Klein, Sr.

### B. CVT and ASL

Plaintiffs' affidavits are sufficient to create a presumption that CVT and ASL purposefully directed their activities at the state of California. Several CVT invoices for MakoHead rentals list separate California billing and shipping addresses, implying that CVT purposely rented and shipped the MakoHead to customers located in the forum state. Similarly, ASL's invoices list customers with single California addresses (rather than separate billing and shipping addresses). One of these includes a $900 estimate for two-day shipping, suggesting that the rental was shipped. It is reasonable to presume that the MakoHead referenced on this form was rented and shipped to a customer located at the only address listed. Representatives from CVT and ASL aver that they "never rented, sold, or offered to rent or sell" the MakoHead in California. They claim that the referenced rentals took

11

place out of state and were used on out-of-state shoots. However, the Court does not consider these explanations, as all factual disputes in the affidavits are resolved in the plaintiff's favor. Plaintiffs' claims against CVT and ASL clearly arise out of these alleged rentals, as plaintiffs contend that renting the MakoHead infringes on their patent rights. Thus, plaintiffs have established the first and second parts of the personal jurisdiction test from Elecs. For Imaging for these defendants.

Regarding the third part of the test, neither CVT nor ASL has demonstrated that personal jurisdiction is unreasonable or unfair. The California forum will surely inconvenience both defendants by forcing them to transport witnesses and evidence from their out-of-state locations. However, the law is clear that even a single contact with a forum state can give rise to personal jurisdiction where it directly and substantially relates to the plaintiff's claim. See Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc., 148 F.3d 1355, 1359 (Fed. Cir. 1998) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 & n. 18 (1985)).

Accordingly, the Court **DENIES** the motion to dismiss as to defendants CVT and ASL.

### C. Request to Stay Motion to Allow Further Discovery

In the event the Court does not deny the motion to dismiss, plaintiffs request that the Court stay the motion to allow further discovery. (Pl. Opp., at 16). Defendants filed their first motion to dismiss for lack of personal jurisdiction on January 14, 2005. Plaintiffs amended their complaint to add defendants Oppenheimer and the Kleins on September 24, 2007; one month before defendants filed the current motion to dismiss for lack of personal jurisdiction (October 29, 2007) and three-and-a-half months before plaintiffs filed the supplemental opposition (February 4, 2008). In the supplemental opposition, plaintiffs state that "[d]iscovery has yet to open as to new defendant Oppenheimer." (Pl. Supp. Opp., at 15).

In his declaration, Grober states that he found Mako's website and references a printout of the website's contacts page. (Grober decl., ¶ 30). This page lists Oppenheimer as a contact for the MakoHead. (Grober decl., Ex. N, at 52). The printout bears a printing date of July 2, 2007. Id.

The court has broad discretion in granting or denying discovery to aid in determining whether it has in personam jurisdiction. Wells Fargo & Co. v. Wells Fargo Express Co., 556 F.2d 406, 430 n.24 (9th Cir. 1977) (citation omitted). Such a refusal is not an abuse of discretion when "it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction." Id. (citation omitted). However, discovery may be granted where the pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary. Id.

With regard to the Kleins, the Court finds that further discovery will not reveal a basis for jurisdiction. Plaintiffs seek additional discovery of "highly relevant documents for jurisdictional purposes," including contracts between Mako and the rental house defendants, and Mako Head advertising. (Pl. Opp., at 16-17). However, as explained previously, marketing the MakoHead is well within the Klein's corporate responsibilities and does not justify piercing the corporate veil. Similarly, there is no basis for concluding that additional contracts between Mako and the rental houses will establish a fiduciary duty, as required by the agency theory. The contracts already produced suggest the opposite, as they explicitly deny that the rental houses are agents of Mako. (Pl. Opp. Ex. E, at 23; Ex. F, at 29). Moreover, plaintiffs have had ample opportunity to obtain discovery materials with respect to the Kleins indirectly through discovery with respect to Mako. Accordingly, the Court declines to stay the motion to dismiss as to the Klines.

Likewise, the Court refuses to allow additional discovery relevant to personal jurisdiction over Oppenheimer. Grober states that he found Mako's website and has produced a printout, bearing a printing date of July 2, 2007, which lists

Oppenheimer as a contact. Thus, plaintiffs must have known that Oppenheimer was renting the MakoHead at least seven months prior to filing their supplemental opposition on February 4, 2008. This afforded plaintiffs reasonable time to seek discovery through third party requests and other discovery devices. Further, defendants first moved to dismiss for lack of personal jurisdiction over three years prior to the submission of the motion at issue. Judicial efficiency begs that this matter be put to rest.

### III. Conclusion

For the aforementioned reasons, the Court **GRANTS** the motion to dismiss for lack of personal jurisdiction as to defendants Oppenheimer Cine Rental, LLC., Jordan Klein, Jr., and Jordan Klein, Sr., and **DENIES** the motion as to defendants Air Sea Land Productions, Inc., and CineVideoTech, Inc.

DATE: August 29, 2008

STEPHEN G. LARSON
UNITED STATES DISTRICT JUDGE