James E. Doroshow (SBN 112920)
    jdoroshow@foxrothschild.com
Ashe Puri (SBN 297814)
    apuri@foxrothschild.com
FOX ROTHSCHILD LLP
1800 Century Park East, Suite 300
Los Angeles, CA 90067-1506
Telephone:  310-598-4150
Facsimile:   310-556-9828

Attorneys for Defendants,
OPPENHEIMER CINE RENTAL, LLC, OPPENHEIMER CAMERA PRODUCTS, INC., and MARTY OPPENHEIMER

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VOICE INTERNATIONAL, INC., a California corporation; DAVID GROBER, an individual,<br><br>            Plaintiffs,<br><br>v.<br><br>OPPENHEIMER CINE RENTAL, LLC, a Washington corporation; OPPENHEIMER CAMERA PRODUCTS, INC., a Washington corporation; MARTY OPPENHEIMER, an individual; and DOES 1-10, inclusive,<br><br>            Defendants. | Case No.: CV-15-08830-JAK-KS<br><br>Hon. Judge John A. Kronstadt<br><br>**DEFENDANTS' *EX PARTE* APPLICATION FOR A COURT ORDER TO: (1) QUASH THIRD-PARTY SUBPOENAS; (2) IN THE ALTERNATIVE, TO ISSUE A PROTECTIVE ORDER LIMITING THIRD-PARTY DISCOVERY; AND (3) IMPOSE MONETARY SANCTIONS AGAINST PLAINTIFFS AND THEIR COUNSEL; DECLARATION OF JAMES E. DOROSHOW IN SUPPORT THEREOF; [PROPOSED ORDER] FILED UNDER SEPARATE COVER**<br><br>Complaint filed:    11/12/15<br><br>Date:    TBD<br>Time:    TBD<br>Courtroom:    750 |

*EX PARTE APPLICATION*

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that Defendants Oppenheimer Cine Rental, LLC, Oppenheimer Camera Products, Inc., and Marty Oppenheimer (collectively, "Defendants") hereby apply *ex parte* for an Order from this Court for the following relief: i) to quash ten third-party subpoenas recently served by Plaintiffs Voice International, Inc. and David Grober (collectively, "Plaintiffs") in violation of two court orders (Dkt. Nos. 26, 28) and a Joint Stipulation between the parties agreeing to limited discovery for purposes of a pending jurisdiction motion (Dkt. No. 27), and which do not authorize third-party discovery; (ii) in the alternative, at a minimum, to issue a protective order ordering that the subpoenaed third-parties need not disclose or produce any information or documents that are irrelevant to jurisdiction or which are in any event duplicative of information and documents already sought in discovery from Defendants; and iii) impose monetary sanctions against Plaintiffs and their counsel for their wrongful conduct in propounding third-party subpoenas in clear violation of two court orders (Dkt. Nos. 26, 28) and the parties' own Stipulation whereby they agreed to limit jurisdictional issues (Dkt. No. 27). This Application is and will be based on this Notice of Application, the attached Memorandum of Points and Authorities in support thereof, the accompanying Declaration of James E. Doroshow and attached exhibits, the accompanying Proposed Order and all papers, pleadings, and records on file in this action.

Pursuant to Local Rule 7-19.1, prior to filing this Application, Defendants' counsel James E. Doroshow conferred with Plaintiffs' counsel Robert Lauson on April 18, 2016 regarding the issues raised in this *ex parte* Application, but Plaintiffs' counsel indicated he opposed this *ex parte* Application.

*EX PARTE APPLICATION*

1  Dated: April 28, 2016          Respectfully submitted,

2                                  FOX ROTHSCHILD LLP

3

4                           By  /s/ Ashe Puri
                                James E. Doroshow
                                Ashe Puri
5                               Attorneys for Defendants,
                                OPPENHEIMER CINE RENTAL, LLC,
6                               OPPENHEIMER CAMERA PRODUCTS,
                                INC., AND MARTY OPPENHEIMER

