UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV15-08830 JAK (KSx) | Date | March 7, 2017 |
| Title | Voice International, Inc., et al. v. Oppenheimer Cine Rentals, LLC, et al. | | |

| | |
|---|---|
| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
| Andrea Keifer | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** **(IN CHAMBERS) ORDER RE**

**DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION (DKT. 55)**

**MOTION TO QUASH FOR INVALID SERVICE (DKT. 56)**

**ORDER TO SHOW CAUSE WHY DEFENDANT MAKO PRODUCTS SHOULD NOT BE DISMISSED (DKT. 57)**

**CONTINUING MARKMAN HEARING AND SETTING DATE FOR JOINT REPORT**

**I.      Introduction**

Voice International, Inc. ("Voice International") and David Grober ("Grober") (collectively "Plaintiffs"), brought this patent infringement action. The operative First Amended Complaint ("FAC" (Dkt. 36)) advances a claim for willful patent infringement against the following parties: Oppenheimer Cine Rental, LLC; Oppenheimer Camera Products, Inc.; Marty Oppenheimer; Jordan Klein, Sr. ("Klein Sr."); Jordan Klein, Jr. ("Klein Jr."); John Dann ("Dann"); Mako Products ("Mako") and Oceanic Production Equipment, Ltd. ("OPEL") (collectively "Defendants").

On July 18, 2016, Klein Sr., Klein Jr., Dann, and OPEL filed a motion to dismiss for lack of personal jurisdiction ("Motion to Dismiss"). Dkt 55. On that same date, Klein Jr., Dann, and OPEL filed a motion to quash service ("Motion to Quash"). Dkt. 56. On October 17, 2016, Plaintiffs filed an Opposition to the Motion to Quash. Dkt 64. On October 18, 2016, Plaintiffs opposed the Motion to Dismiss ("Opposition" (Dkt. 65)), or in the alternative to permit jurisdictional discovery. On October 24, 2016, Defendants filed a reply in support of the Motion to Dismiss. Dkt. 68. On October 31, 2016, Plaintiffs filed an Ex Parte

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV15-08830 JAK (KSx) | Date | March 7, 2017 |
| Title | Voice International, Inc., et al. v. Oppenheimer Cine Rentals, LLC, et al. | | |

Application for leave to file a sur-reply in opposition to the Motion to Dismiss. Dkt. 78. Defendants opposed that Application. Dkt. 81. The Application was granted on November 3, 2016, and Plaintiffs were permitted to file a response. Dkt. 84. They did not do so. On November 4, 2016, without leave to do so, Grober, who is self-represented, filed a "Sur-Reply." Dkt. 85. Because it was neither timely nor authorized, it is now **STRICKEN**. No proof of service was filed as to Mako. Consequently, an Order to Show Cause issued. Dkt. 57. It stated that, absent a showing of good cause for the failure to effect service, Mako would be dismissed. Plaintiffs responded to that order on August 15, 2016. Dkt. 61.

A hearing on these matters was held on November 7, 2016, and they were taken under submission. Dkt. 88.

Thereafter, on January 16, 2017, Plaintiffs filed an ex parte application for leave to conduct jurisdictional discovery ("Application" (Dkt. 101)). The Application was supported with new evidence that Plaintiffs contend supports a finding of jurisdiction. This evidence includes discovery materials that were produced by Defendant after the November 7, 2016 hearing. Plaintiffs sought leave to file some of these documents under seal. Application to File Under Seal, Dkt. 102. Defendants opposed the Application. Dkt. 104. Plaintiffs then filed a Reply. Dkt. 106.

For the reasons stated in this Order, the Motion to Quash is **DENIED**. The Application is **GRANTED**. A ruling on the Motion to Dismiss is **DEFERRED** pending the completion of jurisdictional discovery.

II.   **Factual and Procedural Background**

    A.   **Personal Jurisdictional Issues**

        1.   The Context of the Claims

The FAC alleges that Grober holds the rights to U.S. Patent No. 6,611,662 (the "'662 patent"). Dkt. 36 ¶ 16. The '662 patent concerns a device that is used to maintain the stability of a camera while it is used on a moving platform such as a boat. *Id.* ¶ 15. Voice International, which is a California corporation, holds an exclusive license to commercialize the '662 patent. *Id.* ¶ 16. The FAC claims that Klein, Sr., Klein, Jr., Dann, Mako, and OPEL have infringed the '662 Patent through the manufacture and distribution of the MakoHead Camera Stabilizer ("MakoHead"). *Id* ¶ 19. The FAC also alleges that "[a]ll Defendants have used, sold, rented and/or offered for use, sale or rental the infringing MakoHead in this judicial district and throughout the United States, and/or contributed to the infringement of others or induced them to infringe." *Id.* ¶ 20.

        2.   The Position of the Kleins and Dann

The Kleins reside in Florida. Klein Sr. Decl., Dkt. 55-1, ¶ 4; Klein Jr. Decl., Dkt. 55-2, ¶ 4. Plaintiff alleges that the Kleins previously owned Mako Products, Inc. ("Mako"). Klein Sr. was the president of Mako, and Klein Jr. its vice president. Mako commenced Chapter 7 bankruptcy proceedings, which concluded on

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV15-08830 JAK (KSx) | Date | March 7, 2017 |
| Title | Voice International, Inc., et al. v. Oppenheimer Cine Rentals, LLC, et al. | | |

October 7, 2014. Dkt. 55-1 at 5-6. According to Klein Sr., Mako "ceased all operations in the course of the bankruptcy," and was "liquidated and dissolved." *Id*. Each of the Kleins declares that he does not have any contacts with California, including: owning any property; leasing any property; transacting business; banking; having a telephone listing or a motor vehicle. *Id*. at 5; Dkt. 56-2 at 4-5. Each also contends that any association with MakoHead stabilizers "was exclusively in my capacity as an officer of Mako Products, Inc., and only while Mako Products, Inc. existed." *Id*. Each also declares that, during the Chapter 7 proceedings, "David Grober and Voice International, Inc. filed claims against Mako Products, Inc. for infringement of U.S. Patent No. 6,611,622. . . . The bankruptcy court denied the claims." Dkt. 56-1 at 6; Dkt. 56-2 at 4.

