# EXHIBIT A

**Oceanic Production Equipment, Ltd**

**Poinciana House**
**West Mall & Poinciana Drives**
**P.O. Box F-42614**
**Freeport, Grand Bahama**

# Rental Invoice

| Date | Invoice # |
|---|---|
| 10/5/2013 | 93389 |

Ship To

| Bill To |
|---|
| Oppenheimer Cine Rental, LLC |
| 7400 Third Avenue South |
| Seattle, WA   98108 |

| P.O. Number | Date Required | Ship | Via | F.O.B. | Project | Terms |
|---|---|---|---|---|---|---|
| 1502 | 10/5/2013 | 10/5/2013 | | | Original Productions (Deadiest... | |

| Qty | Description | | Each | Amount |
|---|---|---|---|---|
| 18 | Rental of 2-axis stabilizer | | 480.00 | 8,640.00 |
| | 2-axis stabilizer unit #1103 | (1) case #1102 @120pounds 30"x 20"x 18" | | |
| | -10' power cord | [For Cameras HTS#9007910000] | | |
| | -30' power cord | | | |
| | -insert stud/pin/castle nut | | | |
| | -tuning box | | | |
| | -stopper | | | |
| | -charge cord | | | |
| | - float plate assembly | | | |
| | -36volt electronic battery charger #...000102 | | | |
| | -12volt > 36volt PowerConvertor #001C | | | |
| | -'salt-a-way' rinse | | | |
| | -instruction manual | | | |
| 2 | BatteryPowerSupplies #008L & #009L | (2) cases 48pounds each 12'X 12"X 10" | | 0.00 |
| | | [For Cameras HTS#9007910000] | | |
| | | (Contains: Non-Hazardous,  Non-Spillable Batteries,  [173.159(d)]) | | |

| | |
|---|---|
| Subtotal | $8,640.00 |
| Sales Tax (6.0%) | $0.00 |
| Total | $8,640.00 |
| Payments/Credits | $-8,640.00 |
| Balance Due | $0.00 |

| Phone # | Fax # | E-mail | Web Site | USPPI EIN |
|---|---|---|---|---|
| 352-266-7794 | | jd@oceanicproductionequipment.... | | |

OPEL0001

# Oceanic Production Equipment, Ltd

**Poinciana House**
**West Mall & Poinciana Drives**
**P.O. Box F-42614**
**Freeport, Grand Bahama**

# Rental Invoice

| Date | Invoice # |
|------|-----------|
| 10/14/2014 | 93394 |

**Ship To**

**Bill To**

Oppenheimer Cine Rental, LLC
7400 Third Avenue South
Seattle, WA  98108

| P.O. Number | Date Required | Ship | Via | F.O.B. | Project | Terms |
|-------------|---------------|------|-----|--------|---------|-------|
| 5128 | 10/14/2014 | 10/14/2014 | | | Original Productions (Deadliest... | |

| Qty | Description | Each | Amount |
|-----|-------------|------|--------|
| 18 | Rental of 2-axis stabilizer | 510.00 | 9,180.00 |
| 1 | Rental of 2-axis stabilizer | | 0.00 |
| |     2-axis stabilizer unit #1103     (1) case #1102 @120pounds 30"x 20"x 18" | | |
| |     -10' power cord     [For Cameras HTS#9007910000] | | |
| |     -30' power cord | | |
| |     -insert stud/pin/castle nut | | |
| |     -tuning box | | |
| |     -stopper | | |
| |     -charge cord | | |
| |     - float plate assembly | | |
| |     -36volt electronic battery charger #...000102 | | |
| |     -12volt > 36volt PowerConvertor #001C | | |
| |     -'salt-a-way' rinse | | |
| |     -instruction manual | | |
| 2 |     BatteryPowerSupplies #008L & #009L     (2) cases 48pounds each 12'X 12"X 10" | | 0.00 |
| |     [For Cameras HTS#9007910000] | | |
| |     (Contains: Non-Hazardous,  Non-Spillable Batteries,  [173.159(d)]) | | |
| | | | |
| |     Shipped  22Oct2014  >> Lynden International | | |
| 1 | Rental of 2-axis stabilizer | | 0.00 |
| |     2-axis stabilizer unit #1107     (1) case #1107 @120pounds 30"x 20"x 18" | | |
| |     -10' power cord     [For Cameras HTS#9007910000] | | |
| |     -30' power cord | | |
| |     -insert stud/pin/castle nut | | |
| |     -tuning box | | |
| |     -stopper | | |
| |     -charge cord | | |
| |     - float plate assembly | | |
| |     -36volt electronic battery charger #...000270 | | |
| |     -12volt > 36volt PowerConvertor #005C | | |
| |     -'salt-a-way' rinse | | |
| |     -instruction manual | | |

| | |
|---|---|
| Subtotal | |
| Sales Tax (6.0%) | |
| Total | |
| Payments/Credits | |
| Balance Due | |

| Phone # | Fax # | E-mail | Web Site | USPPI EIN |
|---------|-------|--------|----------|-----------|
| 352-266-7794 | | jd@oceanicproductionequipment.... | | |

OPEL0002

# Oceanic Production Equipment, Ltd

**Poinciana House**
**West Mall & Poinciana Drives**
**P.O. Box F-42614**
**Freeport, Grand Bahama**

# Rental Invoice

| Date | Invoice # |
|------|-----------|
| 10/14/2014 | 93394 |

**Ship To**

**Bill To**
Oppenheimer Cine Rental, LLC
7400 Third Avenue South
Seattle, WA  98108

| P.O. Number | Date Required | Ship | Via | F.O.B. | Project | Terms |
|-------------|---------------|------|-----|--------|---------|-------|
| 5128 | 10/14/2014 | 10/14/2014 | | | Original Productions (Deadliest... | |

| Qty | Description | | Each | Amount |
|-----|-------------|---|------|--------|
| 1 | Received +/-20Oct2014  << Lynden AirFreight<br>Rental of 2-axis stabilizer<br>    2-axis stabilizer unit #1103          (1) case #1102 @120pounds 30"x 20"x 18"<br>    -10' power cord                          [For Cameras HTS#9007910000]<br>    -30' power cord<br>    -insert stud/pin/castle nut<br>    -tuning box<br>    -stopper<br>    -charge cord<br>    - float plate assembly<br>    -36volt electronic battery charger #...000102<br>    -12volt > 36volt PowerConvertor #001C<br>    -'salt-a-way' rinse<br>    -instruction manual | | | 0.00 |
| 1 | Received 12Dec2014  <<<br>Rental of 2-axis stabilizer<br>    2-axis stabilizer unit #1107          (1) case #1107 @120pounds 30"x 20"x 18" | | | 0.00 |
| 1 | Shipped 29Dec2014  >><br>Rental of 2-axis stabilizer<br>    2-axis stabilizer unit #1104          (1) case #1107 @120pounds 30"x 20"x 18" | | | 0.00 |

| | |
|---|---|
| Subtotal | $9,180.00 |
| Sales Tax (6.0%) | $0.00 |
| Total | $9,180.00 |
| Payments/Credits | $-540.00 |
| Balance Due | $8,640.00 |

| Phone # | Fax # | E-mail | Web Site | USPPI EIN |
|---------|-------|--------|----------|-----------|
| 352-266-7794 | | jd@oceanicproductionequipment.... | | |

OPEL0003

**Oceanic Production Equipment, Ltd**

**Poinciana House**
**West Mall & Poinciana Drives**
**P.O. Box F-42614**
**Freeport, Grand Bahama**

# Rental Invoice

| Date | Invoice # |
|---|---|
| 3/4/2015 | 93404 |

**Ship To**

**Bill To**
Oppenheimer Cine Rental, LLC
7400 Third Avenue South
Seattle, WA  98108

| P.O. Number | Date Required | Ship | Via | F.O.B. | Project | Terms |
|---|---|---|---|---|---|---|
| 5182 | 3/4/2015 | 3/4/2015 | | | Original Productions (Deadliest... | |

| Qty | Description | Each | Amount |
|---|---|---|---|
| 6 | Rental of 2-axis stabilizer | 516.00 | 3,096.00 |
| |   2-axis stabilizer unit #1104     (1) case #1107 @120pounds 30"x 20"x 18" | | |
| |   -10' power cord     [For Cameras HTS#9007910000] | | |
| |   -30' power cord | | |
| |   -insert stud/pin/castle nut | | |
| |   -tuning box | | |
| |   -stopper | | |
| |   -charge cord | | |
| |   - float plate assembly | | |
| |   -36volt electronic battery charger #...000102 | | |
| |   -12volt > 36volt PowerConvertor #001C | | |
| |   -'salt-a-way' rinse | | |
| |   -instruction manual | | |
| 2 | | | |
| | BatteryPowerSupplies #008L & #009L     (2) cases 48pounds each 12'X 12"X 10" | | |
| |     [For Cameras HTS#9007910000] | | |
| | (Contains: Non-Hazardous, Non-Spillable Batteries, [173.159(d)]) | | |

| | |
|---|---|
| Subtotal | $3,096.00 |
| Sales Tax (6.0%) | $0.00 |
| Total | $3,096.00 |
| Payments/Credits | $-3,096.00 |
| Balance Due | $0.00 |

| Phone # | Fax # | E-mail | Web Site | USPPI EIN |
|---|---|---|---|---|
| 352-266-7794 | | jd@oceanicproductionequipment.... | | |

OPEL0004

**Oceanic Production Equipment, Ltd**

**Poinciana House**
**West Mall & Poinciana Drives**
**P.O. Box F-42614**
**Freeport, Grand Bahama**

# Rental Invoice

| Date | Invoice # |
|------|-----------|
| 11/23/2015 | 93407 |

**Ship To**

**Bill To**
Oppenheimer Cine Rental, LLC
7400 Third Avenue South
Seattle, WA  98108

| P.O. Number | Date Required | Ship | Via | F.O.B. | Project | Terms |
|-------------|---------------|------|-----|--------|---------|-------|
| 105873 | 10/8/2015 | 10/7/2015 | | | Original Productions (Deadliest... | |

| Qty | Description | | Each | Amount |
|-----|-------------|--|------|--------|
| 15 | Rental of 2-axis stabilizer | | 516.00 | 7,740.00 |
| |    2-axis stabilizer unit #1104      (1) case #1107 @120pounds 30"x 20"x 18" | | | |
| |    -10' power cord           [For Cameras HTS#9007910000] | | | |
| |    -30' power cord | | | |
| |    -insert stud/pin/castle nut | | | |
| |    -tuning box | | | |
| |    -stopper | | | |
| |    -charge cord | | | |
| |    - float plate assembly | | | |
| |    -36volt electronic battery charger #...000102 | | | |
| |    -12volt > 36volt PowerConvertor #001C | | | |
| |    -'salt-a-way' rinse | | | |
| |    -instruction manual | | | |
| 2 | | | | 0.00 |
| | BatteryPowerSupplies #008L & #009L     (2) cases 48pounds each 12'X 12"X 10" | | | |
| |                       [For Cameras HTS#9007910000] | | | |
| |    (Contains: Non-Hazardous,  Non-Spillable Batteries,  [173.159(d)]) | | | |

| | |
|--|--|
| Subtotal | $7,740.00 |
| Sales Tax (6.0%) | $0.00 |
| Total | $7,740.00 |
| Payments/Credits | $-7,740.00 |
| Balance Due | $0.00 |

| Phone # | Fax # | E-mail | Web Site | USPPI EIN |
|---------|-------|--------|----------|-----------|
| 352-266-7794 | | jd@oceanicproductionequipment.... | | |

OPEL0005

Oceanic Production Equipment, Ltd

# Commercial Invoice

Poinciana House
West Mall & Poinciana Drives
P.O. Box F-42614
Freeport, Grand Bahama

| Date | Invoice # |
|------|-----------|
| 2/29/2016 | 93408 |

| Bill To | Ship To |
|---------|---------|
| Oppenheimer Cine Rental, LLC<br>7400 Third Avenue South<br>Seattle, WA  98108 | |

| P.O. Number | Due Date | Via | F.O.B. | Project |
|-------------|----------|-----|--------|---------|
| 106012 | 12/31/2015 | | | Original Productions... |

| Quantity | Description | Price Ea... | Amount |
|----------|-------------|-------------|--------|
| 15 | Rental of 2-axis stabilizer<br>    2-axis stabilizer unit #1104     (1) case (Pelican) @120pounds 30"x 20"x 18"<br>        -10' power cord                [For Cameras HTS#9007910000]<br>        -30' power cord<br>        -insert stud/pin/castle nut<br>        -tuning box<br>        -stopper<br>        -charge cord<br>        - float plate assembly<br>        -36volt electronic battery charger #...000102<br>        -12volt > 36volt PowerConvertor #001C<br>        -'salt-a-way' rinse<br>        -instruction manual<br>        -120volt/AC > 36volt/DC PowerConvertor | 516.00 | 7,740.00 |
| 1 | BatteryPowerSupplies #008L & #009L     (2) cases 48pounds each 12"X 12"X 10"<br>                    [For Cameras HTS#9007910000]<br>        (Contains: Non-Hazardous, Non-Spillable Batteries, [173.159(d)]) | | |
| -1 | | 1,000.00 | -1,000.00 |

| | | |
|--|--|--|
| **Subtotal** | | $6,740.00 |
| **Sales Tax (6.0%)** | | $0.00 |
| **Total** | | $6,740.00 |

| Phone # | Fax # | E-mail | Web Site | Corporate # |
|---------|-------|--------|----------|-------------|
| 352-266-7794 | | jd@oceanicproductionequipme... | | |

