1  David Grober
   davidgrober1@gmail.com
2  578 West Washington Blvd., Suite 866
   Marina Del Rey, CA  90292
3  Tel. (310) 822-1100

4  Plaintiff, Pro se

5

6                  **UNITED STATES DISTRICT COURT**

7        **CENTRAL DISTRICT OF CALIFORNIA WESTERN DIVISION**

8  **VOICE INTERNATIONAL, INC., a**            Case No.: **2:15-cv-08830-JAK(KS)**
   **California corporation; DAVID**
9  **GROBER, an individual,**
                                               **Plaintiffs' Supplemental Reply To**
10         **Plaintiffs,**                     **Defendants' Motion To Dismiss For**
                                               **Lack Of Personal Jurisdiction**
11         **vs.**

12 **OPPENHEIMER CINE RENTAL,**
   **LLC, a Washington corporation;**
13 **OPPENHEIMER CAMERA**
   **PRODUCTS, INC., a Washington**
14 **corporation;  MARTY**
   **OPPENHEIMER, an individual;**
15 **JORDAN KLEIN, SR., an individual;**
   **JORDAN KLEIN, JR., an individual;**
16 **JOHN DANN, an individual; Mako**
   **Products, an unknown entity, Oceanic**
17 **Production Equipment, Ltd., a**
   **Bahamian company; and DOES 1-10,**
18 **inclusive,**

19         **Defendants**

20

21

22

23

24

25

26

27

28

The Court provided an in depth response to the jurisdictional issues it felt relevant. Plaintiffs appreciate that. This paper will specifically address those issues.

**Point 1:**  The Court undertook a specific review of infringement vis-à-vis Original Productions, a forum resident.  The fact that Original productions used the infringing device outside of California, still subjected the Oppenheimer Defendants to jurisdiction for involvement in renting the MakoHead to Original Productions. Doc. 129-3, pg. 7 of 38, lines 5-11.

Point 1 Conclusion: Doing business with Original Productions knowing it is a California based entity confers jurisdiction in the forum.

**Point 2:**  The Court focused on personal jurisdictional for other parties by asking where did the rental monies go?  Doc 118, pg. 11 paragraph 2.

> There is also some evidence that OPEL derived revenue as a result. Thus Oppenheimer's records reflect that $33,948 was "Paid to Mako" for leasing the MakoHead to Original Productions from November 2014 to February 2016. This information is relevant to a determination whether there is personal jurisdiction. (citation omitted)  (personal jurisdiction may be established where the record shows that defendant … derived substantial revenue from goods used or consumed in the [forum] District").

Wherein the Court states "Paid to Mako" is relevant to OPEL, the same inquiry is relevant to whomever received the "Paid to Mako" revenue. Defendants produced no evidence to prove OPEL exists as a corporate entity, and in discovery stated they have no such evidence. Doc. 127, pg. 7, line 17; Grober Decl, Ex. A, #8. The OPEL and Dann declarations also state OPEL never imported a MakoHead into the United States. This is crucial. The MakoHeads used by Original Productions were used in the U.S.  They cannot belong to OPEL.

Point 2 Conclusion.  No MakoHead belonging to OPEL was used by Original Productions.  The Kleins and Dann, personally, and with no corporate veil to protect them, are the liable parties and under personal jurisdiction because they

1   purchased the MakoHead units later used by Original Productions. The Kleins and

2   Dann likewise meet Point 1, wherein Oppenheimer's "Paid to Mako" checks were

3   deposited into the Suntrust account #224, which became the Kleins personal

4   account once Mako dissolved.

5       **Point 3:**  The Court asked "whether OPEL knew that Original Productions

6   was based in California."  This would pertain to anyone involved in the Original

7   Productions' rentals. We now know it's the Kleins/Dann's U.S. based MakoHeads

8   that were used.  And yes, they did know.  Dann and Original Productions'

9   Supervising Producer, Sheila McCormack first corresponded in Nov. 2010.  Dann

10   responds, and on his email is Sheila's Original Productions' address in Burbank,

11   CA. Grober Decl., ¶ 4, Ex. C.

12        Documents obtained through third party subpoena to Lynden International

13   show that Original Productions shipped a MakoHead from Alaska to Klein Sr.'s

