Mark J. Young
Mark Young, P.A.
1638 Camden Avenue
Jacksonville, FL 32225
Telephone: 904-996-8099
Facsimile: 904-980-9234
myoungpa@gmail.com

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VOICE INTERNATIONAL, INC., a California corporation; DAVID GROBER, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>OPPENHEIMER CINE RENTAL, LLC, a Washington corporation; OPPENHEIMER CAMERA PRODUCTS, INC., a Washington corporation; MARTY OPPENHEIMER, an individual; JORDAN KLEIN, SR., an individual; JORDAN KLEIN, JR., an individual; JOHN DANN, an individual; Mako Products, an unknown entity, Oceanic Production Equipment, Ltd., a Bahamian company; and DOES 1-10, inclusive,<br>Defendants. | Case No.: CV-15-08830-JAK-KS<br><br>**OCEANIC PRODUCTION EQUIPMENT LTD's RESPONSES TO PLAINTIFF DAVID GROBER'S JURISDICTIONAL INTERROGATORIES** |

## GENERAL OBJECTIONS

Oceanic Production Equipment, Ltd (OPEL) makes the following general responses and objections ("General Objections") to each definition, instruction, and interrogatory propounded in Plaintiff David Grober's ("Grober's") Jurisdictional Interrogatories For OPEL. These General Objections are hereby incorporated into each specific response. The assertion of the same, similar or additional objections or partial responses to individual Requests does not waive any of OPEL's General Objections.

1. OPEL objects to the Interrogatories to the extent they purport to require unreasonably costly and/or time-consuming measures to locate information and respond, beyond the requirements of Fed. R. Civ. P. 26(b).

2. OPEL objects to each Interrogatory and to Grober's "Definitions" and "Instructions" to the extent they are vague, ambiguous, overbroad, or unduly burdensome, or purport to impose upon OPEL any duty or obligation that is inconsistent with or in excess of those obligations that are imposed by the Federal Rules of Civil Procedure and/or the Local Civil Rules of this Court, and/or any other applicable rule.

3. OPEL objects to Grober's definition of "business relationship" because it is are inaccurate, overly broad and unduly burdensome, vague and ambiguous.

4. OPEL objects to Grober's definitions of OPEL, "you" or "your" to the extent it purports to include any person or entity that is separate and distinct from OPEL

5. OPEL objects to Grober's definitions of "Travel Chronology Format" and "Flow of Revenue Format" and any request that an answer be specially formatted, to the extent that such formatting exceeds those obligations that are imposed by the Federal Rules of Civil Procedure and/or the Local Civil Rules of this Court, and/or any other applicable rule.

6. OPEL objects to Grober's definition of "Mako Head" as vague and ambiguous and overly broad and unduly burdensome to the extent it covers any product that Grober has not identified as infringing in Plaintiff's Infringement Contentions.

7. OPEL objects to each Interrogatory to the extent that it seeks information that is protected from disclosure by the attorney-client privilege, the attorney work product doctrine or any other applicable privilege, doctrine or discovery immunity. The inadvertent production by OPEL of information protected from disclosure by any such privilege, doctrine or immunity shall not be deemed a waiver by OPEL of any such privileges or protections. OPEL will identify any information withheld on the basis of such privilege, doctrine or immunity on a privilege log.

8. OPEL objects to each Interrogatory to the extent it seeks confidential, proprietary or trade secret information of third parties. Subject to its objections,

OPEL will only produce any such information after receiving permission from the third party and under the PROTECTIVE ORDER applicable in this case.

9. OPEL objects to each Request to the extent it seeks information that is not relevant to the issue of personal jurisdiction and is not limited to the scope permitted by the court. "Such discovery must be focused on the relationship of the Kleins to the Mako Account, and their roles, if any, with OPEL. It may also address what income, if any, the Kleins have received from the lease of MakoHeads in California since the conclusion of the Mako bankruptcy proceedings." "[F]ocused jurisdictional discovery is appropriate as to the following: (i) whether there was agreement between OPEL and Oppenheimer; (ii) whether OPEL knew that Original Productions was based in California; and (iii) whether OPEL directly or indirectly rented the MakoHead to a California entity, and if so, for use at what location." [Dkt. 118, pp. 11, 12] Accordingly, OPEL objects to each Interrogatory that (a) is not focused on the relationship of the Kleins to the Mako Account, and their roles, if any, with OPEL; and (b) does not address what income, if any, the Kleins have received from the lease of MakoHeads in California since the conclusion of the Mako bankruptcy proceedings; and is not focused on: (i) whether there was agreement between OPEL and Oppenheimer; (ii) whether OPEL knew that Original Productions was

based in California; and (iii) whether OPEL directly or indirectly rented the MakoHead to a California entity, and if so, for use at what location.

