Robert J. Lauson, Esq., SBN 175,486
bob@lauson.com
Edwin P. Tarver, Esq., SBN 201,943
edwin@lauson.com
LAUSON & TARVER LLP
880 Apollo Street, Suite 301
El Segundo, California  90245
Tel.   (310) 726-0892
Fax   (310) 726-0893

Attorneys for Plaintiff, Voice International, Inc.

David Grober
davidgrober1@gmail.com
578 West Washington Blvd., Suite 866
Marina Del Rey, CA  90292
Tel. (310) 822-1100

Plaintiff, Pro se

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA WESTERN DIVISION

| | |
|---|---|
| **VOICE INTERNATIONAL, INC., a California corporation; DAVID GROBER, an individual,** | **Case No.: 2:15-cv-08830** |
| | *Discovery Matter* |
| **Plaintiffs,** | **Joint Stipulation In Support Of Plaintiffs' Motion To Compel Discovery Responses** |
| **vs.** | |
| | **Discovery Cutoff: Oct. 30, 2017** |
| **OPPENHEIMER CINE RENTAL, LLC, et al.** | **Pretrial Conf: TBD** |
| | **Trial Date: TBD** |
| **Defendants** | |
| | **Date: Wed, Aug. 30, 2017** |
| | **Time: 10:00 a.m.** |
| | **Place: Courtroom 690 (Roybal Bldg)** |

Plaintiffs Voice International and David Grober and Defendant Oceanic Production Equipment, Ltd. (OPEL) submit the following Joint Stipulation pursuant to Local Rule 37-2, in connection with Plaintiffs' Motion to Compel Discovery.

## I.     PLAINTIFFS' INTRODUCTION

This is the second case between the parties.  During the course of the first case, *Grober, et al. v. Mako Products, et al.*, Case No. 2:04-cv-08604 (Mako-1), in the face of multiple motions to compel, and two subsequent district court orders and a bankruptcy court order to preserve all potential evidence, John Dann still withheld documents over seven years, making excuses and then finally stating he could not produce them because he did not have them.  Mako-1defendants Kleins and Dann stated they sold the documents to a Bahamian company (Oceanic Production Equipment, Ltd. (OPEL), *which they themselves, including Dann, created* to intake their own Mako Products, Inc. assets, when they took Mako into bankruptcy.

The district court, in August 2015, finally issued an Order to Show Cause or be sanctioned for failure to produce.   Within days, John Dann, produced 9,383 emails that he had personally withheld, many for over seven years of discovery requests. These emails dated back almost a decade and contained key evidence important to Plaintiffs' case, but which were now worthless as the Court, in multiple instances, had ruled in Defendants' favor, absent the truth and facts found in Dann's belated 2015 production.  Those emails then caused the instant case (Mako-2) to be filed when its substance could, or should have been adjudicated in Mako-1.

In this case, Mako-2, Plaintiffs are asking for Dann's more recent emails pertaining to OPEL, Mako and the MakoHead.  John Dann claims to have searched his emails and found none relating to the MakoHead.  It is hard to believe that John Dann/OPEL was conducting business that consisted of renting out the MakoHead

stabilizers, which known clients paid over $183,000 to rent, yet Dann has no documents that mention nor reference the MakoHead in his possession, control or custody.  Plaintiffs have attempted to subpoena Dann's emails from his service provider, PAIR, however PAIR stated they would not produce them without Dann's permission.  Dann has refused.  Dann's statements that OPEL no longer does business, or that they had a single client are not only irrelevant but a false statement when viewed by Defendant Oppenheimer's exhibit OPP000001 which shows MakoHead rentals to at least two other companies after Mako declared bankruptcy.  Dann's prior massive withholding & false statements in Mako-1 are continuing here as the exhibits show.  Dann has stated he owns OPEL. He is also well aware of the duty to preserve evidence, including electronically stored evidence.  Surely he has possession, custody and control.

## II.    DEFENDANT'S INTRODUCTION

On June 19, 2017, Plaintiffs served John Dann's counsel, Mark Young, with a subpoena requesting documents from John Dann.  John Dann served his response 18 days later, on July 7, 2017.

