1  Robert J. Lauson, Esq., SBN 175,486
   bob@lauson.com
2  LAUSON & TARVER LLP
   880 Apollo Street, Suite 301
3  El Segundo, California  90245
   Tel.  (310) 726-0892
4  Attorneys for Plaintiff,
   Voice International, Inc.
5
   David Grober
6  davidgrober1@gmail.com
   578 West Washington Blvd., Suite 866
7  Marina Del Rey, CA  90292
   Tel. (310) 822-1100
8  Plaintiff, Pro se

9  Mark J. Young
   (Fla. Bar No. 0078158)
10 Admitted *Pro Hac Vice*
   MARK YOUNG, P.A.
11 1638 Camden Ave.,
   Jacksonville, FL 32207
12 myoungpa@gmail.com
   Attorney for Defendant
13

Oceanic Production Equip. Ltd.
James E. Doroshow, Esq.
SBN 112,920
jdoroshow@foxrothschild.com
Ashe Puri, Esq. SBN 297,814
apuri@foxrothschild.com
FOX ROTHSCHILD LLP
1800 Century Park East, Suite 300
Los Angeles, CA  90067-1506
Tel. (310) 598-4150
Attorneys for Defendants,
Oppenheimer Cine Rental, LLC,
Oppenheimer Camera Products, Inc.,
 and Marty Oppenheimer

David A. Peck (Cal. Bar No. 171854)
COAST LAW GROUP, LLP
1140 S. Coast Hwy 101, Encinitas,
CA 92024
Tel: (760) 942-8505
Fax: (760) 942-8515
dpeck@coastlawgroup.com
Attorneys for Defendant
Oceanic Production Equip. Ltd.

14              **UNITED STATES DISTRICT COURT**

15      **CENTRAL DISTRICT OF CALIFORNIA WESTERN DIVISION**

| | |
|---|---|
| 16 **VOICE INTERNATIONAL, INC., a California corporation; DAVID GROBER, an individual,** | **Case No.: 2:15-cv-08830-JAK(KS)** |
| 17 | |
| 18 **Plaintiffs,** | **Joint Scheduling Report** |
| 19 **vs.** | **Date:  Feb. 5, 2018**<br>**Time:  8:30 a.m.** |
| 20 **OPPENHEIMER CINE RENTAL, LLC, et al.,** | **Place: Courtroom 10B  First Street** |
| 21 | |
| 22 **Defendants** | |
| 23 . | |

24        Pursuant to Dkt. 208 and 216, the parties, Plaintiffs Voice International and

25  David Grober and Defendants Oppenheimer Cine Rental, LLC, Oppenheimer

26  Camera Products, Inc., Marty Oppenheimer and Oceanic Production Equipment,

27  Ltd. met-and-conferred on January 23, 2018 and jointly report to the Court.

28

# I.     Further Mediation

## Plaintiffs Grober's and Voice International's Position

The parties are far apart on their offers, such that Plaintiffs believe further mediation will not be productive presently.

## Plaintiff Grober's Position

Furthermore, the Kleins and John Dann re-purchased their 5 MakoHeads when they bankrupted their company, Mako, owned by the Kleins. They continued MakoHead rentals during the bankruptcy and after, personally or through their new entity, OPEL, of the Bahamas.  An infringement decision is required to prevent further infringement by the MakoHead or its progeny.  Defendants have now placed into the public record, Smith's declaration, schematics and photographs, including Plaintiffs' trade secrets, on how to build the device. Dkt. 141-2, 141-3.

## Defendant OPEL's Position

Plaintiffs' position set forth in the above paragraph is a gross mischaracterization and irrelevant to scheduling.

Defendant Oceanic Production Equipment, Ltd. (OPEL) disagrees with Plaintiffs' views regarding mediation.  OPEL views Plaintiffs' allegations of infringement of US Patent 6,611,662 as entirely baseless and considers Plaintiffs' damages claim to be beyond the pale.  In an effort to achieve closure, OPEL has made reasonable offers of settlement, to no avail.  OPEL believes that a mediation or another settlement conference with Magistrate Judge Karen L. Stevenson may facilitate settlement by drawing attention to relative weaknesses of the parties' legal positions.

