Robert J. Lauson, Esq., SBN 175,486
bob@lauson.com
LAUSON & TARVER LLP
880 Apollo Street, Suite 301
El Segundo, California 90245
Tel. (310) 726-0892

Lamar Treadwell, Esq.
Law Offices of Lamar D. Treadwell
1308 E. Common St., Suite 205
New Braunfels, TX 78132
Lamar@TreadwellTrialLaw.com
Tel: (505) 660-0602

Attorneys for Plaintiff, Voice International, Inc.

David Grober
davidgrober1@gmail.com
578 West Washington Blvd., Suite 866
Marina Del Rey, CA 90292
Tel. (310) 951-1110

Plaintiff, Pro se

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA WESTERN DIVISION

| | |
|---|---|
| **VOICE INTERNATIONAL, INC.**, a California corporation; **DAVID GROBER**, an individual,<br><br>    **Plaintiffs**,<br><br>    vs.<br><br>**OPPENHEIMER CINE RENTAL, LLC, et al.**<br><br>    **Defendants** | Case No.: 2:15-cv-08830-JAK(KS)<br><br>**Declaration of David Grober In Support of Plaintiffs' Opposition To OPEL's Motion For Summary Judgment Of Invalidity**<br><br>Date: October 1, 2018<br>Time: 8:30 a.m.<br>Place: Courtroom 10B, First Street |

I, David Grober, declare as follows:

1

1. I am the Plaintiff in the above-entitled civil action and the inventor and owner of the '662 patent-in-suit. I offer this testimony in support of Plaintiffs' opposition to the motion to invalidate my patent. I have personal knowledge of the facts alleged herein and if called to testify, I would and could competently testify thereto.

2. The '662 patent-in-suit "Autonomous, Self-Leveling, Self Correcting, Stabilized Platform" discloses and claims a camera stabilization system including certain structure such as a base, gimbals and a payload platform, certain motors or means for moving the payload platform relative the base, certain sensors located on the base and the payload platform, and a control system which receives information from the sensors and directs the motors to move the payload platform to keep it level despite various movements of the base.

As per the patent, the invention is the overall system and how it is configured and functions, not the details of the control system which are not novel, can be accomplished in a number of ways, and which were known at the time the application was filed.

3. My 1999 provisional application included the following statement about the control system:

> The servo control system, through its sensors and electronic signal processor and motor controller, automatically maintains stabilization of the three axes. How these functions are accomplished is beyond the scope of the present description. However, the strategic placement of sensor package A and sensor package B, and their relationship to each other for the purpose of making the invention autonomous and self-correcting, is claimed as part of the invention.

Attached as Exhibit A is a true and correct copy of my provisional patent application.

4. Long prior to the year 2000 I had constructed an analog control system and may have used an off-the-shelf motor control card for the control system. Such motor control cards were available since the mid-1990s. I know this because during this time I became familiar with Delta Tau Data Systems, Inc., a Los Angeles manufacturer of machine and motion controllers and their products. See:

http://www.deltatau.com/DT_IndexPage/index.aspx
http://www.deltatau.com/DT_About/about.aspx
http://www.deltatau.com/DT_Products/MachineAndMotionProductList.aspx.

Accordingly, it was unnecessary for me to design and build the control system electronics, which was beyond my level of skill-in-the-art. In 1997 I completed a training course with them, as per the attached true and correct copy of the certificate of Exhibit B. Also in my business records I have a user manual from June, 1994 showing certain standard circuit boards which were available, a true and correct copy of which is attached as Exhibit C. I believe this is the type of device I used to construct the control system of the initial prototypes of my invention.

5. Attached as Exhibit D is a true and correct copy of my declaration dated Oct. 20, 2008 and accompanying exhibits which was filed on that date in Mako-1 and outlines the timeline of my invention.

6. Tom Smith, Defendant OPEL's predecessor's (Mako Products, Inc.'s) engineer, in his deposition described how he made a simple control system for the accused infringing Makohead in the early 2000s, an analog system using an off-the-shelf motor control card. Attached as Exhibit E is a true and correct copy of

relevant portions of the transcript of his deposition taken in Mako-1 on June 10, 2008.

7. My electronics/software engineer employee Scott Lewallen previously testified that making the patented control system was relatively easy using his early engineering training. Attached as Exhibit F is a true and correct copy of relevant pages of the transcript of his deposition taken on October 30, 2008 in Mako-1.

8. Attached here as Exhibit G is a true and correct copy of the Duckworth U.S. Patent No. 4,143,312. Attached as Exhibit H is a true and correct copy of the Welch U.S. Patent No. 5,922,039. This prior art was used by Mako Products, Inc. in their attempt to invalidate my patent in 2005.

9. My overall invention is for an automatic, self-correcting, stabilized platform system, not the internal components and manner in which the sensor packages collect information. Part of the novelty of my invention lies with the strategic *placement* of the sensor packages and their relationship to each other. The '662 patent describes sensor package A as including "motion sensors such as rate sensors, gyroscopic sensors, fiber optic gyros, or other sensors for sensing motion of the base." '662 Patent, Col. 4, lines 27-30. Sensor package B "includes one or more motion sensors which provide position feedback to the control system," and preferably level sensors. *Id.* at Col. 4, lines 40-42.

10. The types of sensors as recited in the '662 specification, and how they function, were known to those having ordinary skill in the art in the year 2000 when my nonprovisional application was filed. Sensor packages, by their very nature, respond to information about their physical surroundings, process it and transmit a resulting electrical signal. MERRIAM-WEBSTER, www.merriam-webster.com/dictionary/sensor (last visited May 30, 2018) (defining sensor as "a device that

responds to a physical stimulus (such as . . . a particular motion) and transmits a resulting impulse "). A sensor must "collect" the physical stimulus, process it through a linear series of code commands, turn that processing into electronic signals, and then send it out.

11.   Attached as Exhibit J is a true and correct copy of portions of the examiner's reasons for allowance in the re-examination of the '662 patent, these documents also being available online at uspto.gov.

I declare under penalty of perjury that the foregoing is true and correct, executed this 30th day of July 2018 in El Segundo, California.

By: /s/ David Grober
David Grober