# MEMORANDUM OF POINTS AND AUTHORITIES

Defendants Oppenheimer Cine Rental, LLC, Oppenheimer Camera Products, Inc., and Marty Oppenheimer ("Defendants") submit the following Memorandum of Points and Authorities in support of their *ex parte* Application for an order from this Court for the following relief:

i) To quash ten third-party subpoenas recently served by Plaintiffs Voice International, Inc. and David Grober ("Plaintiffs") in violation of two Court orders (Dkt. Nos. 26, 28) and the parties' Joint Stipulation (Dkt. No. 27) which limit discovery in this action at this time to jurisdictional discovery from Defendants, and do not authorize Plaintiffs to conduct any third-party discovery on jurisdictional issues or otherwise;

ii) In the alternative, at a minimum, to issue a protective order ordering that the subpoenaed third-parties need not disclose or produce any documents or information that are irrelevant to jurisdictional issues or duplicative of information or documents already sought from Defendants; and

iii) To impose monetary sanctions against Plaintiffs and their counsel for propounding ten third-party subpoenas in clear violation of two Court orders and a Stipulation between the parties which do not authorize third-party discovery.

## I. BACKGROUND.

On December 10, 2015, Defendants moved to dismiss the Complaint in this action for lack of personal jurisdiction ("Motion to Dismiss"). Dkt. No. 16.[1] On March 14, 2016, this Court heard oral argument on Defendants' Motion to Dismiss. On March 14, 2016, following oral argument, the Court entered an order continuing

---

[1] As shown in Defendants' Motion to Dismiss, this is not the first time Plaintiffs have sued Defendants in this state. In fact, in 2008, United States District Judge Larson previously dismissed Defendants on the grounds Defendants were not subject to suit (jurisdiction) in California. The Federal Circuit affirmed Judge Larson's Order on July 30, 2012. *See Grober v. Mako Products, Inc.*, 686 F.3d 1335, 1346-47 (Fed. Cir. 2012).

the Motion to Dismiss until Plaintiffs completed certain limited jurisdictional discovery (the "March 14th Order"). *See* Exhibit A attached hereto. At the same time, Defendants understood that the Court had ordered all other discovery in this action stayed until the Motion to Dismiss was decided. *Id.*

Pursuant to the Court's March 14th Order, Plaintiffs were authorized only to serve Defendants with document requests and a Rule 30(b)(6) deposition notice limited to jurisdictional issues. Beyond this, Plaintiffs were not permitted to conduct any further discovery, jurisdictional or otherwise, including any third-party discovery. *Id.*

While inviting the parties to submit their own proposed discovery schedule for the Court's consideration, the Court proposed in its March 14th Order that the parties complete jurisdictional discovery on an extremely expedited basis. Under the terms of the March 14th Order, Plaintiffs were otherwise required to serve their document requests and 30(b)(6) Deposition Notice by March 21, 2016, one week from the date of the March 14th Order. The Court also proposed shortening the amount of time by which Defendants could respond to Plaintiffs' document requests. According to the March 14th Order, Defendants would be required to respond to Plaintiffs' document requests by April 4, 2016, two weeks from the date of service of the document requests, rather than the normal thirty days from the date of service as permitted under the Federal Rules. The other deadlines proposed by the Court also proceeded on a very expedited schedule. For example, the Court proposed that Defendants produce their documents in response to Plaintiffs' document requests by April 18, 2016, two weeks from the date that Defendants' document requests responses were due. The Court also proposed that Plaintiffs conduct their Rule 30(b)(6) deposition of Defendants no later than May 2, 2016, within two weeks after Defendants' produced responsive documents. *Id.* The Court further proposed that Plaintiffs submit a supplemental brief on the Motion to Dismiss by May 16, 2016 (within two weeks after

Plaintiffs received Defendants' documents), and that Defendants thereafter respond to Plaintiffs' supplemental brief by May 23, 2016.

On March 17, 2016, three days after the Court entered its March 14th Order, Plaintiffs wrote to Defendants requesting extensions of the discovery deadlines found in the Court's March 14th Order. At that time, Plaintiffs claimed that they had a scheduling conflict due to an upcoming trial in the *Grober v. Mako* lawsuit, and that because of this conflict, Plaintiffs required an extension of the discovery deadlines this Court had proposed. *See* Declaration of James E. Doroshow ("Doroshow Decl.") at ¶ 4, Ex. 1. Specifically, according to Plaintiffs' counsel, "we request short delays in the jurisdictional discovery, for purposes of us completing the *Grober v. Mako* trial May 16-20." *Id.* In the same correspondence, Plaintiffs requested a *four-week extension* to serve their document requests and a *six-week extension* to serve their Rule 30(b)(6) Deposition Notice. *Id.*