Dann declares that he resides in Florida, and was formerly an employee of Mako. Dkt. 56-3 at 3-4. He also declares that his "association with MakoHead stabilizers . . . was exclusively as an employee of Mako Products, Inc., and then in my official capacity with Oceanic Production Equipment LTD." *Id*. at 5. He makes the same statements as those made by the Kleins as to a lack of any ties to California. *Id*. at 3. Dann declares that he is presently the sole owner of OPEL, which is an entity based in the Bahamas. Dkt. 55-3 at 3. During Mako's bankruptcy proceedings, OPEL "acquired assets of Mako . . ., including one MakoHead stabilizer stored in a facility in Canada. All other acquired assets were sent to [OPEL] in the Bahamas." *Id*. at 5. Defendants assert that Dann has never, as an individual, made, used, sold, rented, or imported a MakoHead. Dkt. 55 at 9-10. Defendants also claim that OPEL does not own any property in California, and that it has never transported a MakoHead into the United States or used, made, sold or offered to sell, a MakoHead there. Dkt. 56-3 at 6. Further, Defendants state that although OPEL has leased out the single MakoHead that it owns, it has no control over how the device is used by any lessee. *Id*.

        3.      <u>The Positions of the Plaintiffs</u>

Plaintiffs' Opposition presents facts that go beyond the allegations of the FAC. Dtk. 65. These facts include that the Kleins worked as cinematographers. Plaintiffs contend that in 2001, the Kleins rented a "Perfect Horizon Stabilizer," which is the device developed by Plaintiffs to embody the '662 patent. Dkt. 65 at 5. Plaintiffs allege that, without Plaintiffs' authorization, the Kleins used proprietary information about this rental unit to make the MakoHead stabilizer. *Id*. Plaintiffs also contend that the Kleins formed Mako in 2003 for the purpose of renting the MakoHead to users throughout the United States. *Id*. at 5-6.

According to Plaintiffs, the Kleins elected to have Mako commence Chapter 7 bankruptcy proceedings in in 2012 in order to sidestep the consequences of its infringing the '662 patent. This allegedly was done in order to limit any claims that could be pursued against the entity, and to permit those who acquired its assets to continue the infringement. Dkt. 65 at 6. Mako was liquidated and dissolved in the bankruptcy proceeding. Case No. 3:12-bk-06572-JAF (M.D. FL). Klein Sr. Decl., Dkt. 55-1 ¶ 21. The Kleins and Dann purchased the assets of Mako for $20,000. Ex. E to Opposition, Dkt. 65-2 (Bankruptcy Order). They then formed OPEL, which was established as a Bahamas corporation, and assigned to it all of Mako's assets, including five MakoHeads. Ex. K to Opposition, Dkt. 65-3 at 26 (Notice of Assignment of Bid). The

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| | | | |
|---|---|---|---|
| Case No. | LA CV15-08830 JAK (KSx) | Date | March 7, 2017 |
| Title | Voice International, Inc., et al. v. Oppenheimer Cine Rentals, LLC, et al. | | |

Trustee's Bill of Sale, which is dated June 3, 2013, identifies OPEL as the buyer of Mako's assets. Dkt. 68 at 4 (citing Bankruptcy Order approving the sale of Mako assets (Case 3:12-bk-06572-JAF Dkt. 35)).

Plaintiffs also have proffered some evidence to support their claim that OPEL continued the business practices of Mako, including the use of its bank account ("Mako Account"). Dann declares that after the dissolution of Mako through the bankruptcy process, OPEL acquired the Mako Account. Dkt 68-1 ¶ 8. However, Plaintiffs claim that the Kleins are presently the only authorized signatories of the Mako Account.

In May 2013, Mako Products, Inc. issued a check for $3,000 to Klein Jr. The following language appears on its memorandum line: "funds to form Bahama corp." Dkt 65-3 at 28. Plaintiffs contend that this was likely a reference to OPEL. They also contend that the Florida address used by OPEL, including on its checks, is that of the residence of Klein Sr. Dkt. 65-3 at 9, 10, 21, 22; Dkt. 48. This is also the address used for Mako as well as for MakoTech of Louisiana, which is an entity owned by Dann and Klein Jr. *Id.* at 10, 17, 28.

According to Plaintiffs, in 2013, Jordan Klein Inc. wrote a check payable to OPEL, but that name was crossed out and replaced with "Mako Products." Ex. J to Opposition, Dkt. 65-3 at 9. Plaintiffs also contend that checks written to OPEL by "Jordan Klein" and by Mako Tech of Louisiana have been deposited into the Mako Account. Dkt 65-4 at 4.

Plaintiffs next argue that the Kleins continue to receive income from OPEL. Plaintiffs have submitted copies of three checks, whose total is $5500, that were written from the Mako Account after the dissolution of Mako. Each is payable to Klein Sr. Dkt. 65-4 at 21-26. Dann declares that these checks were used to repay Klein Sr. for financial assistance provided to acquire the assets of Mako -- including at least one MakoHead -- during the Mako bankruptcy. Dkt. 68-1 ¶ 7. The total amount of financial assistance allegedly provided to Mako by Klein Sr. was $20,000.