OPEL0006

# EXHIBIT B

**Oceanic Production Equipment, Ltd**
10197 SE 144th Place
Summerfield, FL  34491

# Rental Invoice

| Date | Invoice # |
|------|-----------|
| 12/15/2013 | 93389 |

**Ship To**
Original Productions
Dutch Harbor, AK  99692

**Bill To**
Oppenheimer Cine Rental, LLC
7400 Third Avenue South
Seattle, WA  98108

| P.O. Number | Date Required | Ship | Via | F.O.B. | Project | Terms |
|-------------|---------------|------|-----|--------|---------|-------|
| 1502 | 10/5/2013 | 10/5/2013 | | | Original Productions (Deadliest... | |

| Qty | Description | Each | Amount |
|-----|-------------|------|--------|
| 18 | Rental of Makohead | 480.00 | 8,640.00 |
| | MakoHead stabilizer unit #1103          (1) case #1102 @120pounds 30"x 20"x 18" | | |
| | [For Cameras HTS#9007910000] | | |
| | -10' power cord | | |
| | -30' power cord | | |
| | -insert stud/pin/castle nut | | |
| | -tuning box | | |
| | -stopper | | |
| | -charge cord | | |
| | - float plate assembly | | |
| | -36volt electronic battery charger #...000102 | | |
| | -12volt > 36volt PowerConvertor #001C | | |
| | -'salt-a-way' rinse | | |
| | -instruction manual | | |
| 2 | BatteryPowerSupplies #008L & #009L     (2) cases 48pounds each 12"X 12"X 10" | | 0.00 |
| | [For Cameras HTS#9007910000] | | |
| | (Contains: Non-Hazardous,  Non-Spillable Batteries,  [173.159(d)]) | | |

| | |
|---|---|
| Subtotal | $8,640.00 |
| Sales Tax (6.0%) | $0.00 |
| Total | $8,640.00 |
| Payments/Credits | $0.00 |
| Balance Due | $8,640.00 |

| Phone # | Fax # | E-mail | Web Site | USPPI EIN |
|---------|-------|--------|----------|-----------|
| 352-288-0111 | | info@makohead.com | www.makohead.com | |

CONFIDENTIAL                    OPP000121

**Oceanic Production Equipment, Ltd**
10197 SE 144th Place
Summerfield, FL  34491

# Rental Invoice

| Date | Invoice # |
|------|-----------|
| 10/14/2014 | 93394 |

**Ship To**
Original Productions
Dutch Harbor, AK  99692

**Bill To**
Oppenheimer Cine Rental, LLC
7400 Third Avenue South
Seattle, WA  98108

| P.O. Number | Date Required | Ship | Via | F.O.B. | Project | Terms |
|-------------|---------------|------|-----|--------|---------|-------|
|  | 10/14/2014 | 10/14/2014 |  |  | Original Productions (Deadliest... |  |

| Qty | Description | Each | Amount |
|-----|-------------|------|--------|
| 18 | Rental of Makohead | 510.00 | 9,180.00 |
| 1 | Rental of Makohead<br>    MakoHead stabilizer unit #1103      (1) case #1102 @120pounds 30"x 20"x 18"<br>    -10' power cord              [For Cameras HTS#9007910000]<br>    -30' power cord<br>    -insert stud/pin/castle nut<br>    -tuning box<br>    -stopper<br>    -charge cord<br>    - float plate assembly<br>    -36volt electronic battery charger #...000102<br>    -12volt > 36volt PowerConvertor #001C<br>    -'salt-a-way' rinse<br>    -instruction manual |  | 0.00 |
| 2 |     BatteryPowerSupplies #008L & #009L    (2) cases 48pounds each 12'X 12"X 10"<br>                    [For Cameras HTS#9007910000]<br>    (Contains: Non-Hazardous, Non-Spillable Batteries, [173.159(d)]) |  | 0.00 |
| 1 |     Shipped  22Oct2014 >> Lynden International<br>Rental of Makohead<br>    MakoHead stabilizer unit #1107      (1) case #1107 @120pounds 30"x 20"x 18"<br>    -10' power cord              [For Cameras HTS#9007910000]<br>    -30' power cord<br>    -insert stud/pin/castle nut<br>    -tuning box<br>    -stopper<br>    -charge cord<br>    - float plate assembly<br>    -36volt electronic battery charger #...000270<br>    -12volt > 36volt PowerConvertor #005C<br>    -'salt-a-way' rinse<br>    -instruction manual |  | 0.00 |

| | |
|---|---|
| Subtotal |  |
| Sales Tax (6.0%) |  |
| Total |  |
| Payments/Credits |  |
| Balance Due |  |

| Phone # | Fax # | E-mail | Web Site | USPPI EIN |
|---------|-------|--------|----------|-----------|
| 352-288-0111 |  | info@makohead.com | www.makohead.com |  |

CONFIDENTIAL

OPP000122

**Oceanic Production Equipment, Ltd**
10197 SE 144th Place
Summerfield, FL   34491

# Rental Invoice

| Date | Invoice # |
|------|-----------|
| 3/4/2015 | 93404 |

**Ship To**
Original Productions
Dutch Harbor, AK   99692

**Bill To**
Oppenheimer Cine Rental, LLC
7400 Third Avenue South
Seattle, WA   98108

| P.O. Number . | Date Required | Ship | Via | F.O.B. | Project | Terms |
|---------------|---------------|------|-----|--------|---------|-------|
| | 3/4/2015 | 3/4/2015 | | | Original Productions (Deadiest... | |

| Qty | Description | Each | Amount |
|-----|-------------|------|--------|
| 6 | Rental of Makohead<br>  MakoHead stabilizer unit #1104          (1) case #1107 @120pounds 30"x 20"x 18"<br>   -10' power cord          [For Cameras HTS#9007910000]<br>   -30' power cord<br>   -insert stud/pin/castle nut<br>   -tuning box<br>   -stopper<br>   -charge cord<br>   - float plate assembly<br>   -36volt electronic battery charger #...000102<br>   -12volt > 36volt PowerConvertor #001C<br>   -'salt-a-way' rinse<br>   -instruction manual | 516.00 | 3,096.00 |
| 2 | | | |
| | BatteryPowerSupplies #008L & #009L     (2) cases 48pounds each 12"X 12"X 10"<br>                          [For Cameras HTS#9007910000]<br>   (Contains: Non-Hazardous, Non-Spillable Batteries, [173.159(d)]) | | |

| | |
|--|--|
| Subtotal | $3,096.00 |
| Sales Tax (6.0%) | $0.00 |
| Total | $3,096.00 |
| Payments/Credits | $0.00 |
| Balance Due | $3,096.00 |

| Phone # | Fax # | E-mail | Web Site | USPPI EIN |
|---------|-------|--------|----------|-----------|
| 352-288-0111 | | info@makohead.com | www.makohead.com | |

CONFIDENTIAL                    OPP000124

**Oceanic Production Equipment, Ltd**

10197 SE 144th Place
Summerfield, FL   34491

# Rental Invoice

| Date | Invoice # |
|------|-----------|
| 11/23/2015 | 93407 |

**Ship To**
Original Productions
Dutch Harbor, AK   99692

**Bill To**
Oppenheimer Cine Rental, LLC
7400 Third Avenue South
Seattle, WA   98108

| P.O. Number | Date Required | Ship | Via | F.O.B. | Project | Terms |
|-------------|---------------|------|-----|--------|---------|-------|
| 105873 | 10/8/2015 | 10/7/2015 | | | Original Productions (Deadiest... | |

| Qty | Description | Each | Amount |
|-----|-------------|------|--------|
| 15 | Rental of Makohead | 516.00 | 7,740.00 |
| |     MakoHead stabilizer unit #1104       (1) case #1107 @120pounds 30"x 20"x 18" | | |
| |   -10' power cord       [For Cameras HTS#9007910000] | | |
| |   -30' power cord | | |
| |   -insert stud/pin/castle nut | | |
| |   -tuning box | | |
| |   -stopper | | |
| |   -charge cord | | |
| |   - float plate assembly | | |
| |   -36volt electronic battery charger #...000102 | | |
| |   -12volt > 36volt PowerConvertor #001C | | |
| |   -'salt-a-way' rinse | | |
| |   -instruction manual | | |
| 2 | | | 0.00 |
| | BatteryPowerSupplies #008L & #009L    (2) cases 48pounds each 12'X 12"X 10" | | |
| |         [For Cameras HTS#9007910000] | | |
| |    (Contains: Non-Hazardous,  Non-Spillable Batteries,  [173.159(d)]) | | |

| | | |
|---|---|---|
| Subtotal | | $7,740.00 |
| Sales Tax (6.0%) | | $0.00 |
| Total | | $7,740.00 |
| Payments/Credits | | $0.00 |
| Balance Due | | $7,740.00 |

| Phone # | Fax # | E-mail | Web Site | USPPI EIN |
|---------|-------|--------|----------|-----------|
| 352-266-7794 | | jd@oceanicproductionequipment.... | | |

**CONFIDENTIAL**

OPP000126

# EXHIBIT C

| From: | Robert Lauson [bob@lauson.com] |
|---|---|
| Sent: | Monday, April 03, 2017 1:27 PM |
| To: | myoungpa@gmail.com; jdoroshow@foxrothschild.com; 'Puri, Ashe P.' |
| Cc: | davidgrober1@gmail.com; 'Valerie Nichols' |
| Subject: | RE: Voice International Inc et al v. Oppenheimer Cine Rentals LLC et al, Case 2:15-cv-08830-JAK-KS |
| Importance: | High |

Mark,

We received your discovery responses after hours on Friday and the only nine (9) pages of documents. You objected and refused to provide information or documents to over 90% of the requests, citing as support the Court's instructions as to the proper "focus" of the jurisdictional discovery. We believe your objections lack merit, and that the requested information and documents are necessary to get at the jurisdictional issues of interest to the Court. Additionally, the documents you provided included the same invoices received from Defendant Oppenheimer, except they were altered to change the address of Oceanic from Summerfield, Florida to the Bahamas, and the "ship to" address to Original Products, Dutch Harbor, Alaska is deleted. Is your client somehow attempting to avoid liability for patent infringement for acts which occurred in the USA? We need to meet-and-confer as soon as possible prior to us bringing an ex-parte motion to compel? Are you available later today at 3 pm PDT (6 pm EDT)? If not, are you available tomorrow (Tues.) morning at 9 am PDT (Noon EDT)? Please advise.

Some examples of your improper responses. RFP Nos. 5-7 to OPEL, all emails between You and Oppenheimer pertaining to Original Productions, all emails containing the words "Original Productions," and all emails between You and Original Productions, you quote the Court's words in a boilerplate objection and otherwise failed to respond or produce emails. These emails pertain to whether OPEL knew Original Productions was based in California. Your objection to RFPs 8-10 to OPEL have the same improper objections, as the documents sought pertain to whether OPEL directly or indirectly rented the Makohead to a California entity, and if so, for use at what location. RFPs 15, 16 to OPEL requests all emails between John Dann and the Kleins, or emails including "Klein," "Jordan," "Jordie," of "Grober" since Oct. 8, 2012. The objections are inappropriate given these emails will shed light on the Kleins' role, if any, with OPEL. RFP 20 to OPEL, along with Interrogatory 8 to OPEL, request documents/information related to OPEL's formation, which similarly will shed light on the Kleins' role. RFP 22 requests phone statements for OPEL, which will shed light on the Kleins' involvement, whether OPEL knew Original Productions was in California, and what other rentals occurred to California-based companies. RFP 29 to OPEL requests copies of all checks written from any account owned by OPEL, which light on the Kleins receiving money from lease of MakoHeads in California. We are not required to accept as accurate the incomplete accounting provided in OPEL0007-0008.

Given we know the Magistrate is unavailable this week, would you like to stipulate to a two week extension of time to get us more documents and to complete the depositions. Otherwise, it appears we will have no choice but to file an ex-parte application to the district judge.

We will appreciate your immediate response. Thank you,



LAUSON & TARVER LLP
LEGAL SOLUTIONS FOR BIG IDEAS·

Bob Lauson

LAUSON & TARVER LLP
880 Apollo Street, Suite 301
El Segundo, CA 90245
Tel. (310) 726-0892
Fax (310) 726-0893
www.lauson.com
Intellectual Property Law
Patents, Trademarks, Copyrights

-----Original Message-----
From: Mark J. Young [mailto:myoungpa@gmail.com]
Sent: Friday, March 31, 2017 8:02 PM
To: 'Robert Lauson'; davidgrober1@gmail.com; jdoroshow@foxrothschild.com; Puri, Ashe P.
Subject: Voice International Inc et al v. Oppenheimer Cine Rentals LLC et al, Case 2:15-cv-08830-JAK-KS

Messrs. Grober & Lauson:

Attached please find responses to Plaintiffs' jurisdictional discovery requests.

--
Regards,
Mark J. Young

Mark Young P.A.
1638 Camden Ave.
Jacksonville, Florida 32207
Tel. 904-996-8099
Fax. 904-980-9234
myoungpa@gmail.com

This e-mail may contain confidential or privileged information. If you are not the intended recipient, please advise by return e-mail and delete immediately without reading or forwarding to others.

EXHIBIT D

# Mark Young P.A.

Patents, Trademarks.
Copyrights, Trade Secrets,
Transactions & Litigation

1638 Camden Ave.
Jacksonville, Florida 32207
Phone: 904-996-8099
Fax: 904-980-9234

Email:  myoung@myoungpa.com

April 4, 2017

Robert J. Lauson
Lauson & Tarver LLP
880 Apollo St., Suite. 301
El Segundo, CA 90245

Re:     Supplemental Responses to Jurisdictional Discovery Requests

Dear Mr. Lauson:

Thank you for your call today.  We have not changed the responses to requests for admission.  We have attached three additional documents, including an invoice from Cafferata Corporate Services, the service provider in the Bahamas that handles the annual filing for OPEL. MB&H Corporate Services Ltd. formed OPEL.  The additional documents also include two QuickBooks reports for OPEL.  We added a response to OPEL Interrogatory 8.  We also added explanations to responses and objections.  Added statements are underlined.

We prefer to adhere to the noticed schedule, with depositions on Monday, April 10th. Rescheduling will be difficult for the Kleins and John Dann.

The "Mako Account" is closed and OPEL does not have access to it.  Currently, OPEL does not have any bank account and has no plan of opening a bank account.  Currently, OPEL is not doing any business.  OPEL does not have copies of checks written by OPEL.  OPEL does not have copies of checks received for payments to OPEL.  OPEL does not have copies of bank statements.  OPEL has provided QuickBooks reports showing receipts and payments.  It is our understanding that Plaintiffs served SunTrust with third party requests for production for Mako Account records.

OPEL has searched its emails for any referring to the Mako Account, Oppenheimer, Jordan Klein Sr., Jordan Klein Jr., California, CA, or Original Productions.  Except for documents filed in this lawsuit and forwarded to OPEL by email, OPEL's search did not produce any such emails.  John Dann of OPEL does not recall any such emails.  Jordan Klein Sr. and John Dann and Jordan Klein Jr. prefer to, and frequently do, communicate in person, face to face, and less frequently via telephone.

Jordan Klein Sr. and Jordan Klein Jr. have searched their emails for any referring to the Mako Account, OPEL, Oppenheimer, California, CA or Original Productions.  Except for documents filed in this lawsuit and forwarded to them by email, their search did not produce any such emails and they do not recall any such emails.

I look forward to meeting you Monday.  Please don't hesitate to call with any questions.