14   residence, the Klein Compound in Summerfield, Fl.  It contains Original

15   Productions' name and Burbank, CA. address.   Grober Decl.,¶3, Ex. B.   There is

16   also an email from Original Productions to John Dann showing Original

17   Productions' Burbank, California address. Grober Decl.  ¶ 4, Ex C.

18        Numerous invoices have already been provided to the Court in the earlier

19   jurisdiction motion.  Now, of note, is Doc. 126-1. The exhibits from Oppenheimer

20   clearly show Original Productions as the renter.  The Kleins/Dann knew who was

21   renting their MakoHeads.  However the Court should note that the original invoices

22   from Oppenheimer produced in October, 2016 show OPEL's address as the <u>Klein</u>

23   <u>Compound</u> in Summerfield Fl.  The "Ship to" lists the production company

24   Original Productions.  The exact same invoices were just produced by Dann for

25   jurisdictional discovery and list OPEL's address in the Bahamas, and the "Ship To"

26   box is empty.  Dann removed "Original Productions" to hide the Kleins/Dann

27   knowing the rentals were for Original Productions.  Grober Decl., ¶7, Ex. R.

28

**Statements and Quickbooks reports generated by Dann/Kleins also show rentals to Original Productions via Oppenheimer.  Grober Decl., ¶ 6, Ex. E.**

Point 3 Conclusion:  The Kleins/Dann renting their MakoHeads to Original Productions, knew Original Productions was in Burbank, CA.

**Defendants Refused To Answer Virtually All Discovery Authorized By Court**

Plaintiffs' Interrogatories and RFP's asked Defendants to provide the ownership records for each MakoHead from the auction date. (OPEL RFP #20, Klein Sr. RFP #22, Klein Jr. RFP #22.  They refused.  Days after discovery was due, Defendants provided a single page referencing OPEL in the Bahamas.  CAFFERATA CORPORATE SERVICES (CCS), a Bahamian service provider's invoice showing services provided to OPEL.  There's no corporate formation documents, list of directors, articles of incorporation, etc.  Going back to Defendants' counsel Plaintiffs were told Dann keeps no corporate records.  Doc. 127, pg. 7, line 17.  How does the owner of a supposed international business not have even a single page of documents?   Plaintiffs ask the Court to note this continued stonewalling and ask that Defendants not be allowed to benefit from statements without documentation, which is now long overdue. Regardless, OPEL's units were never in the U.S. and therefore not the ones Original Productions used.

Plaintiffs' discovery requested the shipping records to follow the course of each MakoHead from the Mako auction date.  Defendants again refused or found no documents. OPEL RFP #28, Klein Sr. RFP #22, Klein Jr, RFP #22.

Plaintiffs' discovery requested the flow of revenues from each MakoHead. Defendants again refused or found no documents.  Klein Sr. & Klein Jr. RFP no. 9, Klein Sr. & Jr. Interrog. no. 16, OPEL Interrog. no. 7.  These are all key jurisdictional questions.

The above discovery request answers the Court's question of "what is the relationship of the Kleins to the Mako account?"  The answer is straightforward.  The Suntrust account #224, had the Kleins as its sole signatories.  When Mako

dissolved, the owners and signatories remained the Kleins. No one else controlled the account nor can disperse its funds. It is the Kleins' account. Neither John Dann, OPEL nor anyone else has access. The MakoHead rental monies from Original productions went into the Kleins' Suntrust #224 account.

**Discovery Conclusion:** The Court is asked to look at the veracity of exhibits and note that almost all of Plaintiffs' exhibits were created by Defendants themselves. They should be unassailable as to the truth.

Plaintiffs propounded requests for Dann's emails but he said he didn't keep them. Plaintiffs subpoenaed his email provider who stated they could produce them if Dann agreed. Dann refused, blocking production.

Plaintiffs noticed Defendants' depositions for Monday April 10, 2017. Airline tickets were purchased and court reporters arranged. When Defendants provided virtually no documents and stated they might block all questions deemed non relevant, Plaintiffs took the depositions off calendar. They would be worthless.

### Defining the MakoHeads and their Ownership

Plaintiffs know of only seven MakoHeads. The auction manifest lists the highest serial # as 11<u>07</u>. Doc. 65-2, pg. 6 of 21. The Mako auction sold five; 1102, 1103, 1104, 1106, 1107. The sixth, #1105 was sold in 2006 for $160,000 to Brazilian company, TV Globo. Doc. 65.2, pg. 16-21. #1101 is unaccounted for.