10. OPEL objects to each Interrogatory to the extent it is not limited in time and seeks information for periods of time that are not relevant to personal jurisdiction.

11. OPEL objects to each Interrogatory to the extent it seeks information that is not in the possession, custody, or control of OPEL.

12. OPEL objects to each Interrogatory to the extent that it seeks information that is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome or less expensive.

## SPECIFIC OBJECTIONS AND RESPONSES

Subject to the foregoing General Objections and the specific objections made below, OPEL objects and responds to Grober's Jurisdictional Interrogatories to OPEL as follows:

1. Describe in detail, each aspect of any contractual relationship OPEL has with Defendants Oppenheimer.

OPEL has no contractual relationship with Oppenheimer. Mako Products, which is now defunct, had an informal (unwritten) understanding with Oppenheimer, that Oppenheimer would pay Mako Products 60% of revenue from

leasing of MakoHead stabilizers by Oppenheimer. After OPEL acquired Mako Products' assets in the bankruptcy, Oppenheimer continued to honor that arrangement, paying OPEL 60% of revenue from leasing of MakoHead stabilizers by Oppenheimer.

2. List the contact information for any person or entity in California for which you have had any type of "business relationship", and describe in as much detail as possible, that "business relationship" throughout its term.

OPEL has no business relationship with any person or entity in California.

3. If You were paid for any "business relationship" involving the MakoHead, by any person or entity in California, either directly or through a third party, provide the contact information, dates involved in the transaction(s), and the gross amount of each transaction.

OPEL has received payments from Oppenheimer, a Washington state entity.

| Customer | Invoice | Date | Amount | Location |
| --- | --- | --- | --- | --- |
| Oppenheimer | 93389 | 10/05/2013 | $ 8,640.00 | Deadliest Catch (Vancouver) |
| Oppenheimer | 93394 | 10/14/2014 | $ 9,180.00 | Deadliest Catch (Vancouver) |
| Oppenheimer | 93404 | 03/04/2015 | $ 3,096.00 | Deadliest Catch (Vancouver) |
| Oppenheimer | 93407 | 11/23/2015 | $ 7,740.00 | Deadliest Catch (Vancouver) |
| Oppenheimer | 93408 | 02/29/2016 | $ 6,740.00 | Deadliest Catch (Vancouver) |

4. List all monies paid into any banking account owned by You from October 8, 2012 until March 17, 2017.

    OPEL purchased the assets of Mako Products 06/03/2013, including this account of deposits.

| Date | Amount |
|---|---|
| 10/17/2012 | $ 300.00 |
| 10/18/2012 | $ 1,056.64 |
| 10/30/2012 | $ 1,000.00 |
| 11/19/2012 | $ 649.57 |
| 12/03/2012 | $ 3,600.00 |
| 12/03/2012 | $ 5,635.00 |
| 12/18/2012 | $ 3,200.00 |
| 12/24/2012 | $ 4,320.00 |
| 01/23/2013 | $ 2,050.00 |
| 02/20/2013 | $ 336.63 |
| 04/02/2013 | $ 8,640.00 |
| 05/13/2013 | $15,900.00 |
| 08/31/2013 | $13,000.00 |
| 12/05/2013 | $ 1,503.00 |
| 04/02/2014 | $ 14.28 |

| | |
|---|---|
| 04/02/2014 | $ 8,835.00 |
| 04/10/2014 | $ 82.12 |
| 04/10/2014 | $ 147.79 |
| 10/10/2014 | $ 188.00 |
| 01/05/2015 | $15,300.00 |
| 03/23/2015 | $ 1,274.71 |
| 10/21/2015 | $ 505.53 |
| 10/21/2015 | $ 3,096.00 |
| 11/16/2015 | $ 2,520.00 |
| 11/16/2015 | $ 293.65 |
| 01/04/2016 | $ 7,740.00 |
| 03/28/2016 | $ 665.25 |
| 06/28/2016 | $ 55.84 |
| 07/07/2016 | $ 20.00 |
| 07/27/2016 | $ 50.00 |

5. Doc. 118 in this action says "All other assets were sent to OPEL in the Bahamas." Describe exactly what assets went to OPEL, including the serial numbers of all MakoHeads and batteries. Please state the contact information for:

1. the person who sent them to the Bahamas, 2. the person who received them in the Bahamas, 3. the location where they were stored in the Bahamas, 4. the date and destination the first time that they left the Bahamas, if they did.