After receiving Mr. Dann's response, Plaintiffs insisted that Mr. Dann is obliged to instruct Pair.com, Mr. Dann's email service provider, to deliver all archived copies of all of Mr. Dann's emails to Plaintiffs.  Plaintiffs also insisted that Mr. Dann instruct MB&H Corporate Services Limited, a Bahamian entity that prepared and filed the papers to form Defendant Oceanic Production Equipment, Ltd., to deliver copies of all available documents to Plaintiffs.  Mr. Dann disagreed because: (1) John Dann searched his records and does not have any documents responsive to Plaintiffs requests, beyond documents already provided to Plaintiffs in response to requests served on Oceanic Production Equipment, Ltd. (OPEL) in this lawsuit; (2) John Dann never had a relationship with MB&H Corporate Services Limited; and (3) the archived emails sought by Plaintiffs from Pair.com

1  are replete with attorney-client communications relating to this case and other

2  personal emails that have no bearing on this case and are not responsive to

3  Plaintiffs' requests.

4       On July 25, 2017, in accordance with applicable procedures, the parties

5  jointly prepared and sent an email (Dann Exhibit A) to Magistrate Judge Karen L.

6  Stevenson, presenting the discovery dispute.  On July 27, 2017, a telephone

7  conference was held before Magistrate Judge Karen L. Stevenson.  During the

8  conference, counsel for John Dann agreed to request all corporate documents from

9  each Bahamian entity involved in the formation and maintenance of OPEL.  After

10 the conference, counsel for John Dann provided to Plaintiffs copies of letters

11 requesting the documents (Dann Exhibit B).   Magistrate Judge Karen L.

12 Stevenson's Order is Dkt. 156.

13      After the conference, John Dann voluntarily requested his email service

14 provider, Pair.com, to provide copies of all saved emails, which Pair.com has

15 agreed to do.  Upon receipt of the emails, Mr. Dann will filter attorney-client

16 communications and emails that are not responsive to Plaintiffs' requests.  Mr.

17 Dann will then forward any remaining emails to Plaintiffs.  Mr. Dann advised

18 Plaintiffs of his intention to do so in the correspondence attached as Dann Exhibit

19 C.

20      Plaintiffs refer to MakoHead rentals to at least two other companies after

21 Mako declared bankruptcy.  Actually, these rentals were underway before and

22 during the bankruptcy.

23

24 **III.  PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION**

25 **Request No. 1:**

26      All documents and communications relating to OPEL, Mako Products, Inc.

27 or the MakoHead including, but not limited to, all emails, invoices, marketing

28 materials, financial documents and related documents from, to, or otherwise

pertaining to OPEL, Mako Products, Inc. or the MakoHead (from Nov. 1, 2010 per the instructions).

**John Dann's Response**:

On January 21, 2017, the boat in which Mr. Dann resided and conducted OPEL business caught fire and burnt. The boat and all of its contents were destroyed. Mr. Dann does not and has never had a separate office facility for conducting any OPEL business. Prior to January 21, 2017, as previously reported to Plaintiffs in response to Plaintiffs' prior requests for production to Oceanic Production Equipment, Ltd. (OPEL), OPEL ceased any business relating in any way to the accused product. Since then, neither OPEL nor Mr. Dann have resumed or started any business relating in any way to the accused product.

The bank account referred to in this case as the "Mako Account" is closed and Mr. Dann does not have access to it, as previously reported to Plaintiffs in response to Plaintiffs' prior requests for production to OPEL.

Mr. Dann does not have any bank account for any business related to the subject matter of this case, and has no plan of opening a bank account for any business related to the subject matter of this case.

Neither Mr. Dann nor OPEL are doing any business with the accused MakoHead stabilizers.

Mr. Dann is not receiving any payments from OPEL or related to any business with the accused MakoHead stabilizers.

Mr. Dann does not have copies of checks written by Mr. Dann. Mr. Dann does not have copies of checks received for payments to OPEL. Mr. Dann does not have copies of bank statements for any account related in any way to OPEL or Mako Products, Inc.