## Defendant Oppenheimer's Position

The Oppenheimer Defendants agree with OPEL's recommendation for further mediation or another settlement conference before the Magistrate Judge.

ACTIVE\53173537.v1-1/29/18

## II. Issues That Need To Be Addressed Prior To Commencement of Trial

### Plaintiffs Grober's and Voice International's Position

**A:** Pursuant to Dkt. 216 Plaintiffs will be filing a Second Amended Complaint on or before Feb. 1, 2018 and a discovery schedule will need to be set.

During the meet and confer teleconference on January 23, 2018, Plaintiff Grober stated that he is reviewing new evidence as pertaining to naming individuals Jordan Klein, Sr.; Jordan Klein, Jr.; and John Dann as defendants in the Second Amended Complaint. Although the Court previously determined there was lack of personal jurisdiction, on these individuals, new evidence may show differently.

Plaintiffs need to conduct written discovery and depositions because previous discovery to Florida Defendants, including OPEL and Dann was limited to jurisdiction issues. Defendants refused to answer numerous Requests for Production and Interrogatories citing it violated the jurisdiction restriction. Plaintiffs will provide these responses to the Court if requested.

As Plaintiffs were forced to take the initial deposition of Mr. Oppenheimer prior to being allowed to conduct written discovery on all defendants, and Mr. Oppenheimer insisted on leaving the deposition after only four hours, a second or continued deposition may be necessary once discovery is received pertaining to Oppenheimer's MakoHead rentals and the involvement of OPEL or whomever was the recipient of rental income, and/or owned the accused infringing MakoHeads.

Defendant Oppenheimer's argument below does not address the simple fact that Plaintiffs did not have the opportunity to conduct discovery on all defendants concurrently and that it is believed that discovery obtained from OPEL will raise new questions to be posed to Oppenheimer.

The Court has stated there are additional claim constructions for the terms "fixed" and "based on" which will need to be decided.

ACTIVE\53173537.v1-1/29/18

**Defendant OPEL's Position**

1

2       During the meet and confer teleconference on January 23, 2018, Plaintiff
3   Grober stated, in no uncertain terms, that he intended to name individuals Jordan
4   Klein, Sr.; Jordan Klein, Jr.; and John Dann as defendants in the Second Amended
5   Complaint, despite this Court's order dismissing the First Amended Complaint
6   against these same individuals for lack of personal jurisdiction.  Plaintiffs initiated
7   this lawsuit on November 12, 2015 [Dkt. 1], but did not name OPEL, Jordan Klein
8   Sr., Jordan Klein Jr. and John Dann as defendants until Plaintiffs filed a first
9   amended complaint [Dkt. 36] on June 15, 2016.  In an order dated May 22, 2017
10  [Dkt. 142], the court dismissed the complaint against Jordan Klein Sr., Jordan Klein
11  Jr. and John Dann for lack of personal jurisdiction, but denied the motion to dismiss
12  by OPEL.  If named as defendants in the Second Amended Complaint, Jordan
13  Klein, Sr.; Jordan Klein, Jr.; and John Dann will have no choice but to move, yet
14  again, for dismissal for lack of personal jurisdiction and venue.

15      While preserving objections to requests that clearly exceeded the scope of
16  jurisdictional discovery, Defendant OPEL produced responsive documents and
17  answers to interrogatories to the extent the information was available and not
18  protected by privilege.  Plaintiffs' assertion that OPEL withheld responsive non-
19  privileged information or documents is false.

20      OPEL has not yet filed an answer, has not yet submitted a brief or been heard
21  on claim construction, has not previously participated in scheduling, has not yet
22  conducted discovery and has not yet filed a dispositive motion.  Defendant OPEL
23  will file a pleading in response to Plaintiffs' Second Amended Complaint.
24  Defendant OPEL will participate in claim construction in accordance with the
25  Court's order [Dkt. 216].  Defendant OPEL will submit written discovery and
26  schedule and take a deposition of at least David Grober.  Defendant OPEL will also
27  move for summary judgment of noninfringement.

28

4

1    Plaintiffs proposed discovery to close in June.  OPEL believes that a close of

2    discovery in April will suffice.