Having done so, Plaintiffs never mentioned to Defendants that they were actually asking to extend the discovery schedule so that they could expand discovery beyond that which the parties had agreed to and that which the Court had ordered. In fact, as discussed below, Plaintiffs never revealed their true motive for extending the Court's proposed discovery deadlines until a few weeks after the Court already approved the parties' request for an extension of the Court's proposed discovery deadlines. Blind-sided by Plaintiffs' undisclosed true motives, and relying on Plaintiffs' false representation that Plaintiffs and their counsel allegedly had a scheduling conflict with the discovery deadlines proposed in the March 14th Order, Defendants agreed in good faith to Plaintiffs' request to extend the jurisdictional discovery deadlines. *See* Doroshow Decl. at ¶ 5, Ex. 2.

Thus, on March 18, 2016, the parties submitted a Joint Stipulation and Proposed Order to this Court requesting that the discovery deadlines be extended based on the later dates proposed by Plaintiffs (the "Parties' Joint Stipulation"). *See* Exhibit B attached hereto (Dkt. No. 27). In this Stipulation, consistent with what they had told

defense counsel, Plaintiffs specifically represented to the Court that they were seeking to extend the discovery deadlines "in view of Plaintiffs' upcoming trial in *Grober v. Mako Products.*" *See id.* At the same time, Plaintiffs never informed the Court about their true intention of using this extension to the discovery deadlines to serve third-party discovery. On March 28, 2016, the Court entered an Order adopting the discovery deadlines proposed by Plaintiffs. *See* Exhibit C attached hereto (Dkt. No. 28).

On April 15, 2016, <u>without ever conferring with Defendants and less than three weeks after the Court approved the Parties' Stipulation agreeing to extend the discovery deadlines</u> (*see* Doroshow Decl. at ¶ 8), Plaintiffs then served ten third-party subpoenas. Prior to doing so, Plaintiffs never sought leave from this Court asking to modify either the March 14th or the March 28th Orders. *Id.* At the same time, Plaintiffs also never asked Defendants whether they would agree to modify the Parties' Joint Stipulation to allow third-party discovery. *Id.*

The names of the ten third-parties subpoenaed by Plaintiffs now include: (i) FedEx Ground Package System Inc.; (ii) Federal Express (Ground Division); (iii) Federal Express (Express Division); (iv) United Parcel Service, Inc.; (v) Qwest Corporation *dba* Centurylink; (vi) Pacific Bell Telephone Company *dba* AT&T; (vii) Jordan Klein, Sr. of Mako Products, Inc.; (viii) Jordan Klein, Jr. of Mako Products, Inc.; (ix) John Dann of Mako Products, Inc.; and (x) Bernstein Realty. Copies of these ten subpoenas are attached as Exhibits 6-15 to the accompanying Doroshow Declaration.

As explained further below, the third-party discovery sought by Plaintiffs is very broad. Among other documents, the subpoenas seek confidential information relating to Defendants from third-parties that have absolutely no relevance to any jurisdictional issue in this case. For example, the subpoenas to AT&T and Qwest seek phone records of literally every phone call (landline and mobile) between Defendants and any person or entity with whom Defendants may have done business with (or

1 even contacted) at any time regardless of their location. *Id.*, Exs. 10-11 , Request Nos.
2 1, 6. At the same time, the subpoenas to Fed Ex and UPS indiscriminately seek
3 information identifying all account records of Defendants regardless of subject
4 matters, location, and/or time. *Id.*, Exs. 6-9, Request Nos. 1-7. The subpoenas to
5 Bernstein Realty, Jordan Klein Jr. and Sr., and John Dann seek all communications
6 that ever took place between them and Defendants. *Id.,* Exs. 12-15, Request Nos. 1-3.
7 None of the documents or information being requested by Plaintiffs is relevant to the
8 issue of jurisdiction in California, but instead appears to be driven by Plaintiffs' desire
9 to simply drive up the costs of this litigation and to obtain competitive information
10 about Defendants, including names of clients or perspective clients who Defendants
11 may have contacted and other confidential communications between Defendants and
12 third-parties.

## II.  ARGUMENT.

### A.  The Third-Party Subpoenas Should Be Quashed Because They Violate Two Court Orders And The Parties' Joint Stipulation Prohibiting Third-Party Discovery.