    4.  <u>Relationship to Forum</u>

Plaintiffs contend that Mako conducted business with California entities prior to its dissolution. In support of this position, they present copies of checks payable to Mako that were written by three California entities between 2012 and 2013. These checks were deposited into a bank account held by Mako. Dkt. 65-3 at 13, 14, 16.

As noted, Plaintiffs argue that the Kleins, Dann and OPEL are successors to Mako, and have continued its acts of infringement. Defendants' allegedly infringing activities include supplying MakoHeads to Oppenheimer Cine Rental, LLC ("Oppenheimer"), a Washington corporation which has consented to jurisdiction in this action (Dkt. 33). Oppenheimer then leased the MakoHeads to others, including Original Productions, which is based in California. Dkt. 65 at 8. Ex. H. to Opposition, Dkt. 65-3 at 2. Original Productions has used the device for several years in connection with the filming of "Deadliest Catch," a television series that is filmed in Alaska. *Id.* Throughout that rental period, which preceded, and continued

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-08830 JAK (KSx) | | Date | March 7, 2017 |
|---|---|---|---|---|
| Title | Voice International, Inc., et al. v. Oppenheimer Cine Rentals, LLC, et al. | | | |

after the conclusion of the Mako bankruptcy process, Oppenheimer recorded approximately 60% of the income from MakoHead rentals as "Paid to Mako." *Id*. Plaintiffs also have produced copies of three checks from Oppenheimer payable to Mako in 2013, which total approximately $30,000. Ex. J to Opposition, Dkt 65-3 at 15, 17, 18. They also have submitted copies of three checks from 2014 and 2015 from Oppenheimer that were payable to OPEL. They total approximately $20,900. Dkt. 65-3 at 19, 21, 22. Each was deposited in the Mako Account. *Id*.

**B.    Previous Litigation**

Plaintiffs were involved in prior litigation in this District, which was terminated on April 27, 2016. *David Grober v. Mako Products, Inc.*, No. 2:04-cv-08604-JZ-OP (2004) ("Mako Action"), Dkt. 574.[1] Plaintiffs filed the Mako Action in 2004 against several defendants based on the same allegations made in this action. They include that the defendants were in the business of making, selling, leasing or using the MakoHead, and thereby infringed the '622 patent. Notice of Related Case, Dkt. 15 at 2.

The defendants in the Mako Action filed a motion to dismiss for lack of personal jurisdiction. In opposing that motion, Plaintiffs presented evidence that the Kleins attended a trade show and the Academy Awards Ceremony in California. Plaintiffs also claimed that the Kleins were involved in the development and marketing of the Makohead. *Id*.

The motion to dismiss was granted as to Klein Sr. and Klein Jr. on August 29, 2008. Mako Action, Dkt. 214. Judge Larson concluded that Plaintiffs had failed to show that the Kleins were subject to general or specific jurisdiction in California because their only contacts here were as officers of Mako. *Id*. at 7-8. The order also concluded that Mako was not an alter ego of the Kleins. This was premised on the failure of Plaintiffs to establish a prima facie case that treating the corporate entity as distinct from its principals would sanction fraud or promote injustice. *Id*. at 8-9. Plaintiffs appealed from this order, and the Federal Circuit affirmed. *Grober v. Mako Prods., Inc.*, 686 F.3d 1335, 1346 (Fed. Cir. 2012).

**C.    Supplemental Filings**

    1.    Plaintiffs' Positions

Plaintiffs' supplemental materials, which were filed on January 16, 2017, include additional documents excerpted from 482 pages of "new evidence." Plaintiffs contend that this was material first produced by Oppenheimer after the November 7, 2016 hearing. The new documents include:

- Emails from Oppenheimer to Dann, from January 2016, discussing the use of the MakoHead by Original Productions, and an invoice to Original Productions.
- Emails between Oppenheimer and Dann, from 2015 and 2016, discussing repairs and shipping for the MakoHead for use in the Deadliest Catch production. *Id*. at 13. These emails indicate that

---

[1] In the Mako Action two cases were consolidated. No. 2:04-cv-08604-JS-OP and No. 2:07-cv-07553.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-08830 JAK (KSx) | Date | March 7, 2017 |
|---|---|---|---|
| Title | Voice International, Inc., et al. v. Oppenheimer Cine Rentals, LLC, et al. | | |

- the MakoHead was being shipped from an address in Florida associated with Dann, to an address in Canada.
- Emails among Oppenheimer, Dann and a Sheila McCormack of the Deadliest Catch production, from November 2015, that refer to Dann as a collaborator in the business of renting the MakoHead.
- An email from Oppenheimer to Dann, dated December 2014, discussing financial arrangements under which Dann would receive 60% of fees for the rental to Original Productions.
- Emails from Oppenheimer to Dann, dated October 2013 and November 2014, which is prior to the conclusion of the Mako bankruptcy proceedings, discussing repairs needed for the MakoHead and costs of shipping with respect to its use by Original Productions.

Grober declares that the 482 pages of documents show that the Kleins and Dann "actively engaged as co-renting partners with Oppenheimer" in order to rent a MakoHead stabilizer to Original Productions.