Robert J. Lauson
Supplemental Responses
Page 2 of 2

Sincerely,

Mark Young, P.A.

Attachments:  as stated.

Cc:     David Grober
        578 West Washington Blvd., Suite 866
        Marina Del Rey, CA 90292



# CAFFERATA CORPORATE SERVICES
## LICENSED FINANCIAL & CORPORATE SERVICES PROVIDER

OCEANIC PRODUCTION EQUIPMENT, LTD.

Invoice Date **1/1/2017**

Invoice Number **18232**

**BILL TO:**     **OCEANIC PRODUCTION EQUIPMENT**

| | |
|---|---:|
| Maintenance of Registered Office and provision of the Registered Agent in accordance with Sections 37 and 38 of the International Business Companies Act, 2000 for the upcoming year, including maintenance of registers of members and officers/directors and correspondence with the client and the Registrar where necessary. | 500.00 |
| Disbursements:- <br> Annual fee in respect of the Company registered under the International Business Companies Act, 2000 where authorized capital is $50,000 and under | 350.00 |
| Conversion fees from US dollars to Bahamian dollars | 10.00 |
| ***WITH COMPLIMENTS*** | **$860.00** |

*For payment in US dollars, please remit by wire transfer. Corresponding Bank: Wells Fargo Bank, NA, International Branch, 375 Park Avenue, New York, NY; SWIFT Code: PNBPUS3NNYC; ABA Code: 026005092; For Credit: CIBC FirstCaribbean Bahamas Limited, Solomon's Building, East-West Highway, Nassau, NP, Bahamas; SWIFT Code: FCIBBSNS; Account Name/Number: Cafferata & Co. US$ Clients Account #1142494. When remitting funds, please refer to the name of the Company and/or our invoice number above. If payment is made by wire transfer please ensure your bank charges are paid so we receive full credit. Thank you.*

# EXHIBIT E

Mark J. Young
Mark Young, P.A.
1638 Camden Avenue
Jacksonville, FL 32225
Telephone: 904-996-8099
Facsimile: 904-980-9234
myoungpa@gmail.com

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VOICE INTERNATIONAL, INC., a California corporation; DAVID GROBER, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>OPPENHEIMER CINE RENTAL, LLC, a Washington corporation; OPPENHEIMER CAMERA PRODUCTS, INC., a Washington corporation; MARTY OPPENHEIMER, an individual; JORDAN KLEIN, SR., an individual; JORDAN KLEIN, JR., an individual; JOHN DANN, an individual; Mako Products, an unknown entity, Oceanic Production Equipment, Ltd., a Bahamian company; and DOES 1-10, inclusive, Defendants. | Case No.: CV-15-08830-JAK-KS<br><br>**OCEANIC PRODUCTION EQUIPMENT LTD's RESPONSES TO PLAINTIFF DAVID GROBER'S JURISDICTIONAL INTERROGATORIES** |

## GENERAL OBJECTIONS

1/14

Oceanic Production Equipment, Ltd (OPEL) makes the following general responses and objections ("General Objections") to each definition, instruction, and interrogatory propounded in Plaintiff David Grober's ("Grober's") Jurisdictional Interrogatories For OPEL. These General Objections are hereby incorporated into each specific response. The assertion of the same, similar or additional objections or partial responses to individual Requests does not waive any of OPEL's General Objections.

1. OPEL objects to the Interrogatories to the extent they purport to require unreasonably costly and/or time-consuming measures to locate information and respond, beyond the requirements of Fed. R. Civ. P. 26(b).

2. OPEL objects to each Interrogatory and to Grober's "Definitions" and "Instructions" to the extent they are vague, ambiguous, overbroad, or unduly burdensome, or purport to impose upon OPEL any duty or obligation that is inconsistent with or in excess of those obligations that are imposed by the Federal Rules of Civil Procedure and/or the Local Civil Rules of this Court, and/or any other applicable rule.

3. OPEL objects to Grober's definition of "business relationship" because it is are inaccurate, overly broad and unduly burdensome, vague and ambiguous.

4. OPEL objects to Grober's definitions of OPEL, "you" or "your" to the extent it purports to include any person or entity that is separate and distinct from OPEL

5. OPEL objects to Grober's definitions of "Travel Chronology Format" and "Flow of Revenue Format" and any request that an answer be specially formatted, to the extent that such formatting exceeds those obligations that are imposed by the Federal Rules of Civil Procedure and/or the Local Civil Rules of this Court, and/or any other applicable rule.

6. OPEL objects to Grober's definition of "Mako Head" as vague and ambiguous and overly broad and unduly burdensome to the extent it covers any product that Grober has not identified as infringing in Plaintiff's Infringement Contentions.

7. OPEL objects to each Interrogatory to the extent that it seeks information that is protected from disclosure by the attorney-client privilege, the attorney work product doctrine or any other applicable privilege, doctrine or discovery immunity. The inadvertent production by OPEL of information protected from disclosure by any such privilege, doctrine or immunity shall not be deemed a waiver by OPEL of any such privileges or protections. OPEL will identify any information withheld on the basis of such privilege, doctrine or immunity on a privilege log.

8. OPEL objects to each Interrogatory to the extent it seeks confidential, proprietary or trade secret information of third parties. Subject to its objections,

OPEL will only produce any such information after receiving permission from the third party and under the PROTECTIVE ORDER applicable in this case.

9. OPEL objects to each Request to the extent it seeks information that is not relevant to the issue of personal jurisdiction and is not limited to the scope permitted by the court. "Such discovery must be focused on the relationship of the Kleins to the Mako Account, and their roles, if any, with OPEL. It may also address what income, if any, the Kleins have received from the lease of MakoHeads in California since the conclusion of the Mako bankruptcy proceedings." "[F]ocused jurisdictional discovery is appropriate as to the following: (i) whether there was agreement between OPEL and Oppenheimer; (ii) whether OPEL knew that Original Productions was based in California; and (iii) whether OPEL directly or indirectly rented the MakoHead to a California entity, and if so, for use at what location." [Dkt. 118, pp. 11, 12] Accordingly, OPEL objects to each Interrogatory that (a) is not focused on the relationship of the Kleins to the Mako Account, and their roles, if any, with OPEL; and (b) does not address what income, if any, the Kleins have received from the lease of MakoHeads in California since the conclusion of the Mako bankruptcy proceedings; and is not focused on: (i) whether there was agreement between OPEL and Oppenheimer; (ii) whether OPEL knew that Original Productions was

based in California; and (iii) whether OPEL directly or indirectly rented the MakoHead to a California entity, and if so, for use at what location.

10. OPEL objects to each Interrogatory to the extent it is not limited in time and seeks information for periods of time that are not relevant to personal jurisdiction.

11. OPEL objects to each Interrogatory to the extent it seeks information that is not in the possession, custody, or control of OPEL.

12. OPEL objects to each Interrogatory to the extent that it seeks information that is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome or less expensive.

## SPECIFIC OBJECTIONS AND RESPONSES

Subject to the foregoing General Objections and the specific objections made below, OPEL objects and responds to Grober's Jurisdictional Interrogatories to OPEL as follows:

1. Describe in detail, each aspect of any contractual relationship OPEL has with Defendants Oppenheimer.

OPEL has no contractual relationship with Oppenheimer. Mako Products, which is now defunct, had an informal (unwritten) understanding with Oppenheimer, that Oppenheimer would pay Mako Products 60% of revenue from

leasing of MakoHead stabilizers by Oppenheimer.  After OPEL acquired Mako Products' assets in the bankruptcy, Oppenheimer continued to honor that arrangement, paying OPEL 60% of revenue from leasing of MakoHead stabilizers by Oppenheimer.

2. List the contact information for any person or entity in California for which you have had any type of "business relationship", and describe in as much detail as possible, that "business relationship" throughout its term.

OPEL has no business relationship with any person or entity in California.

3. If You were paid for any "business relationship" involving the MakoHead, by any person or entity in California, either directly or through a third party, provide the contact information, dates involved in the transaction(s), and the gross amount of each transaction.

OPEL has received payments from Oppenheimer, a Washington state entity.

| Customer | Invoice | Date | Amount | Location |
|----------|---------|------|--------|----------|
| Oppenheimer | 93389 | 10/05/2013 | $ 8,640.00 | Deadliest Catch (Vancouver) |
| Oppenheimer | 93394 | 10/14/2014 | $ 9,180.00 | Deadliest Catch (Vancouver) |
| Oppenheimer | 93404 | 03/04/2015 | $ 3,096.00 | Deadliest Catch (Vancouver) |
| Oppenheimer | 93407 | 11/23/2015 | $ 7,740.00 | Deadliest Catch (Vancouver) |
| Oppenheimer | 93408 | 02/29/2016 | $ 6,740.00 | Deadliest Catch (Vancouver) |

4. List all monies paid into any banking account owned by You from October 8, 2012 until March 17, 2017.

OPEL purchased the assets of Mako Products 06/03/2013, including this account of deposits.

| | |
|---|---|
| 10/17/2012 | $   300.00 |
| 10/18/2012 | $ 1,056.64 |
| 10/30/2012 | $ 1,000.00 |
| 11/19/2012 | $   649.57 |
| 12/03/2012 | $ 3,600.00 |
| 12/03/2012 | $ 5,635.00 |
| 12/18/2012 | $ 3,200.00 |
| 12/24/2012 | $ 4,320.00 |
| 01/23/2013 | $ 2,050.00 |
| 02/20/2013 | $   336.63 |
| 04/02/2013 | $ 8,640.00 |
| 05/13/2013 | $15,900.00 |
| 08/31/2013 | $13,000.00 |
| 12/05/2013 | $ 1,503.00 |
| 04/02/2014 | $    14.28 |

| | |
|---|---|
| 04/02/2014 | $ 8,835.00 |
| 04/10/2014 | $ 82.12 |
| 04/10/2014 | $ 147.79 |
| 10/10/2014 | $ 188.00 |
| 01/05/2015 | $15,300.00 |
| 03/23/2015 | $ 1,274.71 |
| 10/21/2015 | $ 505.53 |
| 10/21/2015 | $ 3,096.00 |
| 11/16/2015 | $ 2,520.00 |
| 11/16/2015 | $ 293.65 |
| 01/04/2016 | $ 7,740.00 |
| 03/28/2016 | $ 665.25 |
| 06/28/2016 | $ 55.84 |
| 07/07/2016 | $ 20.00 |
| 07/27/2016 | $ 50.00 |

5. Doc. 118 in this action says "All other assets were sent to OPEL in the Bahamas." Describe exactly what assets went to OPEL, including the serial numbers of all MakoHeads and batteries. Please state the contact information for:

1. the person who sent them to the Bahamas, 2. the person who received them in the Bahamas, 3. the location where they were stored in the Bahamas, 4. the date and destination the first time that they left the Bahamas, if they did.

OPEL objects to this Interrogatory because it: (a) is not focused on the relationship of the Kleins to the Mako Account, and their roles, if any, with OPEL; and (b) does not address what income, if any, the Kleins have received from the lease of MakoHeads in California since the conclusion of the Mako bankruptcy proceedings; and is not focused on: (i) whether there was agreement between OPEL and Oppenheimer; (ii) whether OPEL knew that Original Productions was based in California; and (iii) whether OPEL directly or indirectly rented the MakoHead to a California entity, and if so, for use at what location.

6. List the dates of travel, start and finish locations, shipper and tracking number for each time a MakoHead listed in BK Doc 16 was transported over ten miles. Start from May 15, 2015 until the present day. Use the Travel Chronology Format found in our Definitions. If you object, provide the information in any format that provides all of the requested information. We are asking to be able to track the

movement of each of the five MakoHeads and its associated battery(s), starting with the Mako Products, Inc. auction date of May 15, 2015, until the present day.

OPEL objects to this Interrogatory because it: (a) is not focused on the relationship of the Kleins to the Mako Account, and their roles, if any, with OPEL; and (b) does not address what income, if any, the Kleins have received from the lease of MakoHeads in California since the conclusion of the Mako bankruptcy proceedings; and is not focused on: (i) whether there was agreement between OPEL and Oppenheimer; (ii) whether OPEL knew that Original Productions was based in California; and (iii) whether OPEL directly or indirectly rented the MakoHead to a California entity, and if so, for use at what location.

      Subject to the foregoing objections, OPEL has no records of travel.

7. List the "Flow of Revenue" for each MakoHead rental, lease or sale starting with the Mako Products, Inc. auction date of May 15, 2015, until the present day. Use the "Flow of Revenue" format found in our Definitions. If you object, we are asking to be able to follow the flow of all revenue from the time the production company renter or purchaser paid for the rental or sale, until those funds were distributed to you, or remained with an intermediary.

OPEL objects to this Interrogatory because it: (a) is not focused on the relationship of the Kleins to the Mako Account, and their roles, if any, with OPEL; and (b) does not address what income, if any, the Kleins have received from the lease of MakoHeads in California since the conclusion of the Mako bankruptcy proceedings; and is not focused on: (i) whether there was agreement between OPEL and Oppenheimer; (ii) whether OPEL knew that Original Productions was based in California; and (iii) whether OPEL directly or indirectly rented the MakoHead to a California entity, and if so, for use at what location.

   Subject to the foregoing objection, OPEL has provided reports in response to requests for production (OPEL0007-0009, 0011-0027) showing all OPEL revenue.

8. Describe the formation process of OPEL. Who caused it to be formed? Who paid for its formation? Who signed any documents that were involved in the formation process, its legal status on January 1st of each year since its inception, and your role, in detail, in its formation.


OPEL objects to this Interrogatory because it: (a) is not focused on the relationship of the Kleins to the Mako Account, and their roles, if any, with OPEL; and (b) does not address what income, if any, the Kleins have received from the lease of MakoHeads in California since the conclusion of the Mako bankruptcy

proceedings; and is not focused on: (i) whether there was agreement between OPEL and Oppenheimer; (ii) whether OPEL knew that Original Productions was based in California; and (iii) whether OPEL directly or indirectly rented the MakoHead to a California entity, and if so, for use at what location.

Subject to the foregoing objection, about 2014, John Dann, with help from Jordan Klein Sr., contacted MB&H Corporate Services Ltd. MB&H Corporate Services Ltd. formed OPEL. CAFFERATA CORPORATE SERVICES ("CCS") maintains OPEL. Jordan Klein Sr. paid for the formation, and OPEL eventually reimbursed him for the expense. Except for facilitating the formation of OPEL, Jordan Klein Sr. was never actively involved in OPEL. Jordan Klein Sr. was never involved in the management or operations of OPEL. After the formation, John Dann served as the sole officer and director of OPEL. In 2015 and 2016 John Dann served as the sole officer and director of OPEL. Jordan Klein Jr. was not involved in any way with the formation, management or operations of OPEL. Today, OPEL is not engaged in any business.