### The MakoHead sold to Brazil's TV Global in 2006 is Relevant

MakoHead #1105 was sold to TV Globo in 2006. TV Global can't be held to jurisdiction in the Forum if it never imported its MakoHead into the United States. Their MakoHead, #1105 doesn't show up on invoices as being rented by Original Productions. The same inquiry must be used with Bahamian company OPEL, especially where Dann's declaration states OPEL never imported a MakoHead into the U.S. This sets the stage to find out whose MakoHeads were used in the Original Productions rentals. Plaintiffs created a chart showing each MakoHead

and its location chronology created from Defendant's own emails and declarations. Grober Decl., ¶ 12, Ex. K.

### MakoHeads:  Stream of Travel

Five MakoHeads are listed in the Mako bankruptcy auction manifest by their serial # and location. Doc. 65-2, pg. 6 of 21.  The Kleins and Dann, and their assigns, (collectively the "Purchaser") was noted as "the highest and best offer." Doc. 65-2, pg. 12 of 21. The Kleins and Dann, on May 15, 2013 own the assets of Mako. Those assets included the five MakoHeads.

Two days later the Kleins and Dann supposedly assign that bid to their Bahamian entity, OPEL. They now refuse to provide the corporate documents. Fortunately, John Dann's declarations provide answers to MakoHead ownership.

> In the bankruptcy, Oceanic Production Equipment LTD acquired assets of Mako Products, Inc., including one MakoHead stabilizer stored in a facility in Canada.

Dkt. 55-3 #25, Page ID 747.

> Oceanic Production owns one rental unit that is rented
> from a rental house in Canada.

Dkt. 68-1, page 7, ¶16.

> Oceanic Production Equipment LTD never transported a
> MakoHead stabilizer into the United States.

Doc 55-3. Para 27.   Dann is emphatic on this point and declares it twice, Para #31.

Dann's declarations attest that OPEL only owns one MakoHead that is in Canada. The bankruptcy auction manifest shows no MakoHeads in Canada.  The OPEL Canadian unit is likely the missing MH # 1101 and was sold or transferred to OPEL outside of the bankruptcy and wasn't noted to the Trustee just as tens of thousands of dollars in MakoHead revenues deposited during the bankruptcy into the Kleins /Mako Suntrust bank account #224, were never disclosed to the Trustee.

The Canadian MakoHead is irrelevant because Dann states OPEL never imported a MakoHead into the U.S. The MakoHeads used by Original Productions therefore cannot belong to OPEL.

The Kleins and Dann own the MakoHeads used by Original Productions.

The Court asked about a contract between Oppenheimer and OPEL. Defendants state there was none. There was a fee arrangement of 60% to Mako and 40% to Oppenheimer. That was continued and would be regardless if with the Kleins/Dann or with OPEL. The proof is OPP000001 showing "Paid to Mako" and going into the Kleins' Suntrust #224 account.  Doc. 65-3, pg. 2.

The Defendant Kleins and Dann's attempt to pass infringement liability off to OPEL, just like they did with Mako, that can't work here.  Dann shut that door in stating OPEL never imported a MakoHead into the U.S.  That only leaves the Kleins' and Dann's purchase of *their* MakoHeads from *their* bankrupted Mako with one owner, themselves with no fictitious entity to hide behind.  Now the pieces fall into place.  The "Paid to Mako" revenue the Court asked about went directly into the Suntrust checking account #224 with the owners being solely the Kleins. Mako no longer existed. The Kleins disbursed the MakoHead revenue received during the bankruptcy, $61,880, to themselves.  The Trustee has no record of those funds. Dkt. 78-2, Exh A-C.   Dann then states in a declaration, doc. 68-1, that these funds are "payment for a service rendered by Oceanic Productions unrelated to the accused product", but as Plaintiffs' Dkt. 78, starting at pg. 2 line 11 shows, Oppenheimer's invoices show them as MakoHead rentals to Original Productions.