OPEL objects to this Interrogatory because it: (a) is not focused on the relationship of the Kleins to the Mako Account, and their roles, if any, with OPEL; and (b) does not address what income, if any, the Kleins have received from the lease of MakoHeads in California since the conclusion of the Mako bankruptcy proceedings; and is not focused on: (i) whether there was agreement between OPEL and Oppenheimer; (ii) whether OPEL knew that Original Productions was based in California; and (iii) whether OPEL directly or indirectly rented the MakoHead to a California entity, and if so, for use at what location.

6. List the dates of travel, start and finish locations, shipper and tracking number for each time a MakoHead listed in BK Doc 16 was transported over ten miles. Start from May 15, 2015 until the present day. Use the Travel Chronology Format found in our Definitions. If you object, provide the information in any format that provides all of the requested information. We are asking to be able to track the

movement of each of the five MakoHeads and its associated battery(s), starting with the Mako Products, Inc. auction date of May 15, 2015, until the present day.

OPEL objects to this Interrogatory because it: (a) is not focused on the relationship of the Kleins to the Mako Account, and their roles, if any, with OPEL; and (b) does not address what income, if any, the Kleins have received from the lease of MakoHeads in California since the conclusion of the Mako bankruptcy proceedings; and is not focused on: (i) whether there was agreement between OPEL and Oppenheimer; (ii) whether OPEL knew that Original Productions was based in California; and (iii) whether OPEL directly or indirectly rented the MakoHead to a California entity, and if so, for use at what location.

      Subject to the foregoing objections, OPEL has no records of travel.

7. List the "Flow of Revenue" for each MakoHead rental, lease or sale starting with the Mako Products, Inc. auction date of May 15, 2015, until the present day. Use the "Flow of Revenue" format found in our Definitions. If you object, we are asking to be able to follow the flow of all revenue from the time the production company renter or purchaser paid for the rental or sale, until those funds were distributed to you, or remained with an intermediary.

OPEL objects to this Interrogatory because it: (a) is not focused on the relationship of the Kleins to the Mako Account, and their roles, if any, with OPEL; and (b) does not address what income, if any, the Kleins have received from the lease of MakoHeads in California since the conclusion of the Mako bankruptcy proceedings; and is not focused on: (i) whether there was agreement between OPEL and Oppenheimer; (ii) whether OPEL knew that Original Productions was based in California; and (iii) whether OPEL directly or indirectly rented the MakoHead to a California entity, and if so, for use at what location.

<u>      Subject to the foregoing objection, OPEL has provided reports in response to requests for production (OPEL0007-0009, 0011-0027) showing all OPEL revenue.</u>

8. Describe the formation process of OPEL. Who caused it to be formed? Who paid for its formation? Who signed any documents that were involved in the formation process, its legal status on January 1st of each year since its inception, and your role, in detail, in its formation.

OPEL objects to this Interrogatory because it: (a) is not focused on the relationship of the Kleins to the Mako Account, and their roles, if any, with OPEL; and (b) does not address what income, if any, the Kleins have received from the lease of MakoHeads in California since the conclusion of the Mako bankruptcy

proceedings; and is not focused on: (i) whether there was agreement between OPEL and Oppenheimer; (ii) whether OPEL knew that Original Productions was based in California; and (iii) whether OPEL directly or indirectly rented the MakoHead to a California entity, and if so, for use at what location.

Subject to the foregoing objection, about 2014, John Dann, with help from Jordan Klein Sr., contacted MB&H Corporate Services Ltd. MB&H Corporate Services Ltd. formed OPEL. CAFFERATA CORPORATE SERVICES ("CCS") maintains OPEL. Jordan Klein Sr. paid for the formation, and OPEL eventually reimbursed him for the expense. Except for facilitating the formation of OPEL, Jordan Klein Sr. was never actively involved in OPEL. Jordan Klein Sr. was never involved in the management or operations of OPEL. After the formation, John Dann served as the sole officer and director of OPEL. In 2015 and 2016 John Dann served as the sole officer and director of OPEL. Jordan Klein Jr. was not involved in any way with the formation, management or operations of OPEL. Today, OPEL is not engaged in any business.

Dated: April 4, 2017                      Mark Young, P.A
                                         By:    */s/ Mark J. Young*
                                                   Mark J. Young
                                                   Mark Young, P.A.

1638 Camden Avenue
Jacksonville, FL 32225
Telephone: 904-996-8099
Facsimile: 904-980-9234
myoungpa@gmail.com
FL Bar 78158
Pro Hac Vice Application Filed

## **VERIFICATION**

I, John Dann, on behalf of OPEL, have read the foregoing interrogatories and the answers to those interrogatories, which are true according to the best of my knowledge, information, and belief. I declare under penalty of perjury that the foregoing is true and correct.

Dated this 4th day of April, 2017.

_____
Signature