In response to Plaintiffs' prior requests for production to OPEL, Mr. Dann provided invoices and QuickBooks reports showing OPEL billings, receipts and payments [OPEL0001-0009, 0011-0027]. Mr. Dann has no additional responsive documents,

1  beyond the documents previously supplied to Plaintiffs in response to Plaintiffs'

2  prior requests for production to OPEL.

3  Attached are photos [JD0001, JD0002] of Mr. Dann's destroyed boat, and a photo

4  of correspondence from an insurer for the boat [JD0003].

5  Subject to the foregoing and general objections, after a reasonable and diligent

6  search by John Dann, Mr. Dann did not locate any documents responsive to this

7  request.

8  **Plaintiffs' Position:**

9       Dann's statement that he does not and has never had a separate office facility

10  for conducting OPEL business is False.  See docs. 65-6, page 27 of 35; 65-4, page 2

11  of 34; and 65-2, page 20-21 of 21.  Dann operates and rents the MakoHeads out of

12  the Klein compound in Summerfield Florida.

13       Dann's statements that neither Dann nor OPEL has done business prior to

14  January 21, 2017, is a red herring.  The Request is for all documents in relation to

15  OPEL, Mako or the MakoHead, not just in the 5 ½ months prior to the subpoena

16  issued on July 15, 2017.

17       OPEL, the company Dann claims he owns, was involved, and under

18  jurisdiction according to the Court's jurisdiction findings, however in responding to

19  Discovery requests, has produced just 27 pages.  Of those, 26 were their in-house

20  created Quickbooks records, and a re-printing of Oppenheimer's already produced

21  invoices, but this time doctored to show OPEL as being in the Bahamas, rather than

22  at the Kleins' Summerfield, Florida as the original invoices showed (produced by

23  the Oppenheimer defendants).  There is one single page they did not create, an

24  invoice from a services provider, Cafferata Corp, which *does not even contain an*

25  *address or phone number for either the service provider, or OPEL.*

26       Well over a hundred thousand dollars in MakoHead rentals and yet OPEL

27  cannot provide a single communication of a single rental, and the invoices provided

28  have been doctored.  Now Dann claiming to be the owner of OPEL, claims he

1   doesn't have possession, custody or control of a single document.  This is the

2   continuation of the Mako-1 abuse.

3          Documents held by Dann's email provider, and banks, shipping companies,

4   etc. are within his control.  He should be compelled to produce them.

5   **John Dann's Position:**

6          Plaintiffs' position misrepresents facts and mischaracterizes John Dann's

7   position.  Dann never stated that hat neither Dann nor OPEL has done business

8   prior to January 21, 2017.

9          Dann does not operate or rent MakoHeads out of the Klein compound in

10  Summerfield Florida.

11         The documents referenced in the first paragraph of Plaintiffs' Position

12  include a bill from a vendor, with billing to a Bahama address.  While the ship to

13  address is Summerfield, that address was not supplied to the vendor by Dann or

14  OPEL.  Rather, the method of shipment ("ship") is "to be picked up."  Another

15  document from Defendant Oppenheimer was sent to the Summerfield address,

16  again without instruction from Dann or OPEL.  Another document is an email

17  during the pendency of the Mako bankruptcy proceeding.

18

19

20  **Request No. 2**:

21         All emails going to or from all email account(s), maintained through Pair

22  Networks, Inc. and which made any reference or pertained in any way to the

23  MakoHead.

24  **John Dann's Response**:

25         John Dann has searched his emails from all email account(s), maintained

26  through Pair Networks, Inc. for any referring or pertaining to the MakoHead.

27  Except for documents recently filed in this lawsuit and forwarded to Mr. Dann by

28

email, Mr. Dann's search did not produce any such emails.  Subject to the foregoing and general objections, after a reasonable and diligent search by John Dann, Mr. Dann did not locate any documents responsive to this request.