3                    **Defendant Oppenheimer's Position.**

4           The Oppenheimer Defendants disagree with Plaintiffs' characterization of the

5    prior discovery in this action.  Discovery commenced in this action on or around

6    June 10, 2016 after the Oppenheimer Defendants withdrew their motion to dismiss

7    for lack of jurisdiction and the parties submitted their Joint Rule 16(b)26(f) Report.

8    Dkt. No. 35.  On November 21, 2016, this Court entered an "Order Continuing

9    Pretrial and Trial Dates" [Dkt. No. 91] giving Plaintiffs nearly an additional nine

10   (9) months to conduct discovery, including the deposition of Mr. Oppenheimer.  A

11   subsequent Order entitled "Order Setting Pretrial and Trial Dates" dated March 28,

12   2017 [Dkt. No. 120] was later issued extending the discovery cut-off until October

13   30, 2017, giving Plaintiffs almost another three (3) months to take discovery.  Thus,

14   Plaintiffs have already *had more than nineteen months to complete their discovery*

15   *of the Oppenheimer Defendants in this action*.

16          On October 5, 2017, Plaintiffs served a notice of deposition for Mr.

17   Oppenheimer's testimony to take place in Seattle, Washington on October 30,

18   2017, the last possible date before discovery closed.  Dkt. No. 202.  The parties

19   subsequently agreed that Plaintiffs could depose Mr. Oppenheimer on November

20   20, 2017 based on an agreement that Mr. Oppenheimer would fly from Seattle,

21   Washington to the Plaintiff Voice Int'l's counsel's office in Southern California

22   with Plaintiffs paying for Mr. Oppenheimer's flight.  Dkt. No. 202.  As part of the

23   parties' agreement, Plaintiffs agreed to start Mr. Oppenheimer's deposition at noon

24   or 1 pm to avoid having to incur the cost for Mr. Oppenheimer's lodging the night

25   before if the deposition started in the morning.  See Exhibit C.  Since Mr.

26   Oppenheimer would need to leave very early in the morning from Seattle to appear

27   for his deposition by noon/1 pm in Southern California, Plaintiffs also agreed that

28   the deposition would not exceed **four hours**.  *See id.* ("Let's set a new start time for

5

1   the deposition to begin at noon or 1:00 pm not expected to exceed 4 hours so Mr.

2   Oppenheimer can get here in plenty of time.")

3       Mr. Oppenheimer's deposition took place on November 10, 2017.  After

4   examining Mr. Oppenheimer for less than four hours, Plaintiffs announced they had

5   concluded their deposition.  Mr. Oppenheimer did not terminate the deposition, as

6   Plaintiffs now falsely assert.  In fact, Plaintiffs still had time remaining within the

7   four hour period to further depose Mr. Oppenheimer but chose to close the

8   deposition.  Knowing full well that the time to complete discovery was October 30,

9   2017, and that the deadline to file discovery motions was November 27, 2017,

10  Plaintiffs also never filed a motion to compel Mr. Oppenheimer to appear for any

11  additional examination.

12      The Oppenheimer Defendants also dispute Plaintiffs' contention that they

13  need more time to conduct discovery involving "Oppenheimer's MakoHead rentals

14  and the involvement of OPEL or whomever was the recipient of rental income."

15  More than two years ago, the Oppenheimer Defendants produced to Plaintiffs

16  detailed confidential billing records identifying how much rental income was paid

17  to Mako and OPEL.[1]  If Plaintiffs truly believed Defendants' discovery was

18  insufficient (it is not), they should have brought this issue before the Magistrate

19  during the discovery period.  They should not be permitted to reopen discovery now

20  more than two years after this case began.

21      The Oppenheimer Defendants (including Mr. Oppenheimer) have complied

22  fully with their discovery obligations within the time frame ordered by this Court.

23  As such, Plaintiffs should not now have the opportunity to reopen discovery as to

24  the Oppenheimer Defendants.

25

26

27  _____

[1] The Oppenheimer Defendants can provide their financial records to the Court if

28  the Court wishes to review them.

6

**B:  Plaintiffs Note Defendants' Abuse Of The Protective Order**

1

2         The Oppenheimer Defendants have mass designated all 608 produced

3   documents as "Confidential."  Plaintiffs have made numerous requests for proper

4   designations.  The Oppenheimer Defendants have refused. Plaintiffs were forced to

5   file Motions to File Under Seal on three occasions.  All three times the Court

6   determined the documents were not confidential. (1) Dkts. 102, 114, 115; (2) Dkts.