As shown above, the Court's March 14th and March 28th Orders (collectively, the "Court's Orders") and the Parties' Joint Stipulation establish the parameters of initial discovery in this action at this time, including limiting discovery Plaintiffs are permitted to conduct to the threshold issue of jurisdiction raised in Defendants' Motion to Dismiss. According to the Court's Orders and the Parties' Joint Stipulation, the Court ordered, and the parties agreed, that Plaintiffs may only serve Defendants with document requests and conduct a single Rule 30(b)(6) deposition. Nowhere in the Court's Orders or the Parties' Joint Stipulation are Plaintiffs permitted to conduct third-party discovery. Nevertheless, Plaintiffs have deliberately violated the Court's Orders and the Parties' Stipulation by now propounding ten third-party subpoenas without ever discussing this with Defendants or seeking leave of Court to do so.

5

On April 18, 2016, after learning of service of the third-party subpoenas, and pursuant to Local Rule 7-19.1, Defendants' counsel (James E. Doroshow) discussed the issues addressed in this *ex parte* Application with Plaintiffs' counsel Robert Lauson. At that time, Mr. Lauson indicated he would oppose this *ex parte* Application. In doing so, Mr. Lauson offered two (and only two) reasons for opposing this *ex parte* Application, neither of which has any merit:

*First*, Mr. Lauson asserted that the Court's Orders and the Parties' Joint Stipulation do not explicitly prohibit third-party discovery. *See* Doroshow Decl. at ¶ 11. Barring any explicit language to the contrary, Mr. Lauson contended that Plaintiffs can allegedly conduct broad third-party discovery on all issues (jurisdictional and otherwise) which would of course render the Court's Orders and the Parties' Stipulation utterly moot and meaningless. In fact, were counsel's "logic" accepted, Mr. Lauson's "argument" would lead to the anomalous result that Plaintiffs could also serve interrogatories, requests for admission, and notices of deposition for any person since none of those forms of discovery are expressly prohibited by the Court's Orders or the Parties' Stipulation. In sum, Plaintiffs are claiming they are entitled to unlimited discovery (merit and jurisdictional) despite the parameters clearly set by this Court, and agreed to by the parties, that Plaintiffs would be limited to jurisdictional discovery and only from Defendants in the first instance. *See id* at ¶ 11.

*Second*, Mr. Lauson stated that because he assumes that Plaintiffs will ultimately prevail in opposing Defendants' Motion to Dismiss, he argued that the third-party subpoenas are appropriate, thereby implying that the Court's Orders and the Parties' Stipulation can simply be ignored. *See id.* at ¶ 11. Of course, if this "argument" were accepted, then any party could simply ignore Court orders and parties' agreements on a whim simply based on the subjective belief that they believe they have a likelihood of succeeding on a claim or Motion. The absurdity and frivolousness of Plaintiffs' "argument" is readily apparent.

Thus, Plaintiffs have no justification for now serving ten third-party subpoenas, and they know it. For these reasons, Defendants respectfully request that this Court quash all of Plaintiffs' third-party subpoenas at this time.

### B. In The Alternative, A Protective Order Should Be Issued To Protect Defendants From Having Third-Parties Disclose Information And Documents Unrelated To Jurisdiction And Which Contain Confidential Information.

A party may seek a protective order to a subpoena served on a third-party when its own interests are jeopardized by discovery sought from a third-party or when subpoenas issued to third-parties seek irrelevant information. *Crispin v. Christian Audigier, Inc.*, 717 F.Supp.2d 965, 974 (C.D. Cal. 2010); *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 636 (C.D. Cal. 2005); *see also In re Remec, Inc.*, 2008 WL 2282647, at *1 (S.D. Cal. 2008).