2. Request for Sanctions

Plaintiffs seek sanctions against Oppenheimer and/or its attorneys for deliberately withholding the 482 pages of documents. Dkt. 101 at 8. Plaintiffs state that their requests for production were served on Oppenheimer in February and April 2016. The documents include materials dated at or about the same time as documents that were produced earlier in the litigation. Plaintiffs argue that "it appears, the 482 post-hearing documents were deliberately culled in the attempt to limit evidence against [the Kleins and Dann]." Dkt. 101 at 8.

3. Opposition to Supplemental Filings and Application

Defendant argues that jurisdictional discovery should not be permitted because the Application was untimely, without factual support and procedurally deficient. Defendants note that the Application was submitted six months after the filing of the Motion to Dismiss, and after the November 7, 2016 hearing. Defendants also argue that, although some of the newly-produced documents discuss the shipment of a MakoHead to Canada, none mentions any links to California. Defendants also claim that Plaintiffs did not provide the required notice of their intent to seek leave to pursue jurisdictional discovery. Finally, Defendants argue that the request for sanctions should be denied, because it pertains to discovery issues, which are being overseen by Magistrate Judge Stevenson. Therefore, they contend that any disputes should be presented initially to her for resolution.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV15-08830 JAK (KSx) | Date | March 7, 2017 |
| Title | Voice International, Inc., et al. v. Oppenheimer Cine Rentals, LLC, et al. | | |

### III. Analysis

#### A. Res Judicata

##### 1. Background

The Kleins argue that the issue whether there is personal jurisdiction over them in California was determined in the *Mako* action. They contend that its re-litigation here is barred under the principles of res judicata. Dkt. 55 at 6-7. Res judicata applies to a determination as to personal jurisdiction. *Kendall v. Overseas Dev. Corp.*, 700 F.2d 536, 539 (9th Cir. 1983) (citing *Baldwin v. Iowa State Traveling Men's Assoc.*, 283 U.S. 522, 525-26 (1931)). To determine whether res judicata applies, "the dispositive question is whether [the plaintiff] pleaded any new facts in the [second] litigation that would support a different result on the issue of jurisdiction." *Id.* "[I]f a plaintiff can show new and different facts supporting jurisdiction, then the prior determination may be revisited." *Facebook, Inc. v. ConnectU LLC*, 2007 WL 4249926, at *2 (N.D. Cal. Nov. 30, 2007) (emphasis omitted). However, if no new facts are alleged, then "even if wrong, an earlier decision involving the same issue and the same parties, is as conclusive as a correct one." *Gupta v. Thai Airways Intern. Ltd.*, 487 F.3d 759, 767 (9th Cir. 2007) (internal quotation marks omitted).

##### 2. The *Mako* Action

As noted, in the Mako Action Judge Larson concluded that there was no personal jurisdiction over the Kleins. In addressing the issue, he considered evidence that the Kleins

> performed demonstrations of the MakoHead at a trade show in California in 2004 "for the sole purpose of promoting the MakoHead product." Jordan Klein, Jr. also performed a demonstration of the device at the Academy Awards Ceremony in California in 2004. Plaintiffs contend that the Klein defendants were and continue to be highly involved in all aspects of the MakoHead's development, manufacture, and marketing.

Mako Action, Dkt. 215-1 at 2.

Notwithstanding this evidence, the prior order concluded that there was no personal jurisdiction. Indeed, it stated that, even assuming that the Kleins had taken actions in California that concerned the MakoHead, they were not subject to personal jurisdiction here under the fiduciary shield doctrine. That doctrine bars personal jurisdiction over officers of an entity if their only relevant contacts with the forum state arise out of activities performed on its behalf. *See* Dkt. 15-1 at 8-9 (citing *Kransco Mfg., Inc. v. Markwitz*, 656 F. 1376, 1379 (9th Cir. 1981)). As also noted above, the prior order also rejected an alter ego claim as a basis for in personam jurisdiction:

> The affidavits and discovery materials in no way show that Mako and the Kleins share bank accounts, that the Kleins have transferred assets from Mako's accounts, or that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV15-08830 JAK (KSx) | Date | March 7, 2017 |
| Title | Voice International, Inc., et al. v. Oppenheimer Cine Rentals, LLC, et al. | | |

        Mako is otherwise undercapitalized or insolvent such that it would be unable to pay any judgment that may be entered against it in this case.

Dkt. 15-1 at 10.

Plaintiffs present what they contend are new facts relevant to personal jurisdiction over the Kleins. They offer emails and other communications from the Kleins in an effort to support their contention that the Kleins knowingly participated in the development of an infringing device using information obtained from Plaintiffs. Plaintiffs also offer evidence about actions taken since Mako was dissolved, including some that support the claim that all of Mako's assets were purchased by the Kleins and Dann. Plaintiffs also assert that Oppenheimer has rented MakoHeads to California-based entities, and that rental payments from Oppenheimer were deposited into an account formerly owned by Mako. The Kleins were the alleged owners of this account. /

In light of this evidence of events that occurred after the issuance of the prior order, the determination of personal jurisdiction may be revisited based on this new proffer, without the violating the principles of res judicata.

        3.        <u>Bankruptcy Orders</u>

During the Mako bankruptcy proceedings, Plaintiffs filed proofs of claims based on alleged infringement by the debtor of the '662 patent. The bankruptcy court disallowed them in two orders, each dated June 4, 2013. Ex. D to Motion, Dkt. 55-4; Ex. E to Motion, Dkt 55-5. One stated that the claim of Voice International, Inc. had come before the bankruptcy court due to the objection of Gregory L. Atwater, a Chapter 8 trustee. Dkt. 55-4. The court sustained that objection, finding that "[n]o objections have been timely filed after a notice to creditors." *Id.* The second order reached the same conclusion as to a claim brought by David Grober. Dkt. 55-5. The orders presented no substantive analysis of the patent infringement claims. The bankruptcy closed on October 7, 2014, and Plaintiffs did not appeal. Declaration of Klein Sr., Dkt. 55-1 ¶ 123.