Dated: April 4, 2017

Mark Young, P.A

By: */s/ Mark J. Young*

Mark J. Young
Mark Young, P.A.

12/14

1638 Camden Avenue
Jacksonville, FL 32225
Telephone: 904-996-8099
Facsimile: 904-980-9234
myoungpa@gmail.com
FL Bar 78158
Pro Hac Vice Application Filed

## VERIFICATION

I, John Dann, on behalf of OPEL, have read the foregoing interrogatories and the answers to those interrogatories, which are true according to the best of my knowledge, information, and belief. I declare under penalty of perjury that the foregoing is true and correct.

Dated this 4th day of April, 2017.

_____
Signature

# EXHIBIT F

Mark J. Young
Mark Young, P.A.
1638 Camden Avenue
Jacksonville, FL 32225
Telephone: 904-996-8099
Facsimile: 904-980-9234
myoungpa@gmail.com

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VOICE INTERNATIONAL, INC., a California corporation; DAVID GROBER, an individual, <br><br> Plaintiff, <br><br> vs. <br><br> OPPENHEIMER CINE RENTAL, LLC, a Washington corporation; OPPENHEIMER CAMERA PRODUCTS, INC., a Washington corporation; MARTY OPPENHEIMER, an individual; JORDAN KLEIN, SR., an individual; JORDAN KLEIN, JR., an individual; JOHN DANN, an individual; Mako Products, an unknown entity, Oceanic Production Equipment, Ltd., a Bahamian company; and DOES 1-10, inclusive, <br> Defendants. | Case No.: CV-15-08830-JAK-KS <br><br> **OPEL'S RESPONSES TO PLAINTIFF DAVID GROBER'S JURISDICTIONAL REQUEST FOR PRODUCTION** |

## GENERAL OBJECTIONS

1/34

Oceanic Production Equipment, Ltd. (OPEL) makes the following general responses and objections ("General Objections") to each definition, instruction, and Request propounded in Plaintiff David Grober's ("Grober's") Jurisdictional Request For Production to OPEL. These General Objections are hereby incorporated into each specific response. The assertion of the same, similar or additional objections or partial responses to individual Requests does not waive any of OPEL's General Objections.

1. OPEL objects to the Requests to the extent they purport to require unreasonably costly and/or time-consuming measures to locate and produce responsive documents, beyond the requirements of Fed. R. Civ. P. 26(b).

2. OPEL objects to each Request and to Grober's "Definitions" and "Instructions" to the extent they are vague, ambiguous, overbroad, or unduly burdensome, or purport to impose upon OPEL any duty or obligation that is inconsistent with or in excess of those obligations that are imposed by the Federal Rules of Civil Procedure and/or the Local Civil Rules of this Court, and/or any other applicable rule.

3. OPEL objects to Grober's definition of "business relationship" because it is inaccurate, overly broad and unduly burdensome, vague and ambiguous.

4. OPEL objects to Grober's definition of "OPEL," "you" or "your" to the extent it purports to include any person or entity that is separate and distinct from OPEL

5. OPEL objects to Grober's definition of "Mako Head" as vague and ambiguous and overly broad and unduly burdensome to the extent it covers any product that Grober has not identified as infringing in Plaintiff's Infringement Contentions.

6. OPEL objects to the Requests to the extent they purport to require OPEL to produce "all," "any," "each" or other similarly expansive or all-inclusive terms.

7. OPEL objects to each Request to the extent that it seeks information that is protected from disclosure by the attorney-client privilege, the attorney work product doctrine or any other applicable privilege, doctrine or discovery immunity. The inadvertent production by OPEL of information protected from disclosure by any such privilege, doctrine or immunity shall not be deemed a waiver by OPEL of any such privileges or protections. OPEL will identify any information withheld on the basis of such privilege, doctrine or immunity on a privilege log.

8. OPEL objects to each Request to the extent it seeks confidential, proprietary or trade secret information of third parties. Subject to its objections, OPEL will only produce any such information after receiving permission from the third party and under the PROTECTIVE ORDER applicable in this case.

3/34

9. OPEL objects to each Request to the extent it seeks information that is not relevant to the issue of personal jurisdiction and is not limited to the scope permitted by the court. "Such discovery must be focused on the relationship of the Kleins to the Mako Account, and their roles, if any, with OPEL. It may also address what income, if any, the Kleins have received from the lease of MakoHeads in California since the conclusion of the Mako bankruptcy proceedings." "[F]ocused jurisdictional discovery is appropriate as to the following: (i) whether there was agreement between OPEL and Oppenheimer; (ii) whether OPEL knew that Original Productions was based in California; and (iii) whether OPEL directly or indirectly rented the MakoHead to a California entity, and if so, for use at what location." [Dkt. 118, pp. 11, 12]

10. OPEL objects to each Request to the extent it is not limited in time and seeks information for periods of time that are not relevant to personal jurisdiction.

11. OPEL objects to each Request to the extent it seeks information that is not in the possession, custody, or control of OPEL.

12. OPEL objects to each Request to the extent that it seeks information that is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome or less expensive.

4/34

13. Any response herein that OPEL agrees to produce responsive documents subject to OPEL's objections is not an admission or representation that any such document exists.

## SPECIFIC OBJECTIONS AND RESPONSES

Subject to the foregoing General Objections and the specific objections made below, OPEL objects and responds to Grober's Jurisdictional Request For Production to OPEL as follows:

1. All written agreement(s) between You and Oppenheimer.

OPEL objects to this Request because the Request: (a) is not focused on the relationship of the Kleins to the Mako Account, and their roles, if any, with OPEL; and (b) does not address what income, if any, the Kleins have received from the lease of MakoHeads in California since the conclusion of the Mako bankruptcy proceedings; and is not focused on: (i) whether there was agreement between OPEL and Oppenheimer; (ii) whether OPEL knew that Original Productions was based in California; and (iii) whether OPEL directly or indirectly rented the MakoHead to a California entity, and if so, for use at what location."

Subject to the foregoing and general objections, after a reasonable and diligent search by John Dann, OPEL did not locate any documents responsive to this request.

5/34

2. Documents sufficient to define the terms of oral agreement(s) between You and
Oppenheimer.

OPEL objects to this Request because the Request: (a) is not focused on the
relationship of the Kleins to the Mako Account, and their roles, if any, with OPEL;
and (b) does not address what income, if any, the Kleins have received from the
lease of MakoHeads in California since the conclusion of the Mako bankruptcy
proceedings; and is not focused on: (i) whether there was agreement between
OPEL and Oppenheimer; (ii) whether OPEL knew that Original Productions was
based in California; and (iii) whether OPEL directly or indirectly rented the
MakoHead to a California entity, and if so, for use at what location."

Subject to the foregoing and general objections, after a reasonable and
diligent search by John Dann, OPEL did not locate any documents responsive to
this request.

3. Documents sufficient to define the terms under which You and Oppenheimer
have done business.

OPEL objects to this Request because the Request: (a) is not focused on the
relationship of the Kleins to the Mako Account, and their roles, if any, with OPEL;

6/34

and (b) does not address what income, if any, the Kleins have received from the lease of MakoHeads in California since the conclusion of the Mako bankruptcy proceedings; and is not focused on: (i) whether there was agreement between OPEL and Oppenheimer; (ii) whether OPEL knew that Original Productions was based in California; and (iii) whether OPEL directly or indirectly rented the MakoHead to a California entity, and if so, for use at what location."

OPEL0001-OPEL0006 are invoices from Oceanic Production Equipment, Ltd to Oppenheimer Cine Rental, LLC.

OPEL0009 is a report of transactions by customer for Oceanic Production Equipment, Ltd. OPEL0009 is Confidential.

4. All documents pertaining to You receiving monies from Oppenheimer for rental of the MakoHead.

OPEL objects to this Request because the Request: (a) is not focused on the relationship of the Kleins to the Mako Account, and their roles, if any, with OPEL; and (b) does not address what income, if any, the Kleins have received from the lease of MakoHeads in California since the conclusion of the Mako bankruptcy proceedings; and is not focused on: (i) whether there was agreement between OPEL and Oppenheimer; (ii) whether OPEL knew that Original Productions was

based in California; and (iii) whether OPEL directly or indirectly rented the MakoHead to a California entity, and if so, for use at what location."

OPEL0001-OPEL0006 are invoices from Oceanic Production Equipment, Ltd to Oppenheimer Cine Rental, LLC.

OPEL0008 is a report of deposits by Oceanic Production Equipment, Ltd.

OPEL0009 is a report of transactions by customer for Oceanic Production Equipment, Ltd.

The bank checking account referenced in 0007-0009 is SunTrust 063102152 : 1000004328224.

OPEL0008-0009 are Confidential.


5. All emails or other documents between You and Oppenheimer pertaining to Original Productions, or containing the words "Original Productions."

OPEL objects to this Request because the Request: (a) is not focused on the relationship of the Kleins to the Mako Account, and their roles, if any, with OPEL; and (b) does not address what income, if any, the Kleins have received from the lease of MakoHeads in California since the conclusion of the Mako bankruptcy proceedings; and is not focused on: (i) whether there was agreement between OPEL and Oppenheimer; (ii) whether OPEL knew that Original Productions was

based in California; and (iii) whether OPEL directly or indirectly rented the MakoHead to a California entity, and if so, for use at what location."

        Subject to the foregoing and general objections, after a reasonable and diligent search by John Dann, OPEL did not locate any documents responsive to this request.

6. All emails or other documents containing the words "Original Productions."

        OPEL objects to this Request because the Request: (a) is not focused on the relationship of the Kleins to the Mako Account, and their roles, if any, with OPEL; and (b) does not address what income, if any, the Kleins have received from the lease of MakoHeads in California since the conclusion of the Mako bankruptcy proceedings.

        Subject to the foregoing and general objections, after a reasonable and diligent search by John Dann, OPEL did not locate any documents responsive to this request, except documents filed by Plaintiffs in this lawsuit.

7. All documents pertaining in any way Original Productions, including all emails between You and Original Productions.

OPEL objects to this Request because the Request: (a) is not focused on the relationship of the Kleins to the Mako Account, and their roles, if any, with OPEL; and (b) does not address what income, if any, the Kleins have received from the lease of MakoHeads in California since the conclusion of the Mako bankruptcy proceedings; and is not focused on: (i) whether there was agreement between OPEL and Oppenheimer; (ii) whether OPEL knew that Original Productions was based in California; and (iii) whether OPEL directly or indirectly rented the MakoHead to a California entity, and if so, for use at what location."

Subject to the foregoing and general objections, after a reasonable and diligent search by John Dann, OPEL did not locate any documents responsive to this request, except documents filed by Plaintiffs in this lawsuit.

8. All emails reflecting any MakoHead You owned being rented to any entity or individual based in California for use anywhere.

OPEL objects to this Request because the Request: (a) is not focused on the relationship of the Kleins to the Mako Account, and their roles, if any, with OPEL; and (b) does not address what income, if any, the Kleins have received from the lease of MakoHeads in California since the conclusion of the Mako bankruptcy proceedings; and is not focused on: (i) whether there was agreement between

OPEL and Oppenheimer; (ii) whether OPEL knew that Original Productions was based in California; and (iii) whether OPEL directly or indirectly rented the MakoHead to a California entity, and if so, for use at what location."

    <u>Subject to the foregoing and general objections, after a reasonable and diligent search by John Dann, OPEL did not locate any documents responsive to this request, except documents filed by Plaintiffs in this lawsuit.</u>

9. All documents reflecting communications between You and any entity or individual residing in California.

    OPEL objects to this Request because the Request: (a) is not focused on the relationship of the Kleins to the Mako Account, and their roles, if any, with OPEL; and (b) does not address what income, if any, the Kleins have received from the lease of MakoHeads in California since the conclusion of the Mako bankruptcy proceedings; and is not focused on: (i) whether there was agreement between OPEL and Oppenheimer; (ii) whether OPEL knew that Original Productions was based in California; and (iii) whether OPEL directly or indirectly rented the MakoHead to a California entity, and if so, for use at what location."

Subject to the foregoing and general objections, after a reasonable and diligent search by John Dann, OPEL did not locate any documents responsive to this request, except documents filed by Plaintiffs in this lawsuit.

10. All emails including the word "California" or the capital letters "CA."

OPEL objects to this Request because the Request: (a) is not focused on the relationship of the Kleins to the Mako Account, and their roles, if any, with OPEL; and (b) does not address what income, if any, the Kleins have received from the lease of MakoHeads in California since the conclusion of the Mako bankruptcy proceedings; and is not focused on: (i) whether there was agreement between OPEL and Oppenheimer; (ii) whether OPEL knew that Original Productions was based in California; and (iii) whether OPEL directly or indirectly rented the MakoHead to a California entity, and if so, for use at what location."

Subject to the foregoing and general objections, after a reasonable and diligent search by John Dann, OPEL did not locate any documents responsive to this request, except documents filed by Plaintiffs in this lawsuit.

11. All documents indicating the relationship between the Kleins and Your bank account(s).

OPEL objects to this Request because the Request: (a) is not focused on the relationship of the Kleins to the Mako Account, and their roles, if any, with OPEL; and (b) does not address what income, if any, the Kleins have received from the lease of MakoHeads in California since the conclusion of the Mako bankruptcy proceedings; and is not focused on: (i) whether there was agreement between OPEL and Oppenheimer; (ii) whether OPEL knew that Original Productions was based in California; and (iii) whether OPEL directly or indirectly rented the MakoHead to a California entity, and if so, for use at what location."

OPEL0007 is a report of payments by check from Oceanic Production Equipment, Ltd.

OPEL0008 is a report of deposits by Oceanic Production Equipment, Ltd.

OPEL0009 is a report of transactions by customer for Oceanic Production Equipment, Ltd.

OPEL0007-0009 are Confidential.


12. All documents indicating monies from the rental of any MakoHead You own which went to the Kleins for any reason.

OPEL0007 is a report of payments by check from Oceanic Production Equipment, Ltd.

OPEL0008 is a report of deposits by Oceanic Production Equipment, Ltd.

OPEL0009 is a report of transactions by customer for Oceanic Production Equipment, Ltd.

OPEL0007-0009 are Confidential.

OPEL0011-0027 are additional reports, including a check detail report (OPEL0011-0025) and a deposit detail report (OPEL0026-0027).