No doubt the Kleins and Dann are hoping if the Court and Plaintiffs can't find their way through the quagmire of lies, then the Kleins and Dann will succeed in having continued to rent the MakoHead through the bankruptcy to avoid infringement liability, keeping the MakoHead revenue received during the bankruptcy from the Trustee, again disbursing it to themselves and after the bankruptcy continue receiving MakoHead revenues, paying it out to themselves

1   from the Suntrust #224 account solely owned by the Kleins.  When Dann's
2   withheld 9,383 emails surfaced and expose the $183,000 in Original Productions'
3   revenues, the Kleins and Dann try and slough off the 60% they received claiming it
4   was OPEL, however OPEL never had a MakoHead in the U.S. for Original
5   Productions to use.  OPEL never had a bank account for the money to go into.
6   Dann supposedly owns OPEL but he's not a signatory on the account and doesn't
7   even get the bank statements where the money goes, and when money is overdue,
8   he writes Oppenheimer stating that the "Boss" Jordy Klein, is not happy.
9        In the Jurisdictional discovery request, virtually all documents and
10  interrogatories are refused as not relevant. They are very relevant when it comes to
11  showing the truth; the Kleins and Dann's bought back their MakoHeads from their
12  Mako bankruptcy auction, and rented them to Original Productions.  They kept
13  them, maintained them, repaired them, shipped and received them from clients
14  including Original Productions, and received their 60% of the Original Productions'
15  revenues into their bank account with sole signatories being Klein Sr. and Klein Jr.,
16  and then disbursed those funds to themselves.  They did this all from the Klein
17  compound in Summerfield, Florida.  It is Klein Sr.'s home, offices for Sr. and Jr.,
18  Mako and Dann.

19              **The Kleins' Collusion Relates to the Forum**

20       Court Order doc. 118, pg. 12, at 2 stated:  "The allegations against the Kleins
21  in their individual capacities, including that they colluded to appropriate Plaintiffs'
22  intellectual property to create and market the MakoHead, do not show any
23  relationship to the California forum."

24       Plaintiffs refer the Court to Dkt. 65 Pg 10-14.  The Kleins took these actions
25  in 2002 and 2003, prior to Mako Products' incorporation in August  2003.  Dkt. 65-
26  6, pg. 10 is Klein Jr.'s deal memo with Plaintiff's technician, Steve Waterford,
27  hired behind Plaintiffs' back while Waterford worked for Plaintiffs.  *Id.*, pg. 14 is a
28

1099-Misc Worksheet showing Klein Sr. paid Plaintiffs' Waterford $8,509.00. *Id.*, pg. 16 shows Jordan Klein (SS# ending in 0147), paid Waterford $11,680.00.

Dkt. 65-6, Pgs. 18-22 is communications between Waterford, the Kleins and Kleins' engineer, Tom Smith.  They expose the handing off of Plaintiffs' secret Spectron SSY0091C sensor data and Waterford offering to mail engineer Smith, Plaintiffs' AQRS rate sensor and "various electronic parts I have."  The Kleins are fully knowledgeable and involved.  Waterford's later letter to the Kleins discusses the legal ramifications for him and the Kleins of their nefarious actions, and in doc. 66-6, p.32-35 tells the Kleins that David [Plaintiff Grober] will be on the warpath. It tells how Waterford and the Kleins will deceive Grober concerning Waterford's MakoHead development, and how Waterford will send Plaintiffs' clients to the Kleins. "I'll then give those clients your contact information." *Id.*The Kleins directly targeted and stole Plaintiffs' trade secrets and components, used them to build the MakoHead, and then took Plaintiffs' clients, all before Mako Products Inc., existed.

## Interests of the Forum State

Defendants' state: Plaintiffs have not specifically or otherwise identified a single instance in which any one of Defendants' activities in California caused Plaintiff any harm. [Dkt. 55, pg. 10: 22-24]. The also proffered "Additionally, California has no significant interest in resolving a patent infringement action where there is no evidence that Defendants made, used, or sold any of the accused products in California. [Dkt. 55, pg. 11: 13-15].  Defendants' statements lack a single discovery inquiry.

California and its elected representatives have expressed a huge interest in this case, the destruction of Plaintiff's creative hi-tech company, and job losses due to Defendants' direct aiming at California and the theft of California's technology.

Financially, the Kleins in Florida, significantly benefitted by targeting and stealing from Grober.  Grober Decl.  ¶ 16.

8

The harm to California is deeper. Plaintiff David Grober has, for decades given back to the Los Angeles community. Grober Decl., ¶ 17.

The case has come to the attentions of at least two California congressmen. Grober Decl., ¶ 18.

Defendants are wrong.  This case concerns California when out of state actors steal California's IP, target its businesses and honest citizens lose jobs.

The Kleins and Dann should be held to jurisdiction in this forum.

Respectively Submitted,

DATED:  April 20,  2017            By:   /David Grober_____
                                   David Grober
                                   In Pro Per