**Plaintiffs' Position:**

John Dann's claim that there is no reference anywhere in his emails to the one product he has been in the business of renting for the last several years is not credible, especially when this case was initiated over $183,000 in those specific device rentals.  Where Dann states he did a diligent search and did not locate any responsive documents, Dann, also states he owns OPEL.  Dann has custody and control of the documents, including his emails that are safely stored and backed up by his email provider, PAIR.  From the previous case Mr. Dann knows he has the duty to preserve evidence including emails.  There should be no reason why the requested emails would not be available.  No diligent search is necessary, Dann can access them from his email provider, but he refuses.  Plaintiffs subpoenaed Dann's email provider, PAIR, who stated they would not release them without Dann's consent.  Dann refused his consent, deliberately blockading access.  Sanctions should be applied as this extends the case, requires the Court's and Plaintiffs' resources, and Dann has already been subject to one Order to Show Cause for exactly the same discovery abuses in Mako-1.

At the Magistrate conference, Defendants' counsel expressed that some emails might be attorney client privileged.  Defendants know how to redact or remove documents from production and provide a log. This is not an excuse.

Plaintiffs propose the following to overcome Defendant's objections.

1.     A Court Order for Dann to comply with Plaintiffs' subpoena by authorizing PAIR to release all emails to Defendants' attorney Mark Young.  Mr. Young to remove privileged documents, create a privilege log, and make production to Plaintiffs including the privilege log.

2.      Defendants, (or PAIR) to provide a single list of the *Subject Line and Date* of PAIR's email production. This will identify email content without breaching confidentiality content or emails claimed irrelevant.

Plaintiffs provide as exhibit B, three sample pages of the same "*Subject Line and Date*" created from the 9,383 emails Dann had withheld in Mako-1.  The list, of which this is three pages, was created in minutes.  It is a standard view screen of an email list, no editing is needed, and the number of emails would match PAIR's production.

Plaintiffs ask the Court to take at least a cursory look at Exhibit B showing the emails Dann improperly withheld for years in Mako-1. The *subject and date* do not breach confidentiality, yet indicate the email's relevancy. The Court can also see the massive abuse Dann inflicted in Mako-1 as these emails were too late to be of use.  It severely impacted Plaintiffs' case, and directly precipitated the instant case, which would have been avoided had Dann properly and timely produced in Mako-1. The Subject and Date verification list is simple and warranted due to Dann's previous abuse.  Currently Dann states there are no relevant MakoHead documents against a known  $183,000 in rentals.  It doesn't add up.

**John Dann's Position:**

John Dann has voluntarily requested copies of all available emails from his email service provider.  His email service provider has agreed to provide the emails.  Upon receipt of the emails, Mr. Dann will filter out attorney-client communications and emails that are not responsive to Plaintiffs' requests.  Mr. Dann will then forward any remaining emails to Plaintiffs.  Mr. Dann advised Plaintiffs of his intention to do so in the correspondence attached as Dann Exhibit C.

Mr. Dann should not be required to create the list requested by Plaintiffs. Such a list does not exist, and creating the list will be unduly burdensome to Mr. Dann, particularly in view of the fact that the great vast majority of all emails will either have no bearing on the case or will comprise attorney-client communications.

1   Additionally, Mr. Dann disagrees that subject line and date information will not
2   compromise attorney-client communications.

3        In a prior lawsuit (CV 04-08604) in this Court involving the same patent and
4   accused product, Mako Products, Inc. produced to Plaintiffs, David Grober and
5   Voice International, Inc.,  thousands of pages of documents, including emails of
6   John Dann.  Today, Mr. Dann does not have copies of those emails.  In that prior
7   case, Mr. Dann never withheld emails.  Plaintiffs' assertion to the contrary is false.
8   Additionally, in that prior case, upon Plaintiffs' first request Mr. Dann made his
9   emails available to Plaintiffs expert for review, a review that lasted two full days.
10  Any delay related to these emails, was a delay caused by Plaintiffs and Plaintiffs'
11  own expert.

12

13  **Request No. 4**:

14       All documents which in any way reference or pertain in any way to the
15  transportation of any MakoHead or its batteries.