7   135, 137, 138; (3) Dkts. 163, 167, 173, 174, 178, 179, 182, 183.  On the third

8   occasion the Court ordered a briefing schedule. Defendants, before the briefing,

9   agreed to strike the faulty "Confidential" designations to avoid a hearing.

10        On January 16, 2018 Plaintiff again emailed Defendants' Counsel requesting

11  de-designation according to the Court's agreed protective order, for 21 pages

12  Plaintiffs were using as exhibits in their MSJ reply brief.  These comprised years

13  old invoices similar to discovery Judge Kronstadt previously ordered de-designated.

14  The Oppenheimer Defendants flatly refused.  Exhibit B is a true and correct copy of

15  that email exchange.

16        In total, Oppenheimer has computer stamped all 608 bates discovery pages,

17  in six separate productions, "Confidential". This includes at least 18 totally blank

18  pages, more pages simply have Dann's contact information.  One page just says,

19  "Thanks Marty."  The Oppenheimer Defendants further designated the entire

20  deposition transcript of Marty Oppenheimer as confidential.  It is not.

21        This has deliberately vexed Plaintiffs and multiplied the case load for

22  Plaintiffs and the Court.

23        The Court's protective order, which governs this case, states, "Mass,

24  indiscriminate, or routinized designation are prohibited.  Unjustified designations

25  expose the designator to sanctions, including the Court's striking all confidentiality

26  designations made by that designator. Designation under this Order is allowed only

27  if the designation is necessary to protect material that, if disclosed to persons not

28  authorized to view it, would cause competitive or other recognized harm."

1    Plaintiffs request the Court to strike all confidential designations made by the

2    Oppenheimer Defendants and order that they pay sanctions to Plaintiffs for the

3    three previous requests to file under seal.  Plaintiffs will provide the 608

4    "Confidential" documents for a Court review if requested.

5    Defendant Oppenheimer's argument below is not accurate and does not

6    address the issues raised above.   In short, every time Plaintiffs have identified so-

7    called "confidential" documents they would like to attach to a filing, Defendants

8    refuse to reconsider their designations.  It should also be noted that while the

9    Magistrate Judge declined to de-designate she also did not look at them and instead

10   stated:

11          The Court: … And, Mr. Mr. Doroshow, Mr. Puri, I will say to

12          the extent you've designated blank pages as "confidential," that will

13          be difficult – you will have a difficult time meeting your burden if

14          this comes to briefing to justify that.

15          Mr. Puri: Sure.

16          The Court: So, I would strongly suggest that there be some

17          review of those designations to make sure that you folks have not

18          inadvertently I'm sure – probably much of this is automated in some

19          ways – overextended that confidentiality designation.

20          Mr. Doroshow: Sure.

21   Exhibit D, (transcript of Magistrate Hearing on 12/5/16, pg. 21, lines 4 – 13).

22          Three times now Judge Kronstadt as seen fit to de-designate

23          Oppenheimer's "confidential" documents that have been submitted for

24          his review.

25   **Defendant Oppenheimer's Position.**

26          The documents that are subject of Plaintiffs' untimely dispute were produced

27   by the Oppenheimer Defendants more than a year ago.  Plaintiffs had previously

28   challenged the confidential designations of 599 pages of the 608 pages of

8

1    documents before the Magistrate in January 2017.  At that time, Plaintiffs also

2    demanded that the Oppenheimer Defendants complete a worksheet requiring

3    Defendants to provide a line-by-line explanation as to why 599 pages of documents

4    were designated as Confidential.  By written Order dated January 25, 2017 (Dkt.

5    No. 107), the Magistrate denied Plaintiffs' challenges to Oppenheimer Defendants'

6    confidentiality designation to all 599 pages of documents stating:

7           After further discussion, the Court determines that Plaintiffs' demand

8           that defendants complete the 'worksheet' is not contemplated by either

9           the Federal Rules of Civil Procedure or case law.  Further, insofar as

10          Plaintiffs have not indicated that they need to use any of the 599 pages

11          designated "confidential" in any motion or pending proceeding, much

12          less that they have been prejudiced by the designations, Plaintiffs have

13          not demonstrate any basis for the Court to require defendants to

14          'explain' these discovery designations.  Accordingly, the Court finds

15          Plaintiff's request is premature and it is, therefore DENIED, without

16          prejudice.