Here, the third-party subpoenas served by Plaintiffs are exceedingly broad and, among others, seek confidential information that has absolutely no relevance to any jurisdictional issue in this action. For example, Document Request Nos. 1-6 in the subpoena to Pacific Bell Telephone Company *dba* AT&T and Document Request Nos. 1-9 in the subpoena to Qwest Corporation *dba* Centurylink QC seek records of all phone calls (landline and mobile) between Defendants and any person or entity with whom Defendants may have contacted or done business with at any time regardless of their location, and registration information associated with certain telephone numbers. Doroshow Decl., Exs. 10-11. At the same time, Document Request Nos. 6-7 in the subpoenas to Federal Express (Ground Division), Federal Express (Express Division), FedEx Ground Package System, Inc., and the United Parcel Service, Inc. seek information about shipments from Defendants outside of California and records of all of Defendants' Fed Ex and UPS accounts. *Id.*, Exs. 6-9. Document Request Nos. 1-3 in the subpoenas to John Dann, Bernstein Realty, and Jordan Klein Jr. and Sr. seek all communications that ever took place between

Defendants and these third-parties. *Id.,* Exs. 12-15. Document Request No. 4 in the subpoena to Bernstein Realty seek all documents relating to any telephone numbers, commercial carrier shipping account numbers, and email addresses used by Defendants. *Id.*, Exs. 15. Document Request No. 5 in the subpoena to Bernstein Realty seek documents that identify any person(s) that "would have worked in the offices" of Defendants. *Id.*, Exs. 15. Of course, none of this information is even remotely relevant to the issue of jurisdiction in California, but rather appears to be simply driven by Plaintiffs' desire to obtain competitive information about Defendants, including the names of their clients and potential clients, the names of their employees, and other confidential communications with third-parties that may involve, among others, issues relating to business strategies which are totally unrelated to the threshold issue of jurisdiction in California presently before this Court.

      The document requests in the subpoenas are also duplicative of document requests recently served on Defendants. For example, Document Request Nos. 1-5 of the subpoenas to Federal Express (Ground Division), Federal Express (Express Division), FedEx Ground Package System, Inc., and the United Parcel Service, Inc. seek records of all packages to and from each of the Defendants which contain any California address. *Id.* at Ex. 6-9. However, Plaintiffs have already served a similar request on Defendants seeking "[d]ocuments sufficient to show all packages shipped or shipments of any kind to California addresses the past 7 years." *See* Doroshow Decl. Exs. 16-18 (Document Request No. 9). Document Request Nos. 4-5 in the subpoenas to John Dann, Jordan Klein Jr., and Jordan Klein Sr. seek all documents which evidence communications with any person or company located in California where a MakoHead stabilizer was part of the transaction in which Defendants had any involvement. *Id.* at Exs. 12-15. However, Plaintiffs have already served a similar requests on Defendants seeking documents sufficient to show all rentals and shipments of the MakoHead anywhere for customers having a California address the

past 7 years. *See* Doroshow Decl., Exs. 16-18 (Document Request No. 3, 10). Having already sought the same identical documents from Defendants in discovery that this Court has authorized, Plaintiffs have no reason for serving duplicate requests on third-parties, thereby needlessly driving up the costs on the third-parties and Defendants to respond to Plaintiffs' broad, duplicative discovery demands.

For these reasons, Defendants respectfully request that, at a minimum, this Court issue a protective order ordering that the subpoenaed third-parties need not produce documents unrelated to jurisdiction, confidential information, or documents duplicative of documents already sought from Defendants.

### C. The Court Should Impose Monetary Sanctions Against Plaintiffs And Their Counsel For Propounding Ten Third-Party Subpoenas In Violation Of Two Court Orders And The Parties' Joint Stipulation.

Local Rule 83-7 allows for the imposition of costs and attorneys' fees against a party and their counsel if the Court finds, among others, that their conduct rises to the level of bad faith or willful disobedience of a Court order. The purpose of an attorneys' fee award is to deter undesirable conduct. *See ADO Finance, AG v. McDonnell Douglas Corp.*, 938 F.Supp. 590, 595 (C.D. Cal. 1996); *Elwell ex rel Elwell v. Gates*, 2001 WL 1142256, at *2 (C.D. Cal. 2001).[2]

As stated above, in this case, Plaintiffs and their counsel have clearly acted in bad faith and willfully disobeyed two Court Orders and the parties' own Joint Stipulation by serving ten thirty-party subpoenas. The Court's Orders and the Parties' Stipulation clearly do not authorize Plaintiffs to propound any third-party discovery.

---

[2] The district court may base its calculation of what are reasonable attorneys' fees on factors enunciated in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir.1975), *cert. denied*, 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976). The *Kerr* factors are: time and labor required; the novelty and difficulty of the questions involved; the skill needed to perform the legal service properly; the preclusion of other employment by the attorney due to acceptance of the case; the customary fee; whether the fee is fixed or contingent, time limitations imposed by the client or the circumstances; the amount involved and the results obtained; the experience, reputation, and ability of the attorney; the "undesirability" of the case; the nature and length of the professional relationship with the client; and awards in similar cases. 526 F.2d at 70.