An order by a Bankruptcy court may form the basis for a res judicata defense. *See United States v. Coast Wineries*, 131 F.2d 643, 648 (9th Cir. 1942) ("[A]n order disallowing a claim in bankruptcy is binding and conclusive on all parties or their privies, and being in the nature of a final judgment, furnishes a basis for a plea of res judicata."); *Robertson v. Isomedix, Inc.*, 28 F.3d 965, 969 (9th Cir. 1994), (where a "claim could have been asserted at the time of the proceeding confirming sale [in bankruptcy] . . . this opportunity is sufficient to satisfy [the] requirement[s] of the doctrine of res judicata."). *See also Trulis v. Barton*, 107 F.3d 685, 691 (9th Cir. 1997) ("Since the plaintiffs never appealed the bankruptcy court's confirmation order, the order is a final judgment and plaintiffs cannot challenge the bankruptcy court's jurisdiction over the subject matter.").

As noted, the orders of the bankruptcy court did not address the merits of the patent infringement claims. They did not find that there had been no infringement of the '622 patent by the debtor. Further, the orders

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV15-08830 JAK (KSx) | Date | March 7, 2017 |
| Title | Voice International, Inc., et al. v. Oppenheimer Cine Rentals, LLC, et al. | | |

were issued in June 2013, prior to certain of the acts of infringement alleged in this action. Therefore, those orders have no preclusive effect on the claimed infringement here, which allegedly occurred after the orders were issued. However, these orders are binding as to claims of infringement against Mako, which were raised with the bankruptcy court, but were disallowed.

 **B.**  **Personal Jurisdiction**

  1.  <u>Legal Standards</u>

To establish personal jurisdiction, a party must show both that the long-arm statute of the forum state confers personal jurisdiction over an out-of-state defendant, and that the exercise of jurisdiction is consistent with federal due process. *Gray & Co. v. Firstenberg Mach. Co., Inc.*, 913 F.2d 758, 760 (9th Cir. 1990). The California long-arm statute is coextensive with federal due process requirements. Cal. Code Civ. Proc. § 410.10; *Roth v. Garcia Marquez*, 942 F.2d 617, 620 (9th Cir. 1991). Personal jurisdiction may be exercised over a nonresident party who has "minimum contacts" with the forum state, such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted).

Personal jurisdiction may be either "general," or "specific." A person is subject to general jurisdiction in a state when his or her "contacts with a state are substantial or continuous and systematic" so as to "approximate physical presence" in the state. *Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082 (9th Cir. 2000); *see also LSI Indus. Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000). The party's contacts with the forum state need not relate to the claim asserted. *LSI Indus.*, 232 F.3d at 1375. Where there is general jurisdiction, a party may "be haled into court in the forum state to answer for any of its activities anywhere in the world." *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1066 (9th Cir. 2014).

A person may be subject to specific jurisdiction where a claim is based on specific forum-related activities of the defendant. *Grober*, 686 F.3d at 1346. When analyzing specific jurisdiction, the Ninth Circuit and Federal Circuit use the same three-part test:

  (1) the defendant must purposefully direct its activities at residents of the forum state;
  (2) the claim must arise out of or result from the defendant's forum-related activities; and
  (3) exercise of jurisdiction must be reasonable.

*Id.*; *Rano v. Sipa Press, Inc.*, 987 F.2d 580, 588 (9th Cir. 1993); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76 (1985). The party asserting jurisdiction bears the burden of satisfying the first two prongs of this test. *Grober*, 686 F.3d at 1346. If the first two prongs are satisfied, the burden then shifts to the party contesting jurisdiction to show that it is unreasonable. *Id.*

Plaintiffs bear the burden of establishing jurisdiction over each defendant. *See Fed. Deposit Ins. Corp. v. British-Am. Ins. Co., Ltd.*, 828 F.2d 1439, 1441 (9th Cir. 1987). "When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff is obligated to come forward with facts, by affidavit or otherwise,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-08830 JAK (KSx) | Date | March 7, 2017 |
|---|---|---|---|
| Title | Voice International, Inc., et al. v. Oppenheimer Cine Rentals, LLC, et al. | | |

supporting personal jurisdiction." *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (internal quotation omitted). Where a court decides a motion to dismiss for lack of personal jurisdiction without an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss. *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995); *Doe v. Unocal Corp.*, 27 F. Supp. 2d 1174, 1181 (C.D. Cal. 1998), *aff'd*, 248 F.3d 915 (9th Cir. 2001). "In such cases, we only inquire into whether [the plaintiff's] pleadings and affidavits make a prima facie showing of personal jurisdiction." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (internal quotations omitted). Plaintiff's version of the facts is taken as true for purposes of the motion if not directly controverted, and conflicts between the parties' affidavits must be resolved in plaintiff's favor for purposes of deciding whether a prima facie case for personal jurisdiction exists. *AT & T Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996); *Unocal*, 27 F. Supp. 2d at 1181. Furthermore, "a court may allow discovery to aid in determining whether it has in personam or subject matter jurisdiction." *Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977).