OPEL0011-0027 are Confidential.

OPEL objects to this Request ~~because~~to the extent the Request: (a) is not focused on the relationship of the Kleins to the Mako Account, and their roles, if any, with OPEL; and (b) does not address what income, if any, the Kleins have received from the lease of MakoHeads in California since the conclusion of the Mako bankruptcy proceedings; and is not focused on: (i) whether there was agreement between OPEL and Oppenheimer; (ii) whether OPEL knew that Original Productions was based in California; and (iii) whether OPEL directly or indirectly rented the MakoHead to a California entity, and if so, for use at what location."

13. All documents and written agreements between You and the Kleins, or that indicate the roles of the Kleins in OPEL.

OPEL objects to this Request because the Request: (a) is not focused on the relationship of the Kleins to the Mako Account, and their roles, if any, with OPEL; and (b) does not address what income, if any, the Kleins have received from the lease of MakoHeads in California since the conclusion of the Mako bankruptcy proceedings; and is not focused on: (i) whether there was agreement between OPEL and Oppenheimer; (ii) whether OPEL knew that Original Productions was based in California; and (iii) whether OPEL directly or indirectly rented the MakoHead to a California entity, and if so, for use at what location."

Subject to the foregoing and general objections, after a reasonable and diligent search by John Dann, OPEL did not locate any documents responsive to this request.

14. All writings tending to define the terms of oral agreement(s) with the Kleins.

OPEL objects to this Request because the Request: (a) is not focused on the relationship of the Kleins to the Mako Account, and their roles, if any, with OPEL; and (b) does not address what income, if any, the Kleins have received from the lease of MakoHeads in California since the conclusion of the Mako bankruptcy proceedings; and is not focused on: (i) whether there was agreement between OPEL and Oppenheimer; (ii) whether OPEL knew that Original Productions was based in California; and (iii) whether OPEL directly or indirectly rented the MakoHead to a California entity, and if so, for use at what location."

Subject to the foregoing and general objections, after a reasonable and diligent search by John Dann, OPEL did not locate any documents responsive to this request.

15. All emails between John Dann and the Kleins since October 8, 2012.

OPEL objects to this Request because the Request: (a) is not focused on the relationship of the Kleins to the Mako Account, and their roles, if any, with OPEL; and (b) does not address what income, if any, the Kleins have received from the lease of MakoHeads in California since the conclusion of the Mako bankruptcy

proceedings; and is not focused on: (i) whether there was agreement between OPEL and Oppenheimer; (ii) whether OPEL knew that Original Productions was based in California; and (iii) whether OPEL directly or indirectly rented the MakoHead to a California entity, and if so, for use at what location."

_Subject to the foregoing objection, OPEL has searched its emails for any referring to the Mako Account, Oppenheimer, Jordan Klein Sr., Jordan Klein Jr., California, CA, or Original Productions.  Except for documents filed in this lawsuit and forwarded to OPEL by email, OPEL's search did not produce any such emails._ _John Dann of OPEL does not recall any such emails. OPEL's email service provider is pair.net.  The email server maintains OPEL's emails for 180 days._ _Jordan Klein Sr. and John Dann and Jordan Klein Jr. prefer to, and frequently do, communicate in person, face to face, and less frequently via telephone._

16. All emails including "Klein", "Jordan", "Jordie", or "Grober" since October 8, 2012.

OPEL objects to this Request because the Request: (a) is not focused on the relationship of the Kleins to the Mako Account, and their roles, if any, with OPEL; and (b) does not address what income, if any, the Kleins have received from the lease of MakoHeads in California since the conclusion of the Mako bankruptcy

proceedings; and is not focused on: (i) whether there was agreement between OPEL and Oppenheimer; (ii) whether OPEL knew that Original Productions was based in California; and (iii) whether OPEL directly or indirectly rented the MakoHead to a California entity, and if so, for use at what location."

    Subject to the foregoing objection, OPEL has searched its emails for any referring to the Mako Account, Oppenheimer, Jordan Klein Sr., Jordan Klein Jr., California, CA, or Original Productions. Except for documents filed in this lawsuit and forwarded to OPEL by email, OPEL's search did not produce any such emails. John Dann of OPEL does not recall any such emails. OPEL's email service provider is pair.net. The email server maintains OPEL's emails for 180 days. Jordan Klein Sr. and John Dann and Jordan Klein Jr. prefer to, and frequently do, communicate in person, face to face, and less frequently via telephone.

17. Documents sufficient to identify all Your bank account(s) including account number(s) and financial institution(s), dates opened, closed and signatures cards from the time You took ownership of any MakoHead.

    OPEL objects to this Request because the Request: (a) is not focused on the relationship of the Kleins to the Mako Account, and their roles, if any, with OPEL;

and (b) does not address what income, if any, the Kleins have received from the

lease of MakoHeads in California since the conclusion of the Mako bankruptcy

proceedings; and is not focused on: (i) whether there was agreement between

OPEL and Oppenheimer; (ii) whether OPEL knew that Original Productions was

based in California; and (iii) whether OPEL directly or indirectly rented the

MakoHead to a California entity, and if so, for use at what location."

        The "Mako Account" is closed.  It closed on or about July 2016.  Since

closure of that account, OPEL does not have access to it.  Currently, OPEL does

not have any bank account and has no plan of opening a bank account.  Currently,

OPEL is not doing any business.  OPEL does not have copies of checks written by

OPEL.  OPEL does not have copies of checks received for payments to OPEL.

OPEL has provided QuickBooks reports showing receipts and payments.  It is

OPEL's understanding that Plaintiffs served SunTrust with third party requests for

production for Mako Account records.  OPEL did not move to quash or otherwise

interfere with those requests.

18. All Your bank statements from October 8, 2012 to the present.

        OPEL objects to this Request because the Request: (a) is not focused on the

relationship of the Kleins to the Mako Account, and their roles, if any, with OPEL;

and (b) does not address what income, if any, the Kleins have received from the lease of MakoHeads in California since the conclusion of the Mako bankruptcy proceedings; and is not focused on: (i) whether there was agreement between OPEL and Oppenheimer; (ii) whether OPEL knew that Original Productions was based in California; and (iii) whether OPEL directly or indirectly rented the MakoHead to a California entity, and if so, for use at what location."

The "Mako Account" is closed. It closed on or about July 2016. Since closure of that account, OPEL does not have access to it. Currently, OPEL does not have any bank account and has no plan of opening a bank account. Currently, OPEL is not doing any business. OPEL does not have copies of checks written by OPEL. OPEL does not have copies of checks received for payments to OPEL. OPEL does not have copies of bank statements. OPEL has provided QuickBooks reports showing receipts and payments. It is OPEL's understanding that Plaintiffs served SunTrust with third party requests for production for Mako Account records. OPEL did not move to quash or otherwise interfere with those requests.

Subject to the foregoing and general objections, after a reasonable and diligent search by John Dann, OPEL did not locate any documents responsive to this request.

19. All bank statements indicating monies You received from Oppenheimer or anyone in California pertaining to the MakoHead.

OPEL objects to this Request because the Request: (a) is not focused on the relationship of the Kleins to the Mako Account, and their roles, if any, with OPEL; and (b) does not address what income, if any, the Kleins have received from the lease of MakoHeads in California since the conclusion of the Mako bankruptcy proceedings; and is not focused on: (i) whether there was agreement between OPEL and Oppenheimer; (ii) whether OPEL knew that Original Productions was based in California; and (iii) whether OPEL directly or indirectly rented the MakoHead to a California entity, and if so, for use at what location."

OPEL0001-OPEL0006 are invoices from Oceanic Production Equipment, Ltd to Oppenheimer Cine Rental, LLC.

OPEL0007 is a report of payments by check from Oceanic Production Equipment, Ltd.

OPEL0008 is a report of deposits by Oceanic Production Equipment, Ltd. OPEL0009 is a report of transactions by customer for Oceanic Production Equipment, Ltd.

None of the transactions, payments or invoices are from or to California. OPEL0007-0009 are Confidential.

OPEL0011-0027 are additional reports, including a check detail report (OPEL0011-0025) and a deposit detail report (OPEL0026-0027).

OPEL0011-0027 are Confidential.

The "Mako Account" is closed. It closed on or about July 2016. Since closure of that account, OPEL does not have access to it. Currently, OPEL does not have any bank account and has no plan of opening a bank account. Currently, OPEL is not doing any business. OPEL does not have copies of checks written by OPEL. OPEL does not have copies of checks received for payments to OPEL. OPEL does not have copies of bank statements. OPEL has provided QuickBooks reports showing receipts and payments. It is OPEL's understanding that Plaintiffs served SunTrust with third party requests for production for Mako Account records. OPEL did not move to quash or otherwise interfere with those requests.

20. Provide copies of the all documents reflecting OPEL's business formation including corporate or fictitious entity documents, and all businesses licenses that support your contention for the creation of OPEL as stated in Doc 55-3,para 9. "I

am the sole owner of sole owner of Oceanic Production Equipment, Ltd., a Bahamian entity."

OPEL objects to this Request because the Request: (a) is not focused on the relationship of the Kleins to the Mako Account, and their roles, if any, with OPEL; and (b) does not address what income, if any, the Kleins have received from the lease of MakoHeads in California since the conclusion of the Mako bankruptcy proceedings; and is not focused on: (i) whether there was agreement between OPEL and Oppenheimer; (ii) whether OPEL knew that Original Productions was based in California; and (iii) whether OPEL directly or indirectly rented the MakoHead to a California entity, and if so, for use at what location.

Subject to the foregoing and general objections, after a reasonable and diligent search by John Dann, OPEL did not locate any documents responsive to this request.  OPEL has attached a recent invoice from CAFFERATA CORPORATE SERVICES (CCS), a Bahamian company that maintains OPEL. MB&H Corporate Services Ltd. formed OPEL.


21. Provide copies of all tax records, and/or financial documents that support your contention that OPEL is the owner of any MakoHead, and identify the MakoHead and battery serial numbers so claimed as owned by OPEL.

Case 2:15-cv-08830-JAK-KS  Document 126-1  Filed 04/06/17  Page 59 of 92  Page ID #:1793

OPEL objects to this Request because the Request: (a) is not focused on the relationship of the Kleins to the Mako Account, and their roles, if any, with OPEL; and (b) does not address what income, if any, the Kleins have received from the lease of MakoHeads in California since the conclusion of the Mako bankruptcy proceedings; and is not focused on: (i) whether there was agreement between OPEL and Oppenheimer; (ii) whether OPEL knew that Original Productions was based in California; and (iii) whether OPEL directly or indirectly rented the MakoHead to a California entity, and if so, for use at what location.

It is OPEL's understanding that Plaintiffs already possess documents from the bankruptcy through which OPEL acquired assets of the now bankrupt Mako Products. OPEL does not possess copies of those documents, but understands that they are available for download from pacer.gov. The case is: Bankruptcy Petition #: 3:12-bk-06572-JAF.

Subject to the foregoing and general objections, after a reasonable and diligent search by John Dann, OPEL did not locate any documents responsive to this request.

22. All monthly telephone statements for the telephones from which you conducted the business of OPEL.

OPEL objects to this Request because the Request: (a) is not focused on the relationship of the Kleins to the Mako Account, and their roles, if any, with OPEL; and (b) does not address what income, if any, the Kleins have received from the lease of MakoHeads in California since the conclusion of the Mako bankruptcy proceedings; and is not focused on: (i) whether there was agreement between OPEL and Oppenheimer; (ii) whether OPEL knew that Original Productions was based in California; and (iii) whether OPEL directly or indirectly rented the MakoHead to a California entity, and if so, for use at what location.

Subject to the foregoing and general objections, after a reasonable and diligent search by John Dann, OPEL did not locate any documents responsive to this request. OPEL does not have any telephone number. OPEL does not have any phone statements. John Dann has one telephone number (352-266-7794). The statements for that phone number do not list numbers called. It is OPEL's understanding that that Plaintiffs served AT&T with third party requests for production of phone records for that number. OPEL did not move to quash or otherwise interfere with those requests.

23. Provide all credit card and bank account statements for any account owned or used by OPEL which support your contention that the Kleins are not involved with OPEL.

OPEL objects to this Request because the Request: (a) is not focused on the relationship of the Kleins to the Mako Account, and their roles, if any, with OPEL; and (b) does not address what income, if any, the Kleins have received from the lease of MakoHeads in California since the conclusion of the Mako bankruptcy proceedings; and is not focused on: (i) whether there was agreement between OPEL and Oppenheimer; (ii) whether OPEL knew that Original Productions was based in California; and (iii) whether OPEL directly or indirectly rented the MakoHead to a California entity, and if so, for use at what location.

Subject to the foregoing and general objections, after a reasonable and diligent search by John Dann, OPEL did not locate any documents responsive to this request.

24. For all transactions of any MakoHead owned by OPEL, provide MakoHead and battery serial numbers and all documents related to each transaction including invoices, insurance certificates, checks contracts, dates of use, shipping and transportation, and correspondence between OPEL and all persons involved in that transaction.

OPEL objects to this Request because the Request: (a) is not focused on the relationship of the Kleins to the Mako Account, and their roles, if any, with OPEL; and (b) does not address what income, if any, the Kleins have received from the

lease of MakoHeads in California since the conclusion of the Mako bankruptcy proceedings; and is not focused on: (i) whether there was agreement between OPEL and Oppenheimer; (ii) whether OPEL knew that Original Productions was based in California; and (iii) whether OPEL directly or indirectly rented the MakoHead to a California entity, and if so, for use at what location.

OPEL objects to this request because the phrase "all transactions of any MakoHead owned by OPEL" is inaccurate, overly broad and unduly burdensome, vague and ambiguous.

Subject to the foregoing and general objections, after a reasonable and diligent search by John Dann, OPEL did not locate any documents responsive to this request.

25. Canada and the United States require Carnets for commercial equipment traveling across their borders. Provide copies of all Carnets and shipping or travel documents used to transport any MakoHead belonging to OPEL, (and identify the MakoHead serial #,) to or from the Unites States and separately, to or from Canada.

OPEL objects to this Request because the Request: (a) is not focused on the relationship of the Kleins to the Mako Account, and their roles, if any, with OPEL;

and (b) does not address what income, if any, the Kleins have received from the lease of MakoHeads in California since the conclusion of the Mako bankruptcy proceedings; and is not focused on: (i) whether there was agreement between OPEL and Oppenheimer; (ii) whether OPEL knew that Original Productions was based in California; and (iii) whether OPEL directly or indirectly rented the MakoHead to a California entity, and if so, for use at what location.