16  **John Dann's Response**:

17       Subject to the foregoing and general objections, after a reasonable and
18  diligent search by John Dann, Mr. Dann did not locate any documents responsive to
19  this request.

20  **Plaintiffs' Position:**

21       The MakoHead ships in a 120 lb. camera container and travels with one or
22  more batteries each weighing over 40 lbs.  For over $183,000 in rentals over several
23  years, Dann claims to have no shipping documents.  Furthermore, Dann states his
24  MakoHead was based in Canada.  If so, there must be international shipping
25  documents.  Dann, owning OPEL, which he claims owns the MakoHead used in the
26  alleged infringement, says he has no shipping documents.   Discovery requests to
27  Defendant Oppenheimer produced virtually no shipping documents.  This is being

28

played like a magician's ball and cup.  Oppenheimer doesn't have them, OPEL doesn't have them, Dann doesn't have them.

Defendants don't want to provide the shipping information as that will give positive identification of the specific MakoHead unit(s) that were engaged in the asserted infringement, and the locations where the MakoHeads came from and were shipped back to.  This is relevant to the truth of whose MakoHead units were used in the asserted infringement.  This is relevant to ascertain if OPEL's MakoHeads were rented out to other customers.

Large shipping cases of camera equipment, valued at over $125,000, do not travel without shipping records, nor travel across international borders without proper documentation.  The Oppenheimer defendants have stated they have no such documents showing the MakoHead movements.

John Dann, stated owner of OPEL, has possession, custody or control of all documents, including shipping documents and he should be ordered to produce them as they are vital facts highly pertinent to the case.

**John Dann's Position:**

The end user arranged for pickup and shipping of the one Makohead rented by OPEL from a Canadian rental house.  Mr. Dann does not have documents responsive to this request.

**Request No. 5**:

All documents, including financial transactions, check, front and back, tax and reporting statements that show you were an employee, officer, director, owner or otherwise associated with OPEL.

**John Dann's Response**:

Subject to the foregoing and general objections, after a reasonable and diligent search by John Dann, Mr. Dann did not locate any documents responsive to

1  this request.

2  **Plaintiffs' Position:**

3      To the extent Mr. Dann no longer has the documents, they are within his

4  custody and control and he should be compelled to produce them.

5  **Defendant's Position:**

6  OPEL ceased any business relating in any way to the accused product in 2016.

7  Since then, neither OPEL nor Mr. Dann have resumed or started any business

8  relating in any way to the accused product.

9      The bank account referred to in this case as the "Mako Account" is closed

10  and Mr. Dann does not have access to it, as previously reported to Plaintiffs in

11  response to Plaintiffs' prior requests for production to OPEL.

12      Plaintiffs have already served a subpoena on OPEL's former bank requesting

13  all records.  OPEL has not opposed the subpoena.

14      Mr. Dann does not have any bank account for any business related to the

15  subject matter of this case, and has no plan of opening a bank account for any

16  business related to the subject matter of this case.

17      Neither Mr. Dann nor OPEL are doing any business with the accused

18  MakoHead stabilizers.

19      Mr. Dann is not receiving any payments from OPEL or related to any

20  business with the accused MakoHead stabilizers.

21      In response to Plaintiffs' prior requests for production to OPEL, Mr. Dann

22  provided invoices and QuickBooks reports showing OPEL billings, receipts and

23  payments [OPEL0001-0009, 0011-0027]. Mr. Dann has no additional responsive

24  documents, beyond the documents previously supplied to Plaintiffs in response to

25  Plaintiffs' prior requests for production to OPEL.

26

27

28

Date:  August 9, 2017                    Respectively submitted,


                                         */David Grober/*
                                         David Grober, *Pro Se*



Dated: August 9, 2017                    Mark Young, P.A

                                         */Mark J. Young/*
                                         Mark J. Young
                                         Mark Young, P.A.
                                         Attorney for John Dann
                                         1638 Camden Avenue
                                         Jacksonville, FL 32225
                                         Telephone: 904-996-8099
                                         Facsimile: 904-980-9234
                                         myoungpa@gmail.com
                                         FL Bar 78158