17          The Magistrate also advised Plaintiffs at the discovery conference, in

18    response to their complaints that Defendants produced blank pages with

19    confidential designations, that they *first* advise Defendants which pages formed the

20    basis of their complaints.

21          Since the Court denied Plaintiffs' request as unsupported and premature on

22    January 25, 2017, Plaintiffs has never raised any further challenges to Defendants'

23    confidentiality designations until December 28, 2017, more than eleven months

24    after Plaintiffs' first challenge to the designation of these documents. By that point,

25    however, the deadline to file discovery motions under LR 37, including challenges

26    to confidentiality designations, had already passed by more than a month.  *See* J.

27    Kronstadt's Standing Protective Order for Patent Cases, ¶ 3("All challenges to

28    confidentiality designation shall proceed under Local Rule 37-1 through Local Rule

1   37-4"); *see* Dkt. No. 120 (November 27, 2017 – Last day to file motions (*including*

2   *discovery motions).*  Moreover, rather than complying with the Magistrate's

3   instructions over a year ago that Plaintiffs first advise Defendants which blank

4   pages form the basis of their disputes, Plaintiffs have now used this Joint Report an

5   opportunity to circumvent the Magistrate's instructions by bringing their dispute

6   over the Oppenheimer Defendants' confidentiality designations before the District

7   Court.

8       Plaintiffs have had more than ample time during discovery to comply with

9   the Magistrate's instructions and to raise any challenges involving Defendants'

10  designations, but specifically chose to not do so.  Accordingly, Plaintiffs should not

11  be permitted now to reopen discovery particularly under these circumstances

12  involving documents that the Oppenheimer Defendants produced more than a year

13  ago.

14      **Defendant OPEL's Position**

15      OPEL is not involved in the discovery referred to above by Plaintiff.

16

17      **III.    Proposed Dates For Pretrial Conference And Trial**

18       Please see attached Exhibit A.

19

20      **Plaintiff David Grober's Availability**

21      Plaintiff Grober is scheduled for a U.S. Navy ocean research program. His

22  current schedule has him in Asia and the Indian Ocean on or about May 12 – 30th,

23  2018, and June 20th to July 25th, 2018.   The close of discovery for June 15th, 2018

24  allows for time away, and is well ahead of trial prep and trial.

25      **OPEL's Position**

26      A close of discovery in April, as proposed by OPEL, would not interfere with

27  Grober's travel plans.

28

10

| | | |
|---|---|---|
| 1 | | Respectively Submitted, |
| 2 | DATED:  January 29, 2018 | LAUSON & TARVER LLP |
| 3 | | By: /s/ Robert J. Lauson |
| 4 | | Robert J. Lauson, Esq.<br>Attorney for Plaintiff<br>VOICE INTERNATIONAL |
| 5 | | |
| 6 | | By: /s/ David Grober |
| 7 | | David Grober<br>In Pro Per |
| 8 | | |
| 9 | | FOX ROTHSCHILD, LLP |
| 10 | | |
| 11 | | By: /s/ James Doroshow<br>James E. Doroshow, Esq. |
| 12 | | Ashe Puri, Esq.<br>Attorney for Defendant |
| 13 | | OPPENHEIMER CINE RENTAL,<br>OPPENHEIMER CAMERA RENTAL,<br>MARTY OPPENHEIMER |
| 14 | | |
| 15 | | |
| 16 | | MARK YOUNG, P.A. |
| 17 | | By:   /s/  Mark Young |
| 18 | | Mark Young, Esq.<br>Attorney for Defendant<br>OCEANIC PRODUCTION EQUIPMENT, LTD. |
| 19 | | |
| 20 | | COAST LAW GROUP, LLP |
| 21 | | By:  /s/ David Peck |
| 22 | | David Peck, Esq.<br>Attorney for Defendant<br>OCEANIC PRODUCTION EQUIPMENT, LTD. |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |

ACTIVE\53173537.v1-1/29/18