Plaintiffs never sought this discovery, the parties never agreed to it, and the Court never authorized it.  Thus, Plaintiffs have absolutely no justification for propounding third-party subpoenas, as explained above.

As also explained above, Plaintiffs have acted in bad faith by failing to disclose crucial information from Defendants and this Court about their true motive for seeking an extension of the discovery deadlines.  As discussed, Plaintiffs only informed Defendants and this Court that they were seeking to extend the jurisdictional discovery deadlines allegedly because of a scheduling conflict they had with the upcoming trial in *Grober v. Mako*.[3]  Yet, Plaintiffs never disclosed to this Court or Defendants that they were ever considering conducting third-party discovery, including discovery this Court never authorized.  Plaintiffs and their counsel should therefore also be sanctioned for deliberately withholding this information from this Court and Defendants as well.

Compounding the costs of dealing with Plaintiffs' disobedience, Defendants have now been forced to file this *ex parte* Application because Plaintiffs and their counsel have been unwilling to withdraw their third-party subpoenas.  Defendants should not have to bear this expense.  Instead, they should clearly be compensated for their legal fees in having to now prepare and file this Application.

To date, Defendants have incurred approximately $11,375 in legal fees for approximately 25 hours of legal time spent in conferring with Plaintiffs' counsel and in preparing this motion at an hourly billing rate of $455.  *See* Doroshow Decl. at ¶12.  The principal attorney working on this *ex parte* Application has been Ashe Puri, an associate at Fox Rothschild LLP.  *Id.*  The prevailing market rate for work on patent infringement cases is well over $455/hour.  *Id.*  Ashe Puri is an experienced patent litigator.  *Id.*  Mr. Puri has been practicing patent litigation since 2002.  *Id.*  He is

---

[3] Obviously, if Plaintiffs and their counsel had time to prepare and serve ten third-party subpoenas at the time they were supposedly preparing for trial in another matter, discovery could have been completed on a more expedited schedule in this action as this Court had proposed.

admitted to practice in California, New York, Pennsylvania, and New Jersey. *Id.* at Ex. 19 (Puri firm biography). Defendants' rates are therefore very reasonable. Defendants estimate that they will spend an additional 10 hours to prepare a reply to Plaintiffs' opposition to this *ex parte* Application, and an additional 8 hours to prepare for and attend oral argument, if the Court seeks oral argument. Accordingly, Defendants should be able to recover all of their legal fees incurred in preparing this Application and the Reply and preparing for and attending oral argument, if any, in the amount no less than $20,000. These sanctions are neither excessive nor arbitrary but rather significant enough to deter this same type of behavior in the future. If the Court is inclined, Defendants can also submit a detailed declaration accounting for all fees incurred in connection with this *ex parte* Application.

## III.  CONCLUSION

For the reasons stated above, Defendants respectfully request an order from this Court for the following relief:

i) To quash ten third-party subpoenas recently served by Plaintiffs Voice International, Inc. and David Grober ("Plaintiffs") in violation of two Court orders (Dkt. Nos. 26, 28) and the parties' Joint Stipulation (Dkt. No. 27) which limit discovery in this action at this time to jurisdictional discovery from Defendants, and do not authorize Plaintiffs to conduct any third-party discovery on jurisdictional issues or otherwise;

ii) In the alternative, at a minimum, to issue a protective order ordering that the subpoenaed third-parties need not disclose or produce any documents or information that are irrelevant to jurisdictional issues or duplicative of information or documents already sought from Defendants; and

iii) To impose monetary sanctions against Plaintiffs and their counsel for propounding ten third-party subpoenas in clear violation of two Court orders and a Stipulation between the parties which do not authorize third-party discovery.

Dated: April 28, 2016              Respectfully submitted,

                                  FOX ROTHSCHILD LLP

                By   /s/ Ashe Puri
                    James E. Doroshow
                    Ashe Puri
                    Attorneys for Defendants,
                    OPPENHEIMER CINE RENTAL, LLC,
                    OPPENHEIMER CAMERA PRODUCTS,
                    INC., AND MARTY OPPENHEIMER