    2.    <u>Analysis</u>

        a)    Whether There Is Personal Jurisdiction Over OPEL

Plaintiffs argue that there is specific jurisdiction over Defendants. In support of this position they claim that Defendants were involved in the leasing of one or more MakoHead stabilizers to entities doing business in California. As noted, Oppenheimer rented the MakoHead to Original Productions for its use in Alaska. Original Productions is based in California. These rentals occurred before Mako commenced its bankruptcy proceedings and, according to certain records of Oppenheimer, continued to February 2016. These records also reflect that 60% of the payments made by Original Productions were recorded as "paid to Mako." Oppenheimer also issued checks to Mako and OPEL that were deposited in the Mako Account.

In the supplemental filings, Plaintiffs claim that, in collaboration with Oppenheimer, Dann was involved in the rental of a MakoHead. Dann arranged to ship this stabilizer from Florida to Canada, where it was then leased to Original Productions for use in Alaska. Some evidence is also proffered in support of the claims that Dann was involved in the repair and maintenance of the MakoHead. Dann acknowledges that OPEL leased at least one MakoHead, which was stored in Canada. Dann Decl., Dkt. 68-1 ¶¶ 8, 14-16. Dann also declares that OPEL is the owner of the Mako Account.

Defendants argue that there is no specific jurisdiction over OPEL. They note that OPEL is based in the Bahamas, and assert that it has never transported, used, or built a MakoHead stabilizer anywhere in the United States. Dkt. 68 at 5. Defendants state that

> [a]ny rental of [OPEL's] MakoHead stabilizer to a rental customer was made from the Canadian rental house in which the MakoHead stabilizer was stored. [OPEL] does not control or know what rental customers do with a rented MakoHead stabilizer or where or when they do it. [OPEL] does not require rental customers to report such information.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV15-08830 JAK (KSx) | Date | March 7, 2017 |
| Title | Voice International, Inc., et al. v. Oppenheimer Cine Rentals, LLC, et al. | | |

Dkt. 68 at 5 (citations omitted).

Prior to the commencement of the bankruptcy proceedings, Dann and Oppenheimer exchanged emails regarding the lease of the MakoHead for use by Original Productions. These communications support a plausible inference that Dann had knowledge about the use of the MakoHead for filming Deadliest Catch in Alaska. Ex. X & Y to Opposition, Dkt. 65-5 at 12-15. Dann's email signature line also refers to OPEL. *Id.* at 13.

This evidence suggests that OPEL had a business relationship with Oppenheimer, which rented the MakoHead to at least one California-based company. There is also some evidence that OPEL derived some revenue as a result. Thus, Oppenheimer's records reflect that $33,948 was "Paid to Mako" for leasing the MakoHead to Original Productions from November 2014 to February 2016. This information is relevant to a determination whether there is personal jurisdiction. *See, e.g., Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275, 1282 (Fed. Cir. 2005) (personal jurisdiction may be established were record shows that defendant caused injury to resident of the forum district "by its conduct outside the [forum] District while regularly doing or soliciting business, engaging in any persistent course of conduct, or deriving substantial revenue from goods used or consumed in the [forum] District").

However, the evidence about a potential relationship among OPEL, Oppenheimer and Original Productions is limited and subject to different interpretations. Plaintiffs have not presented evidence sufficient to show that OPEL and Oppenheimer entered a contract. Nor is it clear what ongoing relationships between OPEL and the California forum may exist, if any. However, in light of the evidence that has been presented, focused jurisdictional discovery is appropriate as to the following: (i) whether there was agreement between OPEL and Oppenheimer; (ii) whether OPEL knew that Original Productions was based in California; and (iii) whether OPEL directly or indirectly rented the Makohead to a California entity, and if so, for use at what location.

        b)    Whether There Is Personal Jurisdiction Over the Kleins and Dann

Plaintiffs argue that the Kleins collaborated with Dann to form OPEL in order to avoid potential patent infringement liability for Mako. In support of this position, Plaintiffs note that the Kleins and Dann jointly acquired Mako's assets in the bankruptcy proceedings, and subsequently assigned them to OPEL. Plaintiffs have also submitted a copy of a check from the Mako Account that is payable to Klein Jr. "to form Bahama Corp." Dkt. 65-3 at 28. Plaintiffs assert that OPEL operates out of the "Klein Compound" in Florida.

Plaintiffs next argue that, although the Kleins are neither the owners nor officers of OPEL, they are signatories on a Mako bank account. They claim that funds continue to be deposited into that account as payment for Oppenheimer's use of the MakoHead. Plaintiffs also argue that because Mako no longer exists, this account is the personal property of the Kleins. Plaintiffs also have submitted evidence to support the claim that the Kleins wrote checks to themselves and Dann from this account both prior to and following the bankruptcy. Ex. N to Opposition, Dkt. 65-4 at 7-17. Several checks written prior to the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV15-08830 JAK (KSx) | Date | March 7, 2017 |
| Title | Voice International, Inc., et al. v. Oppenheimer Cine Rentals, LLC, et al. | | |

commencement of the bankruptcy were payable to "Bee Dee Neon Signs," an entity wholly owned by Dann. *Id*. After the bankruptcy proceedings concluded in October 2014, checks totaling $25,400 were issued to Klein Sr. and Bee Dee Neon. Ex. O to Opposition, Dkt. 65-4 at 19-26.

Defendants deny that the Kleins have engaged in the business of leasing or selling the MakoHead since the conclusion of the Mako bankruptcy. They also state that they have no ownership interest in any company that builds, rents or sells the MakoHead. Dkt. 68 at 2. Instead, Dann declares that the post-bankruptcy payments from Mako to Klein Sr. reflect reimbursement to him for the financial assistance provided by the Kleins in connection with the acquisition of the Mako's assets and the formation of OPEL. Dkt. 68-1 ¶ 7. The allegations against the Kleins in their individual capacities, including that they colluded to appropriate Plaintiffs' intellectual property to create and market the MakoHead, do not show any relationship to the California forum. Dkt. 65 at 10-13.