OPEL objects to this request because the first sentence is inaccurate, overly broad and unduly burdensome, vague and ambiguous.

Subject to the foregoing and general objections, after a reasonable and diligent search by John Dann, OPEL did not locate any documents responsive to this request.

26. If OPEL sold any MakoHead, provide all of the documents related in any way to that sale, including invoices, buyer's name, address, telephone #, email, copies of checks or payment, and the MakoHead unit # sold.

OPEL objects to this Request because the Request: (a) is not focused on the relationship of the Kleins to the Mako Account, and their roles, if any, with OPEL; and (b) does not address what income, if any, the Kleins have received from the lease of MakoHeads in California since the conclusion of the Mako bankruptcy proceedings; and is not focused on: (i) whether there was agreement between

OPEL and Oppenheimer; (ii) whether OPEL knew that Original Productions was based in California; and (iii) whether OPEL directly or indirectly rented the MakoHead to a California entity, and if so, for use at what location.

Subject to the foregoing and general objections, after a reasonable and diligent search by John Dann, OPEL did not locate any documents responsive to this request.

Subject to the foregoing and general objections, after a reasonable and diligent search by John Dann, OPEL did not locate any documents responsive to this request.

27. All documents, including invoices and checks, showing the stream of ownership of each of the five MakoHeads listed in bankruptcy document 16, identified by their serial numbers, starting from the time each was purchased from the Mako bankruptcy auction, to the present day.

OPEL objects to this Request because the Request: (a) is not focused on the relationship of the Kleins to the Mako Account, and their roles, if any, with OPEL; and (b) does not address what income, if any, the Kleins have received from the lease of MakoHeads in California since the conclusion of the Mako bankruptcy proceedings; and is not focused on: (i) whether there was agreement between OPEL and Oppenheimer; (ii) whether OPEL knew that Original Productions was

based in California; and (iii) whether OPEL directly or indirectly rented the MakoHead to a California entity, and if so, for use at what location.

OPEL objects to this request because the phrase "the stream of ownership" is inaccurate, overly broad and unduly burdensome, vague and ambiguous.

Subject to the foregoing and general objections, after a reasonable and diligent search by John Dann, OPEL did not locate any documents responsive to this request.

OPEL0011-0027 are additional reports, including a check detail report (OPEL0011-0025) and a deposit detail report (OPEL0026-0027).

OPEL0011-0027 are Confidential.

The "Mako Account" is closed. It closed on or about July 2016. Since closure of that account, OPEL does not have access to it. Currently, OPEL does not have any bank account and has no plan of opening a bank account. Currently, OPEL is not doing any business. OPEL does not have copies of checks written by OPEL. OPEL does not have copies of checks received for payments to OPEL. OPEL does not have copies of bank statements. OPEL has provided QuickBooks reports showing receipts and payments. It is OPEL's understanding that Plaintiffs served SunTrust with third party requests for production for Mako Account records. OPEL did not move to quash or otherwise interfere with those requests.

28. For all five MakoHeads, provide all shipping documents which show each MakoHead and its battery's movements from the location and time it was purchased from Mako Products, Inc. at the bankruptcy auction, to the present day.

OPEL objects to this Request because the Request: (a) is not focused on the relationship of the Kleins to the Mako Account, and their roles, if any, with OPEL; and (b) does not address what income, if any, the Kleins have received from the lease of MakoHeads in California since the conclusion of the Mako bankruptcy proceedings; and is not focused on: (i) whether there was agreement between OPEL and Oppenheimer; (ii) whether OPEL knew that Original Productions was based in California; and (iii) whether OPEL directly or indirectly rented the MakoHead to a California entity, and if so, for use at what location.

OPEL objects to this request because it is inaccurate, overly broad and unduly burdensome, vague and ambiguous.  The phrase "documents … which show...movements" is vague and ambiguous.

        Subject to the foregoing and general objections, after a reasonable and diligent search by John Dann, OPEL did not locate any documents responsive to this request.

31/34

29. Copies of all checks written from any account owned by OPEL.

OPEL objects to this Request because the Request: (a) is not focused on the

relationship of the Kleins to the Mako Account, and their roles, if any, with OPEL;

and (b) does not address what income, if any, the Kleins have received from the

lease of MakoHeads in California since the conclusion of the Mako bankruptcy

proceedings.

OPEL0001-OPEL0006 are invoices from Oceanic Production Equipment, Ltd to

Oppenheimer Cine Rental, LLC.

OPEL0007 is a report of payments by check from Oceanic Production Equipment,

Ltd.

OPEL0008 is a report of deposits by Oceanic Production Equipment, Ltd.

OPEL0009 is a report of transactions by customer for Oceanic Production

Equipment, Ltd.

OPEL0007-OPEL0009 are Confidential.

   OPEL0011-0027 are additional reports, including a check detail report

(OPEL0011-0025) and a deposit detail report (OPEL0026-0027).

   OPEL0011-0027 are Confidential.

The "Mako Account" is closed. It closed on or about July 2016. Since closure of that account, OPEL does not have access to it. Currently, OPEL does not have any bank account and has no plan of opening a bank account. Currently, OPEL is not doing any business. OPEL does not have copies of checks written by OPEL. OPEL does not have copies of checks received for payments to OPEL. OPEL does not have copies of bank statements. OPEL has provided QuickBooks reports showing receipts and payments. It is OPEL's understanding that Plaintiffs served SunTrust with third party requests for production for Mako Account records. OPEL did not move to quash or otherwise interfere with those requests.

Dated: April 4, 2017

Mark Young, P.A

By:    _/s/ Mark J. Young_
        Mark J. Young
        Mark Young, P.A.
        1638 Camden Avenue
        Jacksonville, FL 32225
        Telephone: 904-996-8099
        Facsimile: 904-980-9234
        myoungpa@gmail.com
        FL Bar 78158
        Pro Hac Vice Application Filed

# EXHIBIT G

**Valerie Nichols**

**Subject:** FW: Voice International Inc et al v. Oppenheimer Cine Rentals LLC et al., Case 2:15-cv-08830-JAK-KS

**From:** "Mark J. Young" <myoungpa@gmail.com>
**To:** Roxanne_Horan-Walker@cacd.uscourts.gov
**Cc:** "Puri, Ashe P." <apuri@foxrothschild.com>, jdoroshow@foxrothschild.com, davidgrober@gmail.com, bob@lauson.com
**Date:** 03/28/2017 11:03 AM
**Subject:** Voice International Inc et al v. Oppenheimer Cine Rentals LLC et al., Case 2:15-cv-08830-JAK-KS

Dear Ms. Horan-Walker,

I represent Jordan Klein, Sr.; Jordan Kelin, Jr.; John Dann; and Oceanic Production Equipment, Ltd. in the referenced matter. A motion to dismiss for lack of personal jurisdiction is pending. We request a teleconference with Magistrate Judge Stevenson regarding a dispute concerning jurisdictional discovery. We attempted to resolve this issue by email and by telephone but were unsuccessful. Plaintiffs' and Defendants' counsel are available Tues. April 4, 2017 10:30-11:30 a.m. PDT for this teleconference, or Weds. April 5, 2017 2-5 pm PDT.

Neutral Statement: Plaintiffs delivered deposition notices for Jordan Klein, Sr.; Jordan Klein, Jr.; and Oceanic Production Equipment, Ltd. Copies are attached. In pertinent part, each notice states: "Plaintiffs David Grober ("Grober") and Voice International, Inc. ("Voice International") (collectively "Plaintiffs") will take the deposition upon oral examination, via remote VTC,..." The named deponents contend (1) that the notice must identify a single party who will take the deposition and (2) that the depositions should be in-person. Attempts to resolve these issues by email and telephone have failed.

Deponents' Statements: The notices are ambiguous, as it is unclear which party will take the depositions. FRCP 30(b)(1) refers to "A party..." not to a plurality of parties. Additionally, deponents have not stipulated to deposition by remote means. Prior to sending the notices, Plaintiffs did not consult with counsel for the deponents regarding deposition by remote VTC. Deposition by remote VTC will be prejudicial to the deponents as it will hide deposer assistance, deprive defendants of opportunity to observe body language of the deposer and burden the deponents with organizing and sorting through documents in advance and during the deposition. Deponents respectfully request that the notices be re-issued, identifying a single deposer, and specifying mutually acceptable dates, times and locations in the vicinity of the deponents for taking the depositions. If the deposer provides some proposed dates and times for the depositions, counsel for deponents will work diligently on finalizing parameters including a schedule that works for all participants, including Jordan Klein Sr. who is of advanced age and illness.

Plaintiffs' Statements: Co-Plaintiff Voice International's counsel will likely take the depositions, and Co-Plaintiff Grober will also likely be present and may cross examine the witness as well after Co-Plaintiff has completed its questioning, as may any other counsel for any other parties who are present question the witness as allowed under the rules. FRCP 30(c)(1);

1

Smith v. Logansport Community School corp., 139 F.R.D. 637, 641-642 (N.D. IN 1991)(unlike trial, cross-examination not limited to topics raised on direct, may extend to any topic).  The parties may stipulate or the Court may order that the depositions be taken by remote means. FRCP 30(b)(4); Estate of Gerasimenko v. Cape Wind Trading Co. 272 F.R.D. 385, 390 (S.D. N.Y. 2011)(permission for remote means deposition should be granted unless objecting party would be prejudiced).  A desire to save money constitutes good cause to depose out-of-state witnesses by remote means; burden is on opposing party to show how they will be prejudiced. Cressler v. Neuenchwander 170 F.R.D. 20, 21 (D. KS 1996). Defendants' claims of prejudice above are insubstantial as compared to Plaintiffs' travel costs.  The notices were served seven (7) weeks before the deposition dates.  The Florida Defendants have yet to provide any explanations as to why they might be unavailable or propose any alternative dates.


--
Regards,
Mark J. Young

Mark Young P.A.
1638 Camden Ave.
Jacksonville, Florida 32207
Tel. 904-996-8099
Fax. 904-980-9234
myoungpa@gmail.com

This e-mail may contain confidential or privileged information. If you are not the intended recipient, please advise by return e-mail and delete immediately without reading or forwarding to others.

[attachment "Depo Not - Klein Sr-C2.pdf" deleted by Roxanne Horan-Walker/CACD/09/USCOURTS] [attachment "Depo Not - Opel-C2.pdf" deleted by Roxanne Horan-Walker/CACD/09/USCOURTS] [attachment "Depo Not - Klein Jr-C2.pdf" deleted by Roxanne Horan-Walker/CACD/09/USCOURTS]

# EXHIBIT H

1

2                    UNITED STATES DISTRICT COURT

3

4                   CENTRAL DISTRICT OF CALIFORNIA

5                          WESTERN DIVISION

6

7
   VOICE INTERNATIONAL, INC.,      )
8  ET AL.,                         )
                                   )
9            PLAINTIFFS,            )
                                   )
10                                 )
             V.                    )   CV 15-8830-JAK(KS)
11                                 )
                                   )
12                                 )   LOS ANGELES, CALIFORNIA
   OPPENHEIMER CINE RENTALS LLC,   )   MARCH 29, 2017
13 ET AL.,                         )   (1:54 P.M. TO 2:12 P.M.)
                                   )
14           DEFENDANTS.           )
   _____)

15

16                      TELEPHONIC HEARING

17         BEFORE THE HONORABLE KAREN L. STEVENSON
              UNITED STATES MAGISTRATE JUDGE

18
   APPEARANCES:                SEE NEXT PAGE
19
   COURT REPORTER:             RECORDED; COURT SMART
20
   COURTROOM DEPUTY:           ROXANNE HORAN WALKER
21
   TRANSCRIBER:                DOROTHY BABYKIN
22                             COURTHOUSE SERVICES
                               1218 VALEBROOK PLACE
23                             GLENDORA, CALIFORNIA  91740
                               (626) 963-0566
24

25 PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING;
   TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE.

2

1    APPEARANCES:

2    FOR THE PLAINTIFF VOICE INTERNATIONAL, INC.:

3              LAUSON & TARVER LLP
               BY:  ROBERT J. LAUSON
4                   ATTORNEY AT LAW
               880 APOLLO STREET
5              SUITE 301
               EL SEGUNDO, CALIFORNIA  90245
6

7    FOR DEFENDANT OPPENHEIMER CINE RENTALS LLC; AND LOCAL COUNSEL
     FOR FLORIDA DEFENDANTS:
8
               FOX ROTHSCHILD LLP
9              BY:  ASHEESH PAUL PURI
                    ATTORNEY AT LAW
10             1800 CENTURY PARK EAST
               SUITE 300
11             LOS ANGELES, CALIFORNIA  90067

12   FOR FLORIDA DEFENDANTS:

13             MARK YOUNG
               ATTORNEY AT LAW
14

15

16

17

18

19

20

21

22

23

24

25

3

I N D E X

CV 15-8830-JAK(KS)                                    MARCH 29, 2017

PROCEEDINGS:   TELEPHONIC CONFERENCE

4

LOS ANGELES, CALIFORNIA; WEDNESDAY, MARCH 29, 2017; 1:54 P.M.

THE CLERK:  THIS COURT IS NOW IN SESSION.

THE HONORABLE KAREN L. STEVENSON, UNITED STATES
MAGISTRATE JUDGE, PRESIDING.

CALLING CASE NUMBER CV 15-8830-JAK(KSX), VOICE
INTERNATIONAL INC., ET AL. VERSUS OPPENHEIMER CINE RENTALS,
LLC., ET AL.

COUNSEL, PLEASE MAKE YOUR TELEPHONIC APPEARANCE FOR
THE RECORD.

MR. LAUSON:  GOOD AFTERNOON.

THIS IS ROBERT LAUSON FOR PLAINTIFF VOICE
INTERNATIONAL.

THE COURT:  GOOD AFTERNOON, MR. LAUSON.

AS IS OFTEN THE CASE WHEN THE COURT IS WITH YOU ON
THE LINE, WE'RE HAVING A LITTLE DIFFICULTY HEARING YOU CLEARLY.
I DON'T KNOW IF YOU ARE USING A HEADSET OR IF YOU CAN GET
CLOSER TO YOUR CELL PHONE.

MR. LAUSON:  YEAH.  I'M USING THE -- YOU KNOW, I'M
HOLDING THE PHONE.  AND I'LL TRY TO SPEAK MORE DIRECTLY.

THE COURT:  THAT'S MUCH BETTER.  THANK YOU.

FOR THE DEFENDANTS.

MR. YOUNG:  GOOD AFTERNOON, YOUR HONOR.