The evidence that has been presented is not sufficient to show personal jurisdiction in California as to either of the Kleins. It is, however, sufficient to justify narrow jurisdictional discovery. Such discovery must be focused on the relationship of the Kleins to the Mako Account, and their roles, if any, with OPEL. It may also address what income, if any, the Kleins have received from the lease of MakoHeads in California since the conclusion of the Mako bankruptcy proceedings.

No adequate evidence to show jurisdiction over Dann has been presented. Nor has evidence sufficient to warrant discovery on this issue been submitted. Plaintiffs have not shown that Dann personally owns or leases any MakoHeads, that he infringed the '662 patent or that he has facilitated alleged infringement by others, other than through his role as an officer of OPEL. Plaintiffs have also failed to present any evidence that Dann received income from the Mako Account or from Oppenheimer that was unrelated to his role as owner of OPEL or an employee of Mako. This analysis is not changed by the supplemental evidence proffered by Plaintiffs on January 16, 2017. It includes emails that may show that Dann has been aware of and involved in the rental of the MakoHead, but not that he acted in his own capacity, rather than as an officer of OPEL.

      c)     Whether there is Personal Jurisdiction Over Defendants as Successors in Interest to Mako

          (1)     Legal Standard

Where an individual or entity would not otherwise be subject to personal jurisdiction in the forum state, jurisdiction may be established if the person is an alter ego or successor of a corporation over which there would be jurisdiction. *See Minnesota Mining & Mfg. Co. v. Eco Chem Inc.*, 757 F.2d 1256, 1265 (Fed.Cir.1985) (personal jurisdiction over a successor corporation with no ties to the forum state, where the corporation was "merely a continuation" of the predecessor corporation over which there would have been personal jurisdiction there). *Ray v. Alad Corp.*, 19 Cal. 3d 22 (1977) explained the basis for such successor liability:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| | | | |
|---|---|---|---|
| Case No. | LA CV15-08830 JAK (KSx) | Date | March 7, 2017 |
| Title | Voice International, Inc., et al. v. Oppenheimer Cine Rentals, LLC, et al. | | |

> As typically formulated the rule states that the purchaser does not assume the seller's liabilities unless (1) there is an express or implied agreement of assumption, (2) the transaction amounts to a consolidation or merger of the two corporations, (3) the purchasing corporation is a mere continuation of the seller, or (4) the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability for the seller's debts.

*Id.* at 28.

To show "mere continuation," requires evidence as to "(1) a lack of adequate consideration for acquisition of the former corporation's assets to be made available to creditors, or (2) one or more persons were officers, directors, or shareholders of both corporations." *Katzir's Floor and Home Design, Inc. v. M–MLS.com,* 394 F.3d 1143, 1150 (9th Cir.2004).

(2)     Application

Plaintiffs argue that the Kleins, Dann and OPEL collectively are a "mere continuation" of Mako, and assumed its liabilities when they jointly acquired all of its assets when Mako was dissolved. Dkt. 65 at 18. This claim is based on the principles set forth in *Katzir*. Plaintiffs allege that the Kleins and Dann did not pay adequate consideration when they acquired the assets of Mako. They claim that these assets consisted "almost solely" of five MakoHead stabilizers. Grober Decl., Dkt. 65-1 ¶ 4. Plaintiffs also contend that the bankruptcy auction was not conducted in manner that would have generated the highest price for the Makoheads. They argue that the notice of the auction was insufficient. Opposition Ex. E, Dkt. 65-2 at 11. Consequently, they claim that Grober was the only person who bid other than the Kleins. They allege that Grober sought "to prevent the Mako-1 case evidence from spoliation." Dkt. 65 at 19; Dkt. 65-2 at 11. Plaintiffs also contend that Mako pursued the bankruptcy proceedings in a manner designed to avoid the claims of unsecured creditors. They also question whether certain sales proceeds are reflected in the final accounting by the Bankruptcy Trustee.[2]

These contentions do not provide a basis for liability by the Kleins, Dann, or OPEL. Nor are they a sufficient basis to warrant discovery. Unlike *Katzir,* which involved a request to amend an existing judgment so that a new judgment debtor could be added, there is no such prior judgment in this action. Throughout Mako's bankruptcy proceedings, Plaintiffs were aware of its alleged infringement. They sought to participate in those proceedings to assert claims. That request was denied by the bankruptcy court. Plaintiffs did not seek any appellate review. Because those findings have res judicata effect,

---

[2] Plaintiff notes that records produced by Oppenheimer show that Oppenheimer continued to rent the MakoHeads during the bankruptcy, in exchange for a payment to Mako of $36,000. Dkt. 65-3 at 2. This income does not appear on the final accounting of the Bankruptcy Trustee. *Id.* at 5. Plaintiffs also present a partial record of payments received by the Mako bank account from 2012 until March 2016, including those received from Oppenheimer and Klein Jr. Dkt. 65-1 ¶ 15. None of the deposits made during bankruptcy process appears to have been included in the accounting by the Bankruptcy Trustee. Dkt. 65-1 ¶10.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

| | | | |
|---|---|---|---|
| Case No. | LA CV15-08830 JAK (KSx) | Date | March 7, 2017 |
| Title | Voice International, Inc., et al. v. Oppenheimer Cine Rentals, LLC, et al. | | |

Plaintiff is barred from seeking to relitigate them in this action. Thus, it cannot advance the claim that the Kleins, Dann, and OPEL are successors of Mako.