I'M MARK YOUNG.  AND I'M FLORIDA COUNSEL FOR THE
FLORIDA DEFENDANTS, JOHN DANN, JORDAN KLEIN, SR., JORDAN KLEIN,
JR., AND OCEANIC PRODUCTION EQUIPMENT.

5

1           THE COURT:  GOOD AFTERNOON, MR. YOUNG.  IT'S GOOD TO
2    MEET YOU VIRTUALLY.  I DON'T THINK YOU'VE BEEN --
3           HAVE YOU BEEN ON THESE CALLS OR WERE YOU HERE FOR THE
4    SETTLEMENT DISCUSSIONS?
5           MR. YOUNG:  I WAS NOT PRESENT AT THE SETTLEMENT
6    DISCUSSION.  THOUGH, MY CLIENT JOHN DANN WAS PRESENT.
7           THE COURT:  GREAT.  OKAY.  GOOD AFTERNOON.
8           MR. PURI:  AND GOOD AFTERNOON, YOUR HONOR.
9           THIS IS ASHE PURI FROM FOX ROTHSCHILD FOR DEFENDANTS
10   -- OPPENHEIMER DEFENDANTS.  AND WE'RE ALSO LOCAL COUNSEL FOR
11   THE FLORIDA DEFENDANTS AS WELL.
12          THE COURT:  ALL RIGHT.  GOOD AFTERNOON TO YOU, MR.
13   PURI.
14          OKAY.  WE ARE HERE -- THANK YOU FOR THE JOINT
15   STATEMENT THAT YOU FOLKS PROVIDED.
16          WE ARE HERE ON THE MATTER OF A PENDING DISCOVERY
17   DISPUTE REGARDING THE JURISDICTION -- THE DEPOSITIONS OF I
18   BELIEVE THE FLORIDA DEFENDANTS WITH RELATION TO THE
19   JURISDICTIONAL DISCOVERY THAT HAS BEEN ALLOWED BY JUDGE
20   KRONSTADT.
21          AM I RIGHT SO FAR, MR. LAUSON?
22          MR. LAUSON:  YOU'RE CORRECT.
23          AND I'M JUST WONDERING.  IS THE -- IS THE CONFERENCE
24   BEING RECORDED TODAY?
25          THE COURT:  YES, IT IS.

6

1    MR. LAUSON:  OKAY.  VERY GOOD.

2    THE COURT:  WE'RE ON THE RECORD.

3    ALL RIGHT.  SO -- AND EITHER PARTY IS WELCOME TO

4    ORDER A TRANSCRIPT LATER SHOULD YOU FEEL THAT YOU NEED ONE --

5    NEED ONE.

6    AS I UNDERSTAND --

7    (PAUSE IN PROCEEDINGS.)

8    THE COURT:  OH, OKAY.  MY COURTROOM DEPUTY HAS JUST

9    HANDED ME SORT OF A LITTLE HOUSEKEEPING NOTE HERE.

10   MR. YOUNG, I DON'T BELIEVE WE SEE YOUR NOTICE OF

11   APPEARANCE YET ON FILE IN THIS MATTER ON THE DOCKET.

12   MR. YOUNG:  YOUR HONOR, I BELIEVE WE FILED THE -- A

13   MOTION FOR ME TO APPEAR PRO HAC VICE --

14   THE COURT:  OKAY.

15   MR. YOUNG:  -- MANY MONTHS AGO.  AND IT HAS NOT BEEN

16   RULED ON.

17   THE COURT:  RULED ON YET.  OKAY.  WE'LL FOLLOW UP

18   WITH JUDGE KRONSTADT AND SEE IF -- WHAT -- IF THAT'S THE CASE.

19   OKAY.  GREAT.  I JUST WANT TO TAKE CARE OF THAT --

20   MR. YOUNG:  YES.

21   THE COURT:  -- AND SEE WHERE WE ARE IF THAT SEEMS

22   ODD.  BUT OKAY.  WE'LL LOOK ON OUR END AND SEE IF THERE'S A

23   REASON FROM THE COURT'S END WHY THAT HASN'T GOTTEN RULED ON.

24   AND IF WE CAN GET THAT CLEARED UP FOR YOU, ONE WAY OR THE

25   OTHER.

1          ALL RIGHT.  MOVING FORWARD ON THE DISCOVERY MATTER

2   THAT WE'RE HERE ON, THE PLAINTIFFS HAVE -- THE DEFENDANTS I

3   BELIEVE HAVE OBJECTED TO NOTICE OF DEPOSITION ON TWO GROUNDS,

4   ONE, THAT IT APPEARS THAT THE DEFENDANTS I BELIEVE SAY THAT

5   IT'S NOT CLEAR WHO IS GOING TO BE TAKING THE DEPOSITION AND

6   THAT THE NOTICE -- THEY NEED -- THEY ARE SEEKING THAT THE

7   NOTICE HAS TO IDENTIFY A SINGLE PARTY WHO WILL TAKE THE

8   DEPOSITION.

9          AND, TWO, THAT THE DEPOSITION SHOULD BE IN PERSON.

10          I'VE TAKEN A LOOK AT THE DOCUMENTATION THE COURTS

11  HAVE PROVIDED.  I HAVE RELOOKED AT RULE 30 ON THIS ISSUE,

12  PARTICULARLY WITH RESPECT TO RULE 30(B)(4) REGARDING TAKING A

13  DEPOSITION BY REMOTE MEANS.  LET ME ADDRESS THAT ISSUE FIRST.

14          UNDER 30(B)(4) THE PARTIES MUST EITHER HAVE A

15  STIPULATION OR A COURT ON A MOTION ORDER TO TAKE A DEPOSITION

16  BY TELEPHONE OR OTHER REMOTE MEANS.

17          SO, THE COURT IS NOT INCLINED TO JUST SUA SPONTE

18  ORDER A -- THE DEPOSITION BE DONE REMOTELY.

19          THE PARTIES ARE WELCOME TO TRY AND MEET AND CONFER.

20  AND IF THEY CAN COME UP WITH A STIPULATION TO DO THESE

21  DEPOSITIONS REMOTELY, THEN, THEY MAY PROCEED IN THAT FASHION.

22          IT IS OBVIOUSLY THE EXCEPTION RATHER THAN THE RULE

23  THAT DEPOSITIONS ARE TAKEN, SAY, TELEPHONICALLY OR BY FACETIME

24  OR SKYPE OR IN SOME OTHER FASHION LIKE THAT.

25          BUT 30(B)(4) DOES REQUIRE EITHER A STIPULATION OR A

8

1  COURT ORDER ON A MOTION IN ORDER FOR THESE DEPOSITIONS TO BE

2  TAKEN REMOTELY.  OTHERWISE, THE PLAINTIFFS WOULD NEED -- YOU

3  FOLKS CAN AGREE TO MEET IN THE MIDDLE OF THE COUNTRY OR HALFWAY

4  OR ON THE VIRGINIA TURNPIKE.  OTHERWISE, THE DEPOSITIONS WILL

5  GO FORWARD WHERE THE DEPONENTS WILL ANSWER PRESUMABLY IN

6  FLORIDA PER RULE 30(B)(4).

7         NOW, WITH RESPECT TO THE QUESTION OF WHETHER

8  DEFENDANTS' OBJECTION THAT THE DEPOSITION NOTICE HAS TO

9  INDICATE THAT A SINGLE PARTY WILL TAKE THE DEPOSITION, THAT IS

10  PROBLEMATIC AS WELL.

11         THE RULES ARE VERY CLEAR THAT A DEPOSITION CAN BE

12  NOTICED BY ONE PARTY.  BUT WHERE YOU HAVE MULTI -- MULTIPLE

13  PARTIES, ANY PARTY IS ENTITLED TO CROSS-EXAMINE THAT WITNESS

14  DURING THAT DEPOSITION.  AND THEY DO NOT NEED TO SEPARATELY

15  NOTICE WHETHER THEY HAVE SEPARATELY NOTICED THE DEPOSITION OR

16  NOT.

17         AND, IN FACT, I WOULD DIRECT THE PARTIES TO LOOK AT

18  FCC VERSUS MIZUHO MEDY CO. LIMITED AT 257 F.R.D. 679, WHICH

19  SPECIFICALLY ADDRESSES THE QUESTION IN A MULTI-PARTY LAWSUIT.

20  ONE PARTY MAY NOTICE THE DEPOSITION.  AND OTHER PARTIES MAY

21  ATTEND AND CROSS-EXAMINE THE DEPONENT WITHOUT ALSO HAVING TO

22  NOTICE THE DEPOSITION.

23         SO, THE COURT FINDS THAT TO THE EXTENT -- THERE ARE

24  TWO PLAINTIFFS IN THIS CASE.  AND TO THE EXTENT THE DEPOSITION

25  NOTICE -- THAT HAVE BEEN NOTICED, IT IS NOT NECESSARY FOR THE

9

1    TWO PLAINTIFFS TO SEPARATELY NOTICE THE DEPOSITION IN ORDER TO

2    BE ENTITLED TO ASK QUESTIONS AT THE DEPOSITION.

3              NOW, OBVIOUSLY, ALL PARTIES WOULD BE CAUTIONED TO

4    AVOID DUPLICATIVE QUESTIONING TO THE EXTENT THAT THAT WOULD BE

5    A WASTE OF EITHER THE PARTIES -- OF THE PARTIES' RESOURCES AND

6    A WASTE OF TIME WITH RESPECT TO THE ALLOWABLE TIME UNDER THE

7    FEDERAL RULES.  BUT THAT -- THOSE ARE THE COURT'S INITIAL

8    THOUGHTS ON THE TWO ISSUES THAT WERE RAISED REGARDING THESE

9    DEPOSITIONS.

10             I'D CERTAINLY BE HAPPY TO HEAR FROM EITHER PARTY.

11             MR. PURI, SINCE YOU WERE THE OBJECTING PARTY HERE,

12   WHY DON'T I START WITH YOU.

13             MR. PURI:  SURE.  AND, ACTUALLY, I'LL -- I'LL TURN IT

14   TO MR. YOUNG IF THAT'S OKAY.  HE'S REPRESENTING THE --

15             THE COURT:  THAT'S JUST FINE.

16             MR. PURI:  HE'S -- HE'S OUTSIDE COUNSEL.

17             THE COURT:  SURE.

18             MR. PURI:  WE'RE LOCAL COUNSEL.  BUT IF THAT'S OKAY.

19             THE COURT:  NOT A PROBLEM.

20             MR. YOUNG, GO AHEAD.

21             MR. YOUNG:  YES.  THANK YOU, YOUR HONOR.

22             AS NOTED IN MY EMAILS, THE DEPOSITION NOTICES WERE

23   PREPARED WITHOUT MY CLIENTS' CONSENT AS YOU OBSERVED.  MY

24   CLIENTS DO NOT CONSENT TO CONDUCTING DEPOSITIONS REMOTELY.

25             I UNDERSTAND THAT PLAINTIFFS WANT TO REDUCE THEIR

10

1    COSTS IN A CASE THAT THEY BROUGHT.  WHO DOESN'T.  BUT THE FACT

2    REMAINS THAT THE PLAINTIFFS BROUGHT THIS CASE.  AND THEY

3    BROUGHT IT IN A JURISDICTION EXTREMELY INCONVENIENT TO MY

4    CLIENT EVEN AFTER IN THE PREVIOUS CASE THE CLIENTS WERE

5    DISMISSED BY THIS COURT FOR LACK OF PERSONAL JURISDICTION.

6         ADDITIONALLY, MY CLIENTS HAVE HAD TO TRAVEL TO

7    CALIFORNIA IN THE PRIOR CASE AND ALREADY ONCE IN THE PRESENT

8    CASE.

9         THE COURT:  RIGHT.

10        MR. YOUNG:  IN PARTICULAR, JOHN DANN RECENTLY

11   TRAVELED TO ATTEND A SETTLEMENT CONFERENCE IN NOVEMBER.

12        AND --

13        THE COURT:  YES.  I RECALL HE WAS PRESENT FOR THAT.

14        MR. YOUNG:  YES.

15        AND AS I INDICATED IN MY EMAIL REQUESTING THIS

16   TELECONFERENCE, THE DEPOSITION WILL BURDEN MY CLIENTS, BOTH IN

17   ASSEMBLING THE DOCUMENTS AND SORTING THROUGH THEM DURING THE

18   DEPOSITION.  MY EXPERIENCE HAS BEEN ONE OF AWKWARDNESS IN

19   DEALING WITH VIDEO TELECONFERENCING INVOLVING DOCUMENTS.

20        THE COURT:  WELL, I'VE ALREADY INDICATED THE COURT IS

21   NOT INCLINED TO ORDER THEM TO APPEAR TELEPHONICALLY.  THE COURT

22   IS INCLINED TO FOLLOW THE REQUIREMENTS OF RULE 30(B)(4) SUCH

23   THAT THE DEPOSITION SHOULD GO FORWARD WHERE THE DEPONENTS WILL

24   ANSWER, PRESUMABLY.  THAT WOULD BE IN FLORIDA UNLESS YOU FOLKS

25   AGREE SOMEPLACE ELSE.  BUT THERE'S BEEN -- IF THERE IS NO

11

1   STIPULATION.  AND THE COURT IS NOT ENTERING AN ORDER OTHERWISE,

2   SO.

3           MR. YOUNG:  I APPRECIATE THAT, YOUR HONOR.

4           ONE FINAL NOTE -- JORDAN KLEIN, SR. IS 91, HAS UNTIL

5   RECENTLY BEEN UNDERGOING CHEMOTHERAPY FOR CANCER BUT IS NOT

6   NOW.  HE'S BEEN KEEPING DOCTORS' APPOINTMENTS WEEKLY TO MONITOR

7   THE CANCER.  HE HAS FAILING MEMORY AND LIMITED ENERGY.

8           I TRUST THAT PLAINTIFFS WILL BE MINDFUL OF HIS

9   CONDITION.

10          (PAUSE IN PROCEEDINGS.)

11          THE COURT:  ALL RIGHT.  ANYTHING -- ANYTHING FURTHER,

12  MR. YOUNG?

13          MR. YOUNG:  NO, YOUR HONOR.

14          THE COURT:  OKAY.

15          MR. YOUNG:  THANK YOU.

16          THE COURT:  THANK YOU VERY MUCH.

17          MR. LAUSON, WOULD YOU LIKE TO BE HEARD.

18          MR. LAUSON:  I WOULD -- I WOULD, YOUR HONOR.

19          THE COURT:  GO AHEAD.

20          YOU'RE GOING TO NEED TO DO WHATEVER YOU DID THE LAST

21  TIME TO GET CLOSER TO THE PHONE.

22          MR. LAUSON:  OKAY.  HOW'S THIS?

23          THE COURT:  THAT'S -- THAT'S MUCH BETTER.  THANKS.

24          (PAUSE IN PROCEEDINGS.)