### IV.     Motion to Quash

On June 25, 2016. Plaintiffs served a summons and the FAC (Dkt. 36) on Klein Sr. at his home in Summerfield, Florida. Klein Sr. Decl., Dkt. 56-1 ¶ 6. The process server left copies of these documents for Klein Jr., Dann, and OPEL. Id. The Motion to Quash asserts that each used the address of the residence of Klein Sr. Dkt. 56 at 5. Plaintiffs' Proofs of Service for Dann (Dkt. 47), Klein Jr. (Dkt. 49), and OPEL (Dkt. 50) state that Klein Sr. represented that he was authorized to accept service on behalf of each of these parties. Defendants dispute that Klein Sr. made any such a representation. Dkt. 56-1 ¶¶ 9-11. Defendants state that neither Klein Jr. nor Dann waived service nor appointed Klein Sr. as an agent to receive service, Each also claims that he was not present when the process server appeared at the residence of Klein, Sr. Id. Neither resides at Klein Sr.'s residence. Id. Klein Sr. is not an officer or authorized process server for OPEL. Id.

Defendants also note that, on June 28, 2016, Defendants' counsel contacted Plaintiffs' counsel by telephone and informed him that the aforementioned service was improper. Id. at 6. Defendants' counsel also states that he provided the correct addresses for proper service on each named Defendant. Id.

After the contested service of process, Plaintiffs state that they effected service of process on Klein Jr., Dann, and OPEL as follows:

- Klein, Jr. was served by a Marion County Sheriff who performed substitute service through Klein, Jr.'s co-resident, Rossi Klein. Dkt. 58.
- Klein, Jr.'s attorney received a copy of the summons and the Amended Complaint by certified mail.
- Dann was served when the documents were delivered to the Klein Compound, which is the business address for his company Bee Dee Neon. Dkt. 64-2 at 24. Plaintiffs also allege that the relevant documents were served upon Dann at the United States address for his company, Dkt. 64-1 ¶ 6, and at his address of public record. Dkt. 64-1 ¶¶ 9-13.
- Dann's attorney received a copy of the summons and the Amended Complaint by certified mail. Dkt. 64-1 ¶2.
- OPEL was properly served when the documents were delivered to OPEL's Florida address. Dkt. 64-1 ¶6.
- Mark Young, the attorney for OPEL's director, John Dann, received a copy of the summons and the FAC by certified mail for OPEL. Id. ¶2.
- A copy of the summons and FAC was sent by Federal Express to OPEL's Bahamian address. Dkt. 64-3 at 16.

Defendants do not contest the propriety of service through Klein Jr.'s co-tenant. Furthermore, Defendants have not alleged that the service at Dann's business or personal residences was improper. Nor have

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV15-08830 JAK (KSx) | Date | March 7, 2017 |
| Title | Voice International, Inc., et al. v. Oppenheimer Cine Rentals, LLC, et al. | | |

Defendants challenged the service of process at OPEL's Florida address, or the delivery by mail. Therefore the Motion to Quash is **DENIED** as to these Defendants.

Defendants note that Plaintiffs have not served the entity identified in the FAC as "Mako Products." Plaintiffs assert, and Defendants do not dispute, that Mako Products, Inc. was a Florida corporation that was liquidated during bankruptcy proceedings. Dkt. 56 at 6. However, Plaintiffs argue that the Mako named in the FAC is a different entity that received rental income from Oppenheimer. *Id*. Plaintiffs allege that evidence that such an entity may exist is provided by a statement in Oppenheimer's records that payment for MakoHead rentals has been made to "Mako" at a time that was after the dissolution of Mako Products Inc. *Id*. Due to the difficulty of serving this entity prior to some discovery, Plaintiffs have requested that the deadline to add additional parties be extended to January 16, 2017, or such a time as Plaintiffs have received discovery pertinent to this issue. *Id*.

For the foregoing reasons, the Motion to Quash is **DENIED**. The deadline to add additional parties in this case is **CONTINUED** until 10 days after the completion of the jurisdictional discovery permitted by this Order.

**V.      Conclusion**

For the reasons stated in this Order, the Motion to Quash is **DENIED**. The Request for Jurisdictional Discovery, and Ex Parte Application for Jurisdictional Discovery (Dkt. 101), are **GRANTED**.[3] A ruling on the Motion to Dismiss is **DEFERRED** pending completion of jurisdictional discovery. All document requests and notices of deposition must be served by Plaintiffs by March 17, 2017 days from issuance of this Order. Defendants shall respond to those documents by March 31, 2017. Thereafter, appropriate depositions may proceed. Within 10 days of the completion of those depositions, Plaintiffs shall submit a supplemental brief, not to exceed ten pages, on the jurisdictional issues. Within 10 days of the service of that brief, Defendants shall file any response. Upon receipt of the supplemental briefing the matter will be taken under submission. Plaintiff's request for sanctions is **DENIED**.

In light of the foregoing, the Court continues the Markman Hearing from April 10, 2017 to June 5, 2017 at 10:30 a.m. Counsel shall file a joint report by March 21, 2017, regarding the status of the case. The report shall attach a revised Schedule of Pretrial and Trial dates setting forth the parties' proposed dates. Dkt. 18 at 11-13.

**IT IS SO ORDERED.**

|   |   |
|---|---|
| Initials of Preparer | ak |

---

[3] Any disputes as to the proper scope of jurisdictional discovery may be addressed through a properly noticed motion before the Magistrate Judge.