25          THE COURT:  ARE YOU THERE?  WE CAN'T --

12

1      MR. LAUSON:  YES.  YES, I'M HERE.

2      YOU KNOW, ONE THING THAT HASN'T BEEN BROUGHT UP YET

3  THAT HAPPENED TODAY, THAT THE DISTRICT JUDGE SET AN APRIL 10TH

4  DEADLINE FOR THESE DEPOSITIONS TO BE COMPLETED.  AND THAT WAS A

5  CHANGE FROM HIS PREVIOUS ORDER WHICH EVERYONE -- YOU KNOW,

6  EVERYONE WAS LED TO BELIEVE THERE WAS QUITE A BIT MORE TIME

7  THAN THAT.  WE NOTICED THESE DEPOSITIONS FOR MAY 3RD THROUGH

8  THE 5TH.  SO, NOW, THE DEADLINES HAVE MOVED BACK TO APRIL 10TH.

9      AND, AGAIN, THAT JUST HAPPENED THIS MORNING.

10     THE COURT:  RIGHT.

11     MR. LAUSON:  AND, SO, FOR US TO SOMEHOW GET A MOTION

12  TOGETHER -- GET IT BEFORE YOU AND, IF DENIED, GET IT REVIEWED

13  BY THE DISTRICT JUDGE AND SO FORTH, WE'RE -- AND -- AND

14  COMPLETE THE DEPOS BY APRIL 10TH, WE'RE ON A VERY SHORT

15  TIMEFRAME.

16     THE COURT:  WELL, LET ME ADDRESS THE FIRST PART OF

17  THAT, MR. LAUSON.  I DON'T -- I MEAN, IF YOU INSIST UPON

18  BRINGING A MOTION, YOU'RE CERTAINLY ENTITLED TO.

19     I DO NOT CONTEMPLATE THAT THERE WOULD BE GROUNDS TO

20  ORDER THAT THIS DEPOSITION -- THAT ANY OF THESE DEPOSITIONS GO

21  FORWARD TELEPHONICALLY.

22     MR. LAUSON:  WELL, YOUR HONOR --

23     THE COURT:  AND THE COURT -- AND THE COURT WOULD

24  CERTAINLY -- IF A MOTION IS BROUGHT WITHOUT SUBSTANTIAL BASIS,

25  THE COURT WOULD CERTAINLY HAVE DISCRETION TO REQUIRE PAYMENT OF

13

1    -- FOR A PARTY THAT BRINGS A MOTION THAT'S NOT WELL FOUNDED

2    UNDER -- CAN CERTAINLY ORDER PAYMENT OF FEES.

3           MR. LAUSON:  OKAY.

4           WELL, YOUR HONOR, I -- I BELIEVE OUR MOTION IS --

5    WOULD BE WELL-FOUNDED.  I PRESENTED SOME CASE LAW --

6           THE COURT:  WELL, YOU'VE GOT FIVE --

7           HOLD ON A SECOND, MR. LAUSON.

8           YOU'VE GOT AT LEAST ONE, TWO, THREE, FOUR FLORIDA

9    DEFENDANTS WHO ARE CONTESTING JURISDICTION, ONE OF WHOM IS 91

10   YEARS OLD BASED ON THE REPRESENTATIONS THE COURT'S HEARD TODAY

11   AND AILING.

12          AND YOU'VE GOT YOURSELF AND ONE OTHER PERSON WHO CAN

13   GET ON A PLANE AND GO TO FLORIDA AND TAKE THE DEPOSITIONS IN

14   PERSON.

15          MR. LAUSON:  OKAY.

16          YOUR HONOR, THERE'S A SUBSTANTIAL COST INVOLVED IN

17   PLAINTIFFS TRAVELING TO FLORIDA.

18          THE CASE LAW I PRESENTED STATES -- SUBMITTED TO THE

19   COURT INDICATES THAT THAT COST IS SUFFICIENT TO JUSTIFY A

20   DEPOSITION BY REMOTE MEANS.  AND THE BURDEN IS ON THE OPPOSING

21   PARTY TO SHOW SOMEHOW THEY'LL BE PREJUDICED.

22          SAYING SOMETHING ABOUT HAVING ORGANIZED PAPERS IS NOT

23   IN MY VIEW AS ANY KIND OF SUBSTANTIAL PREJUDICE THAT OUTWEIGHS

24   THESE LARGE COSTS IMPOSED ON PLAINTIFFS WHO ARE FORCED TO

25   TRAVEL TO SOUTH FLORIDA.

14

1      THE COURT:  OKAY.  WELL, I CERTAINLY APPRECIATE YOUR

2   -- YOUR POSITION ON THIS.

3      I'M PRETTY CONFIDENT THAT MR. YOUNG'S COMMENTS

4   PROBABLY WERE NOT ALL OF THE ARGUMENTS THAT WOULD BE PRESENTED

5   BUT SIMPLY ONE OF THE ELEMENTS THAT WOULD BE PRESENTED IN ANY

6   OPPOSITION PAPERS REGARDING THE DEPOSITIONS GOING FORWARD

7   TELEPHONICALLY.

8      THE LARGER ISSUE AT THIS POINT, THOUGH, AS YOU

9   MENTION IS THAT YOUR DISTRICT JUDGE HAS ORDERED THAT THE

10  DEPOSITIONS GO FORWARD AND BE CONDUCTED BY APRIL 10TH.

11     THERE IS NOT SUFFICIENT TIME.  THE COURT -- THIS

12  COURT WILL BE DARK ALL OF NEXT WEEK FROM SUNDAY THROUGH THE

13  8TH.  SO, THERE IS NOT SUFFICIENT TIME NOW TO BRING A FULLY

14  BRIEFED MOTION AND GET IT HEARD, ARGUED, DECIDED, AND THEN THE

15  DEPOSITION SCHEDULED BEFORE YOUR CURRENT DATE OF APRIL THE

16  10TH.  THAT IS THROUGH OBVIOUSLY NO FAULT OF ANYONE'S.  BUT

17  THAT IS A TEMPORAL REALITY THAT ALL THE PARTIES AND THE COURT

18  ARE STUCK WITH RIGHT NOW.

19     MR. LAUSON:  YOUR HONOR, I SEE THIS AS A PRETTY

20  SIMPLE AND STRAIGHTFORWARD ISSUE.  EVERYONE IS ON THE PHONE

21  RIGHT NOW.  I -- I --

22     THE COURT:  CAN YOU -- CAN YOU -- I MISSED THE LAST

23  PART OF WHAT YOU HAD TO SAY.

24     MR. LAUSON:  I'M JUST SAYING.  WE'RE ALL ON THE PHONE

25  RIGHT NOW.

1        WE PRESENTED -- WE PROVIDED A SHORT STATEMENT TO YOUR

2    HONOR.  I CITED SOME CASES IN THERE.  IF MR. YOUNG HAS ANY

3    OTHER REASON -- IF HE FEELS HIS CLIENTS WILL BE PREJUDICED, HE

4    CAN -- HE CAN SHARE THOSE WITH US NOW.  AND I -- YOU KNOW, I

5    DON'T UNDERSTAND WHY -- WHY WE CAN'T -- WHY WE CAN'T RULE ON

6    THIS NOW GIVEN YOUR UNAVAILABILITY NEXT WEEK.

7        THE COURT:  OKAY.  IF YOU -- YOU WANT TO PRESENT THIS

8    AS A ORAL MOTION TO THE COURT?

9        MR. LAUSON:  YES.  PLEASE.

10        THE COURT:  ALL RIGHT.

11        MR. YOUNG -- MR. YOUNG, DO YOU HAVE ANYTHING FURTHER

12    YOU WOULD LIKE TO PRESENT TO THE COURT IN OPPOSITION TO

13    PLAINTIFF'S ORAL REQUEST THAT THE COURT ORDER THE DEPOSITIONS

14    TO BE TAKEN TELEPHONICALLY OR BY REMOTE MEANS PURSUANT TO RULE

15    30(B)(4).

16        MR. YOUNG:  YES, YOUR HONOR.  THANK YOU.

17        IT'S THE -- I HAVE -- I HAVE PARTICIPATED IN VIDEO

18    TELECONFERENCES -- VIDEO TELECONFERENCED DEPOSITIONS IN THE

19    PAST WHEN PARTIES HAVE AGREED.  AND INVARIABLY THERE WAS SOME

20    MALFUNCTION.  AND IT PROLONGED THE DEPOSITION.  AND I WOULD

21    EXPECT THAT TO HAPPEN HERE.

22        AND IF DOCUMENTS CANNOT BE LOCATED DURING THE

23    DEPOSITION, IT WILL PROLONG THE DEPOSITION.  I EXPECT THAT TO

24    BE HAPPENING -- I EXPECT THAT TO HAPPEN HERE AS WELL.

25        ALSO, AS A PRACTICAL MATTER, FROM MY EXPERIENCE, THE

16

1  DELAY THAT'S INTRODUCED BY THE NETWORK -- AND I'VE DONE THESE

2  WITH A VARIETY OF DIFFERENT NETWORK CONNECTIONS AND SERVICES,

3  IT MAKES FOR AN AWKWARD DEPOSITION AND HIDES A LOT OF THINGS,

4  INCLUDING BODY LANGUAGE AND ASSISTANCE THAT CAN BE OBSERVED

5  WHEN IT'S DONE IN PERSON.

6          ALSO, WITH THE VIDEO TELECONFERENCE, ANY CONFIDENTIAL

7  INFORMATION THAT MIGHT BE REVEALED DURING THE DEPOSITION IS

8  SOMEWHAT VULNERABLE AS IT CAN BE IMPOSSIBLE TO SEE EVERYONE WHO

9  IS PRESENT ON THE OTHER SIDE.

10          AND HERE WE'RE TALKING ABOUT ONE TRIP FOR PLAINTIFFS

11  TO KNOCK OUT SEVERAL DEPOSITIONS EFFICIENTLY IN PERSON IN THE

12  CUSTOMARY MANNER WITHOUT UNDULY BURDENING MY CLIENT.

13          I HAVE NOTHING FURTHER, YOUR HONOR.

14          THE COURT:  ALL RIGHT.

15          MR. LAUSON, ANY FURTHER RESPONSE ON BEHALF OF THE

16  PLAINTIFFS?

17          (PAUSE IN PROCEEDINGS.)

18          THE COURT:  CAN YOU HEAR THE COURT?

19          MR. LAUSON:  YOUR HONOR, I JUST BELIEVE THAT THOSE --

20  THOSE REASONS ARE INSUBSTANTIAL COMPARED TO THE BURDEN OF

21  CROSS-COUNTRY AIRPLANE TRAVEL -- TRAVEL, DAYS LOST.

22          AND THE CONFIDENTIAL INFORMATION, I DON'T -- I DON'T

23  THINK THERE IS ANY.

24          THE COURT:  ALL RIGHT.  ANYTHING FURTHER, MR. LAUSON?

25          MR. LAUSON:  NOTHING FURTHER, YOUR HONOR.

17

THE COURT:  OKAY.

THEN, ON THE PLAINTIFF'S ORAL MOTION FOR AN ORDER BY
THE COURT UNDER RULE 30(B)(4) THAT THE DEPOSITIONS OF THE --
I'M JUST GOING TO REFER COLLECTIVELY TO "THE FLORIDA
DEFENDANTS" BE TAKEN REMOTELY, THAT MOTION IS DENIED.

HOWEVER, WITH RESPECT TO THE OTHER ISSUE THAT THE
DEFENDANTS RAISED, THE COURT FINDS THEIR OBJECTION TO THE
DEPOSITION NOTICES, TO THE EXTENT THEY DON'T INDICATE AN
INDIVIDUAL QUESTIONER, THAT OBJECTION IS OVERRULED AND NOT WELL
TAKEN.

THE PLAINTIFFS -- BOTH PLAINTIFFS ARE -- AS THE COURT
HAS PREVIOUSLY INDICATED ARE ENTITLED TO QUESTION AND
CROSS-EXAMINE EACH OF THE WITNESSES IN THIS CASE WITHOUT EACH
HAVING TO SEPARATELY NOTICE THE DEPOSITIONS.

SO, THAT IS THE COURT'S RULING WITH RESPECT TO THE
TWO ISSUES THAT WERE PRESENTED IN THE CURRENT DISPUTE.

MR. LAUSON:  YOUR HONOR, THIS IS ROBERT LAUSON.

WILL YOU BE ISSUING A WRITTEN ORDER ON THAT?

THE COURT:  A MINUTE ORDER WILL BE ISSUED, YES.

(PAUSE IN PROCEEDINGS.)

THE COURT:  ANYTHING FURTHER ON THESE ISSUES FROM THE
DEFENSE? -- MR. PURI? MR. YOUNG?

MR. YOUNG.  NO, YOUR HONOR.

THE COURT:  OKAY.

ANYTHING FURTHER, MR. LAUSON, ON THESE TWO ISSUES?

18

1          MR. LAUSON:  NOTHING FURTHER, YOUR HONOR.

2          THE COURT:  OKAY.   YOU GUYS HAVE SHORT TIME TO GET A

3   LOT DONE.   SO, IT SEEMS LIKE THE WITNESSES AND THE DOCUMENTS

4   ARE IN FLORIDA.   IT WOULD CERTAINLY BEHOOVE THE PLAINTIFFS TO

5   MOVE FORWARD WITHIN THE TIMEFRAME THAT YOUR DISTRICT JUDGE HAS

6   SET TO GET THIS -- THIS PORTION OF YOUR SIGNIFICANT

7   JURISDICTIONAL DISCOVERY CONDUCTED.   OKAY.

8          THANK YOU, GENTLEMEN.

9          MR. YOUNG:   THANK YOU, YOUR HONOR.

10          THE COURT:   THANK YOU.

11          MR. LAUSON:   THANK YOU.

12          (PROCEEDINGS ADJOURNED AT 2:12 P.M.)

13

14

15

16

17

18

19

20

21

22

23

24

25

19

C E R T I F I C A T E

I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE ELECTRONIC SOUND RECORDING OF THE PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

/S/ DOROTHY BABYKIN                         3/30/17

_____            _____

FEDERALLY CERTIFIED TRANSCRIBER             DATED

DOROTHY BABYKIN