1    MARK J. YOUNG
     Fla. Bar No. 0078158
2    Pro Hac Vice
     myoungpa@gmail.com
     MARK YOUNG, P.A.
3    1638 Camden Avenue
     Jacksonville, FL 32207
4    Tel.: 904-996-8099
     Fax: 904-980-9234
5
     Attorney for Oceanic Production
     Equipment, Ltd.
6
     James E. Doroshow (SBN 112,920)
7    jdoroshow@foxrothschild.com
     Ashe Puri (SBN 297,814)
8    apuri@foxrothschild.com
     FOX ROTHSCHILD LLP
9    10250 Constellation Blvd., Suite 900
     Los Angeles, CA 90067
     Tel. (310) 598-4150
10
     Attorneys for Defendants Oppenheimer Cine Rental, LLC,
11   Oppenheimer Camera Products, Inc., and Marty Oppenheimer

David A. Peck
SBN 171854
Coast Law Group LLP
1140 South Coast Highway 101
Encinitas, California 92024
Tel. 760.942.8505 x108
Fax 760.942.8515
Email dpeck@coastlawgroup.com

Attorney for Oceanic Production
Equipment, Ltd.

12
13

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| | |
|---|---|
| VOICE INTERNATIONAL, INC., a California corporation; DAVID GROBER, an individual, <br><br> Plaintiffs, <br><br> vs. <br><br> OPPENHEIMER CINE RENTAL, LLC, a Washington corporation; OPPENHEIMER CAMERA PRODUCTS, INC., a Washington corporation; MARTY OPPENHEIMER, an individual; JORDAN KLEIN, SR., an individual; JORDAN KLEIN, JR., an individual; JOHN DANN, an individual; Mako Products, an unknown entity, Oceanic Production Equipment, Ltd., a Bahamian company; and DOES 1-10, inclusive, <br><br> Defendants. | Case No. 2:15-cv-08830-JAK-KS <br><br> *The Honorable John A. Kronstadt, Courtroom 750* <br><br><br> **DEFENDANTS' CONTENTIONS OF LAW AND FACT** |

**DEFENDANTS' CONTENTIONS OF LAW AND FACT**

1
## **TABLE OF CONTENTS**
2

3
I. NONINFRINGEMENT.................................................................................6
4
   A. Contentions of Fact...........................................................................6
5
   B. Contentions of Law...........................................................................8
6
II. RES JUDICATA......................................................................................9
7
   A. Contentions of Fact...........................................................................9
8
   B. Contentions of Law.........................................................................11
9
     1. Collateral Estoppel..................................................................11
10
     2. Kessler Doctrine.....................................................................13
11
III. INVALIDITY FOR LACK OF WRITTEN DESCRIPTION AND LACK OF
12
ENABLEMENT OF THE CONTROL SYSTEM....................................................16
13
   A. Contentions of Fact.........................................................................16
14
   B. Contentions of Law.........................................................................17
15
IV. INVALIDITY OF EVERY PRODUCT CLAIM FOR INDEFINITENESS...18
16
   A. Contentions of Fact.........................................................................18
17
   B. Contentions of Law.........................................................................18
18
  V. INVALIDITY OF EVERY METHOD CLAIM FOR LACK OF WRITTEN
DESCRIPTION OF INFORMATION COLLECTION......................................19
19
   A. Contentions of Fact.........................................................................19
20
   B. Contentions of Law.........................................................................19
21
VI. INVALIDITY OF EVERY METHOD CLAIM FOR LACK OF WRITTEN
22
DESCRIPTION OF SELF CORRECTING........................................................19
23
   A. Contentions of Fact.........................................................................19
24
   B. Contentions of Law.........................................................................19
25
VII. INVALIDITY OF EVERY ASSERTED CLAIM UNDER 35 USC 102, 103
26
.................................................................................................................20
27
   A. The '662 Patent is Not Entitled to Priority of the Provisional Application...20
28
     1. Contentions of Fact..................................................................20

**DEFENDANTS' CONTENTIONS OF LAW AND FACT**
Active\102089338.v1-9/9/19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

a.  Control System........................................................................20
b.  Methods................................................................................20
2.  Contentions of Law.........................................................................20
B.  Invalidity for Anticipation and/or Obviousness............................................21
1.  Contentions of Fact and Law............................................................21
VIII.  ALTER EGO LIABILITY DOES NOT APPLY..........................................24
A.  Contentions of Fact..........................................................................24
B.  Contentions of Law..........................................................................25

IX.  DAMAGES................................................................................25
A.  Contentions of Fact..........................................................................25
B.  Contentions of Law..........................................................................25

**DEFENDANTS' CONTENTIONS OF LAW AND FACT**

1

# TABLE OF AUTHORITIES

2

3   Adaptix, Inc. v. Amazon.com, Inc., 2015 U.S. Dist. Lexis 111933 (ND Cal. 2015)
.................................................................................................................15

4   Adaptix, Inc. v. Amazon.com, Inc., 2016 U.S. Dist. Lexis 33521 (ND Cal. 2016) 15

5   Associated Vendors, Inc. v. Oakland Meat Co., 210 Cal. App. 2d 825, 842, 26 Cal.

6   Rptr. 806 (1962).................................................................................................26

7   Biomedino, LLC v. Waters Techs. Corp., 490 F.3d 946, 950 (Fed. Cir. 2007)......20

8   Brain Life, LLC v. Elekta Inc., 746 F.3d 1045 (Fed. Cir. 2014)......................15, 16

9   Cross Med. Prods. v. Medtronic Sofamor Danek, Inc., 424 F.3d 1293, 1310 (Fed.

10  Cir. 2005)............................................................................................................9

11  Crowell v. Baker Oil Tools, Inc., 165 F.2d 214 (9th Cir. 1948)............................15

12  Dawn Equip. Co. v. Ky. Farms, Inc., 140 F.3d 1009, 1014 (Fed. Cir. 1998)...........9

13  Duncan Parking Techs., Inc. v. IPS Grp., Inc., 914 F.3d 1347, 1362 (Fed. Cir.

14  2019)..................................................................................................................9

15  Gentry Gallery, Inc. v. Berkline Corp., 134 F.3d 1473, 1479 (Fed. Cir. 1998)......18

16  Horton v. Horton, 18 Cal. 2d 579, 116 P.2d 605, 608 (Cal. 1941).........................14

17  In re PersonalWeb Techs., LLC, 2019 U.S. Dist. Lexis 56804 (ND Cal. 2019).....15

18  Kessler v. Eldred, 206 U.S. 285, 285 (1907)..........................................................14

19  Speedtrack, Inc. v. Office Depot, Inc., 791 F.3d 1317, 1325 (Fed. Cir. 2015).......15

20  Lockwood v. Am. Airll , Inc., 107 F.3d 1565, 1572, 41 USPQ2d 1961, 1966 (Fed.

21  Cir. 1997)............................................................................................................22

22  London v. Carson Pirie Scott & Co., 946 F.2d 1534, 1538 (Fed. Cir. 1991)............9

23  Martin v. General Finance Co., 239 Cal.App.2d 438, 443, 48 Cal. Rptr. 773 (1966).
.................................................................................................................13

24  MGA, Inc. v. General Motors Corp., 827 F.2d 729, 731 (Fed. Cir. 1987)..............16

25  Mid-Century Ins. Co. v. Gardner, 9 Cal. App. 4th 1205, 1213, 11 Cal. Rptr. 2d 918

26  (1992)..................................................................................................................26

27  Molinaro v. Am. Tel & Tel. Co., 460 F. Supp. 673, 675 (E.D. Penn. 1978)..........16

28

**DEFENDANTS' CONTENTIONS OF LAW AND FACT**

New Railhead Mfg., L.L.C. v. Vermeer Mfg. Co., 298 F.3d 1290, 1294, 63 USPQ2d 1843, 1846 (Fed. Cir. 2002)...................................................................22

Personalized Media Communications, LLC v. International Trade Commission, 161 F. 3d 696, 704 (Fed. Cir. 1998).......................................................................20

Primos, Inc. v. Hunter's Specialties, Inc., 451 F.3d 841, 850 (Fed. Cir. 2006) 10

Purdue Pharma L.P. v. Faulding Inc., 230 F.3d 1320, 1323 (Fed. Cir. 2000).........18

Regents of the Univ. of Cal. v. Eli Lilly & Co., 119 F.3d 1559, 1566 (Fed. Cir. 1997)......................................................................................................................18

Rubber Tire Wheel Co. v. Goodyear Tire and Rubber Co., 232 U.S. 413, 418-19 (1914)....................................................................................................................15

Rubber Tire Wheel Co. v. Goodyear Tire and Rubber Co., 232 U.S. 413, 418-19 (1914)...................................................................................................................... .........................................................................................................................15

Shoom, Inc. v. Elec. Imaging Sys. of Am., 2011 U.S. Dist. Lexis 114354 (ND Cal. 2011)......................................................................................................................15

Sonora Diamond Corp. v. Superior Court, 83 Cal. App. 4th 523, 539, 99 Cal. Rptr. 2d 824 (2000).........................................................................................................26

SpeedTrack, Inc. v. Office Depot, Inc., 2014 U.S. Dist. Lexis 62674 (ND Cal. 2014)......................................................................................................................15

Tech. Props. Ltd. LLC v. Barnes & Noble, Inc., 2015 U.S. Dist. Lexis 192876 (ND Cal. 2015)................................................................................................................15

Transco Prods., Inc. v. Performance Contracting, Inc., 38 F.3d 551, 32 USPQ2d 1077 (Fed. Cir. 1994).............................................................................................22

Vas-Cath, Inc. v. Mahurkar, 935 F.2d 1555, 1563-64, 19 USPQ2d 1111, 1117 (Fed. Cir. 1991)......................................................................................................22

Virtualmagic Asia, Inc. v. Fil-Cartoons, Inc., 99 Cal. App. 4th 228, 245, 121 Cal. Rptr. 2d 1 (2002)..................................................................................................26

Warner-Jenkinson Company, Inc. v. Hilton Davis Chemical Co., 520 U.S. 17 (1997)....................................................................................................................9

**DEFENDANTS' CONTENTIONS OF LAW AND FACT**

Watts v. XL Systems, Inc., 232 F.3d 877, 880 (Fed. Cir. 2000)..............................19

Williams v. Williams (In re Williams' Estate), 36 Cal. 2d 289, 223 P.2d 248 (Cal. 1950)....................................................................................................................14

Williamson v. Citrix Online, LLC, 792 F.3d 1339, 1348 (Fed. Cir. 2015)...............1

**DEFENDANTS' CONTENTIONS OF LAW AND FACT**

Active\102089338.v1-9/9/19

1

## PRIOR ART (NOT PREVIOUSLY CONSIDERED)

2

3   NASA publication N9219920, entitled "Real-Time Recursive Filter for the
4   Attitude Determination of the Spacelab Instrument Pointing Subsystem" by West,
5   M.E., published 1992, NTIS issue number 199213 ("West").................................25
6   NASA publication N9618524, entitled "ASTRO-2 Spacelab Instrument Pointing
7   System Mission Performance" by Wessling, F. C.; Singh, S. P., published 1995,
8   NTIS issue number 199612, and presented at the AIAA 1995 Space Programs and
9   Technologies Conference, Huntsville, AL, United States, 26-28 Sep. 1995
10  ("Wessling")..........................................................................................................25
11  "The Instrument Pointing System: Precision Attitude Control in Space" by Ralf
12  Hartmann, et al., presented at the North Atlantic Treaty Organization, Advisory
13  Group for Aerospace Research and Development (AGARD), Flight Mechanics
14  Panel Symposium held in Luxembourg, November 13-16, 1989, and published
15  June 1990 in AGARD Conference Proceedings No.489, Space Vehicle Flight
16  Mechanics, ISBN 92-835-0567-0, at pages 17-1 to 17-11 ("Hartmann")...............25
17  US Patent 3,986,092 to Tijsma et al. ("Tijsma"), entitled *Stabilization System for a
18  Platform Suspended in a Gimbal Frame*, which was filed on March 9, 1973 and
19  issued on October 12, 1976...................................................................................26
20  US Patent 3,936,716 to Bos ("Bos"), entitled *Stabilisation System*, which was filed
21  on November 28, 1973 and issued on February 3, 1976.........................................26
22  PCT Application Publication No. WO99/04224A1 by Applicant Hollandse
23  Signaalapparaten B.V. ("Hollandse"), entitled *System for the Stabilization of an
24  Object Mounted on a Moving Platform*, which was filed on 07/08/1998, with a
    priority date of 07/16/1997 and a publication date of 01/28/1999..........................26

25

26

27

28

**DEFENDANTS' CONTENTIONS OF LAW AND FACT**

# I.  NONINFRINGEMENT

## A.  Contentions of Fact

Defendants contend that the accused MakoHead stabilizer (the "MakoHead") does not infringe any asserted claim (i.e., claims 1, 3, 4, 14, 32, 35 and 38) of US Patent No. 6,611,662 (the '662 patent) because the MakoHead omits elements (i.e., limitations) recited in the asserted claims.

The outer axis angular rate sensor 210o and the inner axis angular rate sensor 210i of the MakoHead do not constitute a "first sensor package" as required by every claim of the '662 Patent.  The outer axis angular rate sensor 210o and the inner axis angular rate sensor 210i are separate sensors, located apart from each other, are not connected and operate independently.

If the outer axis angular rate sensor 210o of the MakoHead is deemed to be a "first sensor package," Plaintiffs' infringement claims fail.  The outer axis angular rate sensor 210o is a single axis sensor that determines motion in only one dimension.  It is incapable of sensing motion in two transverse directions, as required by all asserted claims of the '662 Patent.

If the outer axis angular rate sensor 210o and inner axis angular rate sensor 210i are deemed to constitute a "sensor package," they still do not determine, in two transverse directions, motion of a vehicle/object on which the stabilized platform is mounted, as required by every asserted claim.  During use, the inner axis angular rate sensor 210i moves constantly, with the outer gimbal 135, in a manner that differs from motion of the base 105 and, therefore, cannot sense motion of the base 105 or of a vehicle/object to which the base 105 is attached.  It is not enough for the MakoHead sensors to determine motion in two transverse directions.  To meet the claim limitation, the motion that is determined in two transverse directions must be the motion of the vehicle/object on which the MakoHead is mounted, and not the motion of something other than the

**DEFENDANTS' CONTENTIONS OF LAW AND FACT**

1  vehicle/object..  Because the inner axis angular rate sensor 210i cannot sense

2  motion of the base 105 or of a vehicle/object to which the base 105 is attached, the

3  MakoHead does not and cannot sense, in two transverse directions, motion of a

4  vehicle/object on which the stabilized platform is mounted.

5      All asserted claims of the '662 patent recite a second sensor package that is

6  "fixed to the payload platform."  As the MakoHead does not have a second sensor

7  package fixed (or mounted) to the payload platform, infringement of all asserted

8  claims of the '662 patent is precluded.  An upper sensor enclosure 150 is attached

9  to the top of the MakoHead inner gimbal assembly 140. The upper enclosure 150 is

10  not the payload platform 155 of the MakoHead.  The upper enclosure 150 is a

11  separate structure from the payload platform 155.  The payload platform 155 is

12  removable, while the upper sensor enclosure 150 is not.  Sensors within the upper

13  enclosure 150 are not attached, much less wholly attached, or mounted to the

14  payload platform 155, a separate removable structure.

15      Independent Claim 1 recites "the first sensor package is fixed with respect to

16  the base."  The Court's claim construction order construes "fixed with respect to"

17  as "in a continuous, unchanging relationship with."  During use, the inner axis

18  angular rate sensor 210i moves constantly, with the outer gimbal 135, in a manner

19  that differs from motion of the base 105.  The position and motion of  the inner

20  axis angular rate sensor 210i differs constantly from the position and motion of the

21  base.  Thus, the inner axis angular rate sensor 210i is not fixed with respect to the

22  base.

23      Each method claim recites "information collected by a first sensor package"

24  thereby requiring a first sensor package that collects information.  Assuming,

25  *arguendo*, that the MakoHead outer axis angular rate sensor 210o and the inner

26  axis angular rate sensor 210i somehow constitute a "first sensor package" as

27  alleged by Plaintiffs, they do not collect information. The outer axis angular rate

28

**DEFENDANTS' CONTENTIONS OF LAW AND FACT**

1   sensor 210o and the inner axis angular rate sensor 210i each generate analog output

2   in response to sensed rotations about their input axis. The output is not collected by

3   either the outer axis angular rate sensor 210o or the inner axis angular rate sensor

4   210i.  Thus, the components that Plaintiffs erroneously contend constitute a "first

5   sensor package" are not information collectors.  They do not perform the

6   "collection" of information that is plainly required by every method claim of the

7   '662 Patent.

8       **B. Contentions of Law**

9       "To infringe a claim, each claim limitation must be present in the accused

10   product." *Dawn Equip. Co. v. Ky. Farms, Inc.*, 140 F.3d 1009, 1014 (Fed. Cir.

11   1998). The patentee must establish infringement by a preponderance of the

12   evidence.  *Cross Med. Prods. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293,

13   1310 (Fed. Cir. 2005).  "A patentee claiming infringement must present proof that

14   the alleged infringing device meets each and every claim limitation." *Forest

15   Labs., Inc. v. Abbott Labs.*, 239 F.3d 1305, 1310 (Fed. Cir. 2001) (citations

16   omitted); See *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1535 (Fed. Cir.

17   1991) (the absence of one claim element establishes non-infringement).

18       The doctrine of equivalents is limited.  The test for equivalents be applied on

19   an element-by-element basis. *Warner-Jenkinson Company, Inc. v. Hilton Davis

20   Chemical Co.*, 520 U.S. 17 (1997).  Additionally, the test cannot be applied to read

21   out a claim limitation.  "It is the role of the court ... to ensure that the doctrine of

22   equivalents is not permitted to overtake the statutory function of the claims in

23   defining the scope of the patentee's exclusive rights..." *Id.*  The doctrine of

24   equivalents is not "simply the second prong of every infringement charge,

25   regularly available to extend protection beyond the scope of the claims." *London

26   v. Carson Pirie Scott & Co.*, 946 F.2d 1534, 1538 (Fed. Cir. 1991); *see also

27   Duncan Parking Techs., Inc. v. IPS Grp., Inc.*, 914 F.3d 1347, 1362 (Fed. Cir.

28

**DEFENDANTS' CONTENTIONS OF LAW AND FACT**

Active\102089338.v1-9/9/19

1   2019)  ("[T]he doctrine of equivalents cannot be used to effectively read out a

2   claim limitation . . . because the public has a right to rely on the language of patent

3   claims." *(citing Primos, Inc. v. Hunter's Specialties, Inc.*, 451 F.3d 841, 850 (Fed.

4   Cir. 2006))).

5         A more detailed description of the accused MakoHead, contentions of fact

6   and contentions of law pertaining to non-infringement are set forth in Exhibit A.

7   **II.  RES JUDICATA**

8         **A.  Contentions of Fact**

9         Mako Products, Inc., formerly a Florida corporation, was owned by Jordan

10   Klein, Sr. and Jordan Klein, Jr.  The corporation liquidated and dissolved pursuant

11   to and in accordance with a voluntary bankruptcy, under Chapter 7 of the

12   Bankruptcy Code, Case # 3:12-bk-06572-JAF (M.D. FL).  [Dkt. 303-1].  In the

13   bankruptcy case, Plaintiffs David Grober and Voice International, Inc. filed claims

14   [Dkts. 303-2, 303-3] for infringement of the '662 patent.  The trustee objected to

15   each claim on May 1, 2013 [Dkt. 27, 28 of the Bankruptcy Case].  Plaintiffs had 30

16   days to respond to the objection.  Plaintiffs did not respond.  On June 4, 2013, the

17   Bankruptcy Court entered orders disallowing the claims in their entirety [Dkts.

18   303-4, 303-5].  Plaintiffs had 14 days to appeal the order, but did not appeal.  The

19   Bankruptcy Court approved the sale of all assets on May 15, 2013 [Dkt. 35 of

20   Bankruptcy Case-- Bankruptcy Case Docket Attached as Dkt. 303-1] over the

21   strenuous objection of Plaintiffs, after briefing and a hearing.  The appeal time for

22   that order was also 14 days.  Plaintiffs did not appeal.  The trustee filed a final

23   account on September 5, 2014 [Dkt. 59 of the Bankruptcy Case].  Plaintiffs had 30

24   days to object the final account.  Plaintiffs did not object. The Bankruptcy Court

25   issued a final order [Dkt. 60 of Bankruptcy Case] and closed the case on October 7,

26   2014.  Plaintiffs had 14 days to appeal the order, but did not appeal.  The

27   Bankruptcy Case is closed and well beyond any time for appeal.

28

**DEFENDANTS' CONTENTIONS OF LAW AND FACT**

1    As mentioned above, assets including equipment and accounts of Mako
2    Products were sold in the bankruptcy, over the strenuous objection of Plaintiffs,
3    after briefing and a hearing.  On March 25, 2013, the Trustee filed the Sale Notice
4    under which a sale of the Assets for $15,000 to Jordan Klein, Sr., Jordan Klein, Jr.,
5    John Dann, and their assigns (collectively, the "Purchaser) was noticed to parties in
6    interest in the Bankruptcy Case.  [Order Approving Sale – p. 2, para. 1]  The Sale
7    Notice outlined the procedure for submission of bids in excess of the $15, 000
8    offered by the Purchaser.  [Order Approving Sale, p. 2, para. 2].  On April 10,
9    2013, Grober submitted a $16,000 bid offer to the Trustee for the Assets under the
10   Sale Notice.  [Order Approving Sale, p. 2, para. 3].  On April 15, 2013, Grober
11   filed a Motion to Prevent the Sale.  [Order Approving Sale, p. 3, para. 4].  On April
12   19, 2013, the Trustee filed a Response to Motion to Prevent the Sale.  [Order
13   Approving Sale, p. 3, para. 5].  On April 19, 2013, the Trustee filed a Motion to
14   Set Auction.  [Order Approving Sale, p. 3, para. 6].  On April 30, 2013, Grober
15   filed a Motion to Continue.  [Order Approving Sale, p. 3, para. 7].  On May l,
16   2013, the Trustee filed a Response in Opposition to Grober's Motion to Continue.
17   [Order Approving Sale, p. 3, para. 8].  After hearing argument at a Hearing on May
18   8, 2013, the Court conducted an auction of the Assets in open Court, as specifically
19   contemplated in the Sale Notice. [Order Approving Sale, p. 3, para. 10]. Grober
20   and Voice International were given advanced notice by the Trustee that the Trustee
21   would seek to have the Court conduct an auction at the Hearing.  [Id.] The
22   Purchaser (OPEL), under the terms of the Sale Notice, increased its bid to $20,000
23   (the "Purchase Price") in open court for the purchase of the Assets.  [Order
24   Approving Sale, p. 3, para. 12].  Neither Grober nor Voice International submitted
25   bids in the Court-conducted auction during the Hearing. [Order Approving Sale, p.
26   4, para. 13].  The $20,000 Purchase Price to be paid by the Purchaser was the
27   highest and best offer for the purchase of the Assets.  [Order Approving Sale, p. 4,
28

**DEFENDANTS' CONTENTIONS OF LAW AND FACT**

1   para. 14].   A copy of The Trustee's Bill of Sale, dated June 3, 2013, identifies

2   Oceanic Production Equipment Ltd. (OPEL) as the Buyer.

3          **B.  Contentions of Law**

4                 **1.  Collateral Estoppel**

5          Collateral estoppel applies because (1) the issue necessarily decided at the

6   bankruptcy is identical to the one which is sought to be re-litigated; (2) the

7   bankruptcy ended with a final judgment on the merits; and (3) the Plaintiffs,

8   against whom collateral estoppel is asserted, were the creditors who asserted the

9   infringement claim in the bankruptcy.

10         Here, the third element warrants little discussion, as there is no dispute that

11  Plaintiffs David Grober and Voice International, Inc. are the parties against whom

12  collateral estoppel is asserted, and are also the parties who asserted the

13  infringement claim in the bankruptcy.

14         Additionally, the first element is satisfied because the issue necessarily

15  decided at the bankruptcy is identical to the one which is sought to be re-litigated.

16  That issue is whether use of a MakoHead infringes US Patent No. 6,611,662 (the

17  '662 patent).  As in the current action, Plaintiffs alleged in their bankruptcy claims

18  that use of the MakoHead infringes the '662 patent.   For obvious reasons,

19  Plaintiffs' motion [Dkt. 323] misrepresents Plaintiffs claims filed in the Mako

20  Products Bankruptcy as a claim for "owed money." [Dkt. 323, p. 4, para. 1]. The

21  claims were not for money owed.  Rather, Plaintiffs' Claims [Dkts. 303-2, 303-3]

22  filed in the Mako Products Bankruptcy expressly assert patent infringement as the

23  basis for Plaintiffs' claims.  Plaintiffs set forth patent infringement in Box 2 ("Basis

24  for Claim") of each Proof of Claim Form [Dkts. 303-2, 303-3].  Additionally, in

25  the first page of Plaintiffs' statement accompanying each Proof of Claim Form,

26  Plaintiffs assert patent infringement.

27

28

**DEFENDANTS' CONTENTIONS OF LAW AND FACT**

1      The Bankruptcy claims involve the same '662 patent. The statement filed on

2  behalf of Plaintiff Grober states "Mr. Grober has a claim for the infringement

3  and/or use of his patent; 6,611,662" [Dkt. 303-2, page 2, para. 2]. Plaintiff Voice

4  International made a similar assertion in its claim. [Dkt. 303-3, page 2, para. 2].

5      The Bankruptcy claims involve the same accused products. The first page of

6  Plaintiffs' statement accompanying each Proof of Claim Form specifically

7  mentions "MakoHeads" and the prior lawsuit, Case 2:04-cv-08604, in which

8  Plaintiffs alleged that the MakoHeads infringed the '662 patent. The MakoHeads

9  accused in this lawsuit are the same MakoHeads that existed during the prior

10  lawsuit, and the same MakoHeads that existed at the time of the Bankruptcy

11  claims.

12      The second element is satisfied because, the bankruptcy court's

13  disallowance of Plaintiffs' claims "in their entirety" is a final judgment on the

14  merits. Collateral estoppel applies when judgment has been procured by default as

15  long as (1) defendant had actual knowledge of the proceedings and a "full and fair

16  opportunity to litigate," *Cal-Micro, Inc. v. Cantrell (In re Cantrell)*, 329 F.3d 1119,

17  1124 (9th Cir. 2003), and (2) the prior proceeding's record either demonstrates an

18  express finding upon the allegation for which preclusion is sought or the court in

19  the prior proceeding necessarily decided the issue, in that the issue was actually

20  litigated. *Id.* A default judgment represents a judgment "on the merits" and

21  defendant may not relitigate liability on the same claims in later litigation. *Martin*

22  *v. General Finance Co.*, 239 Cal.App.2d 438, 443, 48 Cal. Rptr. 773 (1966).

23      The Bankruptcy Court's disallowances of Plaintiffs claims "in their

24  entirety," constitute express findings upon the allegation for which preclusion is

25  sought and necessarily decide the issue of patent infringement asserted in Plaintiffs

26  claims. As mentioned above, Plaintiffs' bankruptcy claims [Dkts. 303-2, 303-3]

27  asserted patent infringement as a basis. The claims identified the '662 patent and

28

**DEFENDANTS' CONTENTIONS OF LAW AND FACT**

1  the accused MakoHeads.   The Bankruptcy Court denied Plaintiffs' patent
2  infringement claims, expressly, "in their entirety." [Dkts. 303-4, 303-5].

3      The Bankruptcy Court's disallowances of Plaintiffs' claims of patent
4  infringement constitute decisions on the merits for purposes of res judicata and
5  collateral estoppel. As recounted above, Plaintiffs substantially participated in the
6  bankrupcty action, filed the claims for patent infringement in the bankruptcy
7  action, and had a full and fair opportunity to assert the claims on the merits.
8  However, after filing the claims, Plaintiffs failed to assert the claims.  Plaintiffs
9  failed to respond to objections, amend the claims or appeal.  Plaintiffs essentially
10 defaulted on claims that Plaintiffs filed.  In *Williams v. Williams (In re Williams'*
11 *Estate)*, 36 Cal. 2d 289, 223 P.2d 248 (Cal. 1950), the California Supreme Court
12 held that "the fact that [a] judgment was secured by default does not warrant the
13 application of a special rule. 'A default judgment is an estoppel as to all issues
14 necessarily litigated therein and determined thereby exactly like any other
15 judgment. '". 223 P.2d at 252 (quoting *Horton v. Horton*, 18 Cal. 2d 579, 116 P.2d
16 605, 608 (Cal. 1941)).  Issues determined by the Bankruptcy Court's denial of
17 Plaintiffs' patent infringement claims, expressly, "in their entirety." [Dkts. 303-4,
18 303-5], include the issue of infringement of the '662 patent by use of the
19 MakoHeads.  Thus, collateral estoppel bars this patent infringement action.

20          **2. Kessler Doctrine**

21      Plaintiffs's suit is also barred by the Kessler Doctrine, a specific application
22 of res judicata in patent infringement cases.  The Kessler Doctrine, first set out by
23 the Supreme Court in 1907 in *Kessler v. Eldred*, 206 U.S. 285, 285 (1907),
24 prohibits subsequent suits for patent infringement against a previous defendant or
25 that defendant's customers based upon principles of res judicata.  The Supreme
26 Court subsequently interpreted Kessler as granting a limited trade right, i.e. "the
27 right to have that which it lawfully produces freely bought and sold without
28

**DEFENDANTS' CONTENTIONS OF LAW AND FACT**

1   restraint or interference. It is a right which attaches to its product—to a particular

2   thing—as an article of lawful commerce..." *Rubber Tire Wheel Co. v. Goodyear*

3   *Tire and Rubber Co.*, 232 U.S. 413, 418-19 (1914).  *Kessler* applies to claims for

4   infringement of a patent found to be not infringed in a previous case, and it bars a

5   subsequent suit against a party when the devices are the same or "essentially the

6   same." *Brain Life, LLC v. Elekta Inc.*, 746 F.3d 1045 (Fed. Cir. 2014).  Here the

7   accused product, i.e., the MakoHead is exactly same, not merely similar, but it is

8   exactly the same product accused of infringement in the bankruptcy.

9        The Kessler doctrine is no old and antiquated rule. The Federal Circuit

10   follows it, noting that it "bars a patent infringement action against a customer of a

11   seller who has previously prevailed against the patentee because of …

12   noninfringement of the patent; otherwise, the effect of the prior judgment would be

13   virtually destroyed." *Id.* at 734. Indeed, the doctrine has been applied and followed

14   by the Ninth Circuit Court of Appeals prior to establishment of the Federal Circuit

15   and it predecessor, the Court of Customs and Patent Appeals, *Crowell v. Baker Oil*

16   *Tools, Inc.*, 165 F.2d 214 (9th Cir. 1948), and repeatedly by California district

17   courts.  *In re PersonalWeb Techs., LLC*, 2019 U.S. Dist. Lexis 56804 (ND Cal.

18   2019); *Adaptix, Inc. v. Amazon.com, Inc.*, 2016 U.S. Dist. Lexis 33521 (ND Cal.

19   2016); *Adaptix, Inc. v. Amazon.com, Inc.*, 2015 U.S. Dist. Lexis 111933 (ND Cal.

20   2015); *Tech. Props. Ltd. LLC v. Barnes & Noble, Inc.*, 2015 U.S. Dist. Lexis

21   192876 (ND Cal. 2015); *SpeedTrack, Inc. v. Office Depot, Inc.*, 2014 U.S. Dist.

22   Lexis 62674 (ND Cal. 2014); *Shoom, Inc. v. Elec. Imaging Sys. of Am.*, 2011 U.S.

23   Dist. Lexis 114354 (ND Cal. 2011).  Binding precedent of the Federal Circuit also

24   repeatedly follows *Kessler*.  *Speedtrack, Inc. v. Office Depot, Inc.*, 791 F.3d 1317,

25   1325 (Fed. Cir. 2015) ("We conclude that the rationale underlying the Kessler

26   doctrine supports permitting customers to assert it as a defense to infringement

27   claims. Although the Supreme Court in *Kessler* focused exclusively on the

28

**DEFENDANTS' CONTENTIONS OF LAW AND FACT**

1 manufacturer's rights, and expressed no opinion on whether a customer could

2 assert the defense, it recognized the fact that the manufacturer and customer's

3 interests are intertwined, remarking that "[n]o one wishes to buy anything if with it

4 he must buy a lawsuit." See *Id*. Allowing customers to assert a Kessler defense is

5 consistent with the Court's goal of protecting the manufacturer's right to sell an

6 exonerated product free from interference or restraint. A manufacturer cannot sell

7 freely if it has no customers who can buy freely."); *Brain Life, LLC v. Elekta Inc.*,

8 746 F.3d 1045, 1048 (Fed. Cir. 2014); *MGA, Inc. v. General Motors Corp.*, 827

9 F.2d 729, 731 (Fed. Cir. 1987).

10      Kessler applies to claims that were brought, as well as to claims that could

11 have been brought in the prior action.  In *Molinaro v. Am. Tel & Tel. Co.*, 460 F.

12 Supp. 673, 675 (E.D. Penn. 1978), the previous suit was dismissed with prejudice

13 as a sanction for failure to comply with discovery orders. The Molinaro court

14 explained that the "analysis of the applicability of the Kessler doctrine is not

15 altered by the fact that the infringement question in the instant case was not

16 actually litigated in the [prior] suit." *Id.* at 676. Molinaro is consistent with Federal

17 Circuit precedent, which explains that the Kessler doctrine applies to claims that

18 "could have been brought" in the prior action. See *Brain Life*, 746 F.3d at 1059

19 (method claims were not actually litigated in the prior action but were barred by

20 *Kessler*).

21      In brief, the '662 patent asserted in this action is the same '662 patent

22 asserted in the bankruptcy case.  The MakoHeads accused in this action are the

23 same as the MakoHeads accused in the bankruptcy case.  Defendant Oceanic

24 Production Equipment, Ltd., purchased the MakoHeads from Mako Products, Inc.

25 in the bankruptcy, and therefore is a customer.  The Oppenheimer Defendants are

26 accused of renting one or more of the MakoHeads, making the Oppenheimer

27 Defendants a customer.  As a consequence of Plaintiffs' failed patent infringement

28

**DEFENDANTS' CONTENTIONS OF LAW AND FACT**

1  claim alleging infringement by Mako Products, Inc., by use of the MakoHead, the

2  MakoHead is an "exonerated product" under the Kessler doctrine.   The Kessler

3  doctrine bars this patent infringement action.   Otherwise, the effect of the prior

4  ruling by the Federal District Court in the Bankruptcy would be virtually

5  destroyed.  *MGA, Inc.*, 827 F.2d at 734.

6  **III.  INVALIDITY FOR LACK OF WRITTEN DESCRIPTION AND LACK**

7  **OF ENABLEMENT OF THE CONTROL SYSTEM**

8       **A.  Contentions of Fact**

9       Every product claim of the '662 Patent recites a "control system for..."

10  Independent product Claims 1, 29, 32-35, and 38 recite "a control system ... for

11  stabilizing the platform in response to information provided by the first sensor

12  package and the second sensor package."  Independent Claim 30 recites "a control

13  system for continuously stabilizing the platform based on information provided by

14  the first sensor package and correcting for first sensor package anomalies based on

15  information provided periodically by the second sensor package."  Several of the

16  independent product claims recite additional limitations to the control system.

17  Claim 29 recites "wherein the control system responds to information provided by

18  the second sensor package to correct for the drift from the predetermined position."

19  Claim 32 recites "wherein the control system allows a user to set an initial payload

20  platform position and provides self correction of the platform to the initial

21  position." Claim 33 recites "wherein the control system responds to information

22  from the first sensor package at a rate of at least as fast as about one hundred times

23  per second and the control system responds to information from the second sensor

24  package at a rate of about once per second to about once per minute." Claim 38

25  recites "wherein the control system responds to information from the first sensor

26  package more often than the control system responds to information from the

27  second sensor package."

28

**DEFENDANTS' CONTENTIONS OF LAW AND FACT**

1    The '662 Patent treats the control system as a proverbial "black box."  An

2    example of a suitable control system is not provided.  Conspicuously absent from

3    the '662 Patent is any description of any component or combination of components

4    that make up the control system.  Also absent from the '662 Patent is any

5    description of how the control system performs its functions.  Digital processing

6    components and steps are not described.  An algorithm, pseudocode or flow chart

7    showing processing steps are not provided for a digital implementation.  The

8    discrete elements of an analog implementation, a schematic or a high level block

9    diagram of such an implementation, are all missing from the '662 Patent.  The

10   steps of methods by which the control system performs the various recited

11   functions are not described.  In sum, the '662 does not provide any meaningful

12   description of the control system.

13   **B.  Contentions of Law**

14       To satisfy the written description requirement, "the patent specification must

15   clearly allow persons of ordinary skill in the art to recognize that [the inventor]

16   invented what is claimed." *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473,

17   1479 (Fed. Cir. 1998) (internal quotations and citation omitted); accord *Regents of*

18   *the Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1566 (Fed. Cir. 1997).  This

19   means that a patent applicant must convey with reasonable clarity to those of skill

20   in the art that, as of the patent application filing date, the applicant was "in

21   possession" of the invention. *Purdue Pharma L.P. v. Faulding Inc.*, 230 F.3d 1320,

22   1323 (Fed. Cir. 2000).

23       The text and drawings of the '662 specification do not describe components

24   or a method of operation of the control system.  Under these circumstances, the

25   '662 Patent cannot possibly be deemed to provide an adequate written description

26   for any of the product claims, each of which recites a control system.  From the

27

28

**DEFENDANTS' CONTENTIONS OF LAW AND FACT**

1  specification, no one can discern if Grober possessed the invention, which includes

2  the recited control system, at the time of the application.

3  **IV.  INVALIDITY OF EVERY PRODUCT CLAIM FOR INDEFINITENESS**

4      **A.  Contentions of Fact**

5      Every product claim of the '662 Patent recites a "control system" for

6  performing a function.  Independent product Claims 1, 29, 32-35, and 38 recite "a

7  control system ... for stabilizing the platform in response to information provided

8  by the first sensor package and the second sensor package."  Independent Claim 30

9  recites "a control system for continuously stabilizing the platform based on

10  information provided by the first sensor package and correcting for first sensor

11  package anomalies based on information provided periodically by the second

12  sensor package."

13      **B.  Contentions of Law**

14      Paragraph 6 of pre-AIA 35 USC §112 (¶ (f) of AIA 35 USC §112) allows

15  functional claiming, but only if the specification describes corresponding structure.

16      Where, as here, a claim limitation that does not use the term "means" fails to

17  "'recite sufficiently definite structure' or else recites 'function without reciting

18  sufficient structure for performing that function,'" 35 U.S.C. 112(f) or pre-AIA 35

19  U.S.C. 112, sixth paragraph, <u>applies</u>.  *Williamson v. Citrix Online, LLC*, 792 F.3d

20  1339, 1348 (Fed. Cir. 2015) (*en banc*) (quoting *Watts v. XL Systems, Inc.*, 232 F.3d

21  877, 880 (Fed. Cir. 2000)); see also *Personalized Media Communications, LLC v.*

22  *International Trade Commission*, 161 F. 3d 696, 704 (Fed. Cir. 1998).  Instead of

23  using "means", the term control system acts as a generic placeholder for the term

24  "means" and would not be recognized by one of ordinary skill in the art as being

25  sufficiently definite structure for performing the claimed function.

26

27

28

**DEFENDANTS' CONTENTIONS OF LAW AND FACT**

1    As every product claim recites means-plus-function elements without

2    disclosing corresponding structure in the specification, the claims are invalid.

3    *Biomedino, LLC v. Waters Techs. Corp.*, 490 F.3d 946, 950 (Fed. Cir. 2007).

4    **V.  INVALIDITY OF EVERY METHOD CLAIM FOR LACK OF**

5    **WRITTEN DESCRIPTION OF INFORMATION COLLECTION**

6    **A.  Contentions of Fact**

7    Each method claim expressly requires, *inter alia*, first and second sensor

8    packages that collect information by reciting, "information collected by a first [or

9    the second] sensor package."  Thus, both recited sensor packages must be capable

10   of collecting information.  However, the specification of the '662 Patent does not

11   describe any sensor, much less a first sensor package and a second sensor package,

12   that is capable of collecting information.

13   **B.  Contentions of Law**

14   The law applicable to the written description requirement is the same as set

15   forth above. As the '662 Patent specification is devoid of any description of

16   information collection components and methodologies for each sensor package, the

17   written description requirement is not satisfied and all method claims are invalid.

18   **VI.  INVALIDITY OF EVERY METHOD CLAIM FOR LACK OF**

19   **WRITTEN DESCRIPTION OF SELF CORRECTING**

20   **A.  Contentions of Fact**

21   The method claims recite "A method of ... self correcting ...  comprising self

22   correcting ..."  Yet, the specification is wholly devoid of any description of how

23   the self correcting is accomplished and what components are used to perform the

24   self correcting.

25   **B.  Contentions of Law**

26   The law applicable to the written description requirement is the same

27   as set forth above.  As the '662 Patent specification is devoid of any

28

**DEFENDANTS' CONTENTIONS OF LAW AND FACT**
Active\102089338.v1-9/9/19

1  description of self correcting, all method claims, i.e., Claims 14-28, 31, and

2  46-60, of the '662 Patent are invalid.

3  **VII.  INVALIDITY OF EVERY ASSERTED CLAIM UNDER 35 USC**

4  **102, 103**

5  　　**A.  The '662 Patent is Not Entitled to Priority of the Provisional**

6  **Application**

7  　　　　**1.  Contentions of Fact**

8  　　　　　　**a.  Control System**

9  　　Every product claim of the '662 Patent recites a control system for

10  performing particular functions and having particular connections with other

11  components.  However, the provisional application does not describe the recited

12  control system, functions or connections. Instead, in the first full paragraph of page

13  8 of the provisional application, Plaintiffs admit that the structure and methodology

14  that enable the "servo control system" to function are beyond the scope of the

15  provisional application.  The provisional application does not describe the types or

16  number of specific components of a control system, or how they are connected and

17  configured, or their functions or their methods of operation.  The provisional

18  application does not illustrate any such components or connections.  The servo

19  control system and electronic control box 20 briefly mentioned in the provisional

20  application is a proverbial "black box," the structure, connections and method of

21  operation of which are not described anywhere in the provisional application.

22  　　　　　　**b.  <u>Methods</u>**

23  　　The provisional application does not describe or illustrate any steps of the

24  method claims of the '662 patent, or how self correcting is accomplished, or how a

25  sensor collects information.

26  　　　　**2.  Contentions of Law**

27

28

**DEFENDANTS' CONTENTIONS OF LAW AND FACT**

1    App. No. 09/579,723, from which the '662 Patent issued, is not entitled to

2    the benefit of priority of Provisional Application Serial No. 60/136,756 filed May

3    28, 1999, because the Provisional Application does not comply with the written

4    description and enablement requirements of 35 U.S.C. 112(a).  Under 35 U.S.C.

5    119(e) and MPEP 211.05, to be entitled to the benefit of the filing date of the

6    earlier-filed provisional application, the disclosure of the invention in the

7    provisional application must be sufficient to comply with the requirements of 35

8    U.S.C. 112(a), except for the best mode requirement.  See *Transco Prods., Inc. v.*

9    *Performance Contracting, Inc.*, 38 F.3d 551, 32 USPQ2d 1077 (Fed. Cir. 1994).

10   To comply with the written description requirement, the provisional application

11   must convey with reasonable clarity to those skilled in the art that, as of the filing

12   date sought, applicant was in possession of the invention as now claimed.  See,

13   e.g., MPEP 1263.02, *Vas-Cath, Inc. v. Mahurkar*, 935 F.2d 1555, 1563-64, 19

14   USPQ2d 1111, 1117 (Fed. Cir. 1991).  An applicant shows possession of the

15   claimed invention by describing the claimed invention with all of its limitations

16   using such descriptive means as words, structures, figures, diagrams, and formulas

17   that fully set forth the claimed invention.  *Lockwood v. Am. Airll , Inc.*, 107 F.3d

18   1565, 1572, 41 USPQ2d 1961, 1966 (Fed. Cir. 1997).  Concomitantly, to comply

19   with the enablement requirement of 35 U.S.C. 112(a), "the specification of the

20   provisional must contain a written description of the invention and the manner and

21   process of making and using it, in such full, clear, concise, and exact terms, 35

22   U.S.C. 112¶1, to enable an ordinarily skilled artisan to practice the invention

23   claimed in the nonprovisional application."  *New Railhead Mfg., L.L.C. v. Vermeer*

24   *Mfg. Co.*, 298 F.3d 1290, 1294, 63 USPQ2d 1843, 1846 (Fed. Cir. 2002).  The

25   provisional application does not even come close to satisfying these requirements.

26   **B.  Invalidity for Anticipation and/or Obviousness**

27       **1.  Contentions of Fact and Law**

28

**DEFENDANTS' CONTENTIONS OF LAW AND FACT**

1    Claims 1, 3, 4, 14, 31, 32, 35 and 38 are anticipated by and obvious in view
2    of NASA publication N9219920, entitled "Real-Time Recursive Filter for the
3    Attitude Determination of the Spacelab Instrument Pointing Subsystem" by West,
4    M.E., published 1992, NTIS issue number 199213 ("West"); and by West in view
5    of NASA publication N9618524, entitled "ASTRO-2 Spacelab Instrument Pointing
6    System Mission Performance" by Wessling, F. C.; Singh, S. P., published 1995,
7    NTIS issue number 199612, and presented at the AIAA 1995 Space Programs and
8    Technologies Conference, Huntsville, AL, United States, 26-28 Sep. 1995
9    ("Wessling"); and by West in view of Wessling and "The Instrument Pointing
10   System: Precision Attitude Control in Space" by Ralf Hartmann, et al., presented at
11   the North Atlantic Trealy Organization, Advisory Group for Aerospace Research
12   and Development (AGARD), Flight Mechanics Panel Symposium held in
13   Luxembourg, November 13-16, 1989, and published June 1990 in AGARD
14   Conference Proceedings No.489, Space Vehicle Flight Mechanics, ISBN 92-835-
15   0567-0, at pages 17-1 to 17-11 (hereinafter "Hartmann").  West, Wessling and
16   Hartmann were not cited during the original examination or previous
17   reexamination, and are prior art under 35 U.S.C. 102(a), (b), (g) (Pre-AIA) and
18   103(a) (Pre-AIA).  West, Wessling and Hartmann describe NASA's instrument
19   pointing system used on shuttle missions.  West discloses all elements of the
20   identified claims.  Wessling and Hartmann elaborate on descriptions of the
21   elements.
22       West and Wessling are publications available from the National Technical
23   Information Service (NTIS) of the US Department of Commerce, and from the
24   National Aeronautics and Space Administration (NASA), and from NASA
25   depository libraries throughout the US, which include the University of Florida.
26   Wessling is also available from the American Institute of Aeronautics and
27
28

**DEFENDANTS' CONTENTIONS OF LAW AND FACT**

1  Astronautics (AIAA) [www.aiaa.org], which hosted the 1995 Space Programs and

2  Technologies Conference, Huntsville, AL at which Wessling was presented.

3  Hartmann is available from NTIS, the Defense Technical Information Center

4  (DTIC) and libraries throughout the United States, including the Hunt Library at

5  Embry-Riddle Aeronautical University.  DTIC, a Department of Defense (DoD)

6  Field Activity established in 1945, operates under the leadership of the Secretary of

7  Defense and reports to the Under Secretary of Defense for Research and

8  Engineering USD(R&E).

9  Claims 1, 3, 4, 14, 31, 32, 35 and 38 are anticipated by US Patent 3,986,092

10  to Tijsma et al. ("Tijsma"), entitled *Stabilization System for a Platform Suspended*

11  *in a Gimbal Frame,* which was filed on March 9, 1973 and issued on October 12,

12  1976.  Tijsma was not cited during the original examination or previous

13  reexamination, and is prior art under 35 U.S.C. 102(a), (b) (Pre-AIA) and 103(a)

14  (Pre-AIA).  Tijsma discloses all elements of the identified claims.

15  Claims 1, 3, 4, 14, 31, 32, 35 and 38 are anticipated by US Patent 3,936,716

16  to Bos ("Bos"), entitled *Stabilisation System,* which was filed on November 28,

17  1973 and issued on February 3, 1976.  Bos was not cited during the original

18  examination or previous reexamination, and is prior art under 35 U.S.C. 102(a), (b)

19  (Pre-AIA) and 103(a) (Pre-AIA).  Bos discloses all elements of the identified

20  claims.

21  Claims 1, 3, 4, 14, 31, 32, 35 and 38 are anticipated by PCT Application

22  Publication No. WO99/04224A1 by Applicant Hollandse Signaalapparaten B.V.

23  ("Hollandse"), entitled *System for the Stabilization of an Object Mounted on a*

24  *Moving Platform ,* which was filed on 07/08/1998, with a priority date of

25  07/16/1997 and a publication date of 01/28/1999.  As shown by the PCT

26  Bibliographic Data provided on the first page, Hollandse designated the US and

27  was published in English.  Hollandse was not cited during the original examination

28

**DEFENDANTS' CONTENTIONS OF LAW AND FACT**

1  or previous reexamination, and is prior art under 35 U.S.C. 102(a), (b), (e) (Pre-

2  AIA) and 103(a) (Pre-AIA).  Hollandse discloses all elements of the identified

3  claims.

4      A detailed analysis, including claim charts, is attached as Exhibit B.  A copy

5  of each prior art reference is provided in Exhibits C-H.  Bibliographic data is

6  included for each non-patent reference.

7  **VIII.  ALTER EGO LIABILITY DOES NOT APPLY**

8      **A.  Contentions of Fact**

9      Alter ego liability does not apply because Klein Sr. has no ownership

10  interest in OPEL and lacks a unity of interest with OPEL.  Klein Sr. and OPEL are

11  separate and independent.  Additionally, there would be no inequitable result if the

12  accused acts of OPEL are treated as those of OPEL alone.

13      Klein Sr. has no control over the assets of OPEL and does not treat OPEL's

14  assets as his own.  Klein Sr. does not commingle funds with OPEL.  Klein Sr. does

15  not control finances of OPEL.   Klein Sr. has not drained assets of OPEL.  Any

16  amounts paid to Klein Sr. by OPEL are amounts that Klein Sr. advanced on behalf

17  of OPEL.

18      Klein Sr. has not engaged in any bad faith conduct in the formation and/or

19  management of OPEL.  Klein Sr. has never engaged in the management of OPEL.

20  While some years ago Klein Sr. was named as an officer and director of OPEL, he

21  never acted as an officer or director, and never requested or accepted appointment

22  as an officer or director.

23      Klein Sr. is not and has never been an owner of OPEL.  Klein Sr. owns no

24  shares of OPEL.  Klein Sr. does not own any warrants or options to purchase

25  shares of OPEL.  Klein Sr. has no ownership interest in OPEL.

26      This lawsuit has essentially put OPEL out of business.  John Dann the sole

27  owner, officer and director of OPEL decided to cease all rentals pending

28

**DEFENDANTS' CONTENTIONS OF LAW AND FACT**

Active\102089338.v1-9/9/19

1   disposition of this lawsuit, to spare customers the horrors of being dragged into a

2   patent infringement lawsuit.  But for this lawsuit, John Dann would not have

3   ceased rentals and OPEL would be profitable.

4        Plaintiffs have also failed to meet their burden of proof to establish alter ego

5   liability as to Defendant Marty Oppenheimer.  Plaintiffs cannot establish (and has

6   not established) that any of the factors for proving alter ego liability has been met.

7   Among other things, Plaintiffs have failed to show that Mr. Oppenheimer has a

8   unity of interest with Defendants Oppenheimer Cine Rental, LLC and

9   Oppenheimer Camera Products, Inc, or that it would be equitable to hold Mr.

10  Oppenheimer individually liable. Mr. Oppenheimer also has no individual liability

11  based on the corporate shield.  In addition, neither Mr. Oppenheimer nor

12  Oppenheimer Camera Products, Inc. is personally liable for any claims in this

13  action since neither of them individually engaged in any alleged infringing acts.

14  **B.  Contentions of Law**

15       California courts have rejected the view that the potential difficulty a

16  plaintiff faces collecting a judgment is an inequitable result that warrants

17  application of the alter ego doctrine. *Virtualmagic Asia, Inc. v. Fil-Cartoons, Inc.*,

18  99 Cal. App. 4th 228, 245, 121 Cal. Rptr. 2d 1 (2002) ("Alter ego will not be

19  applied absent evidence that an injustice would result from the recognition of

20  separate corporate identities, and 'difficulty in enforcing a judgment or collecting a

21  debt does not satisfy this standard," quoting *Sonora Diamond Corp. v. Superior*

22  *Court*, 83 Cal. App. 4th 523, 539, 99 Cal. Rptr. 2d 824 (2000)); *Mid-Century Ins.*

23  *Co. v. Gardner*, 9 Cal. App. 4th 1205, 1213, 11 Cal. Rptr. 2d 918 (1992)

24  ("'Certainly, it is not sufficient to merely show that a creditor will remain

25  unsatisfied if the corporate veil is not pierced, and thus set up such an unhappy

26  circumstance as proof of an 'inequitable result. In almost every instance where a

27  plaintiff has attempted to invoke the doctrine he is an unsatisfied creditor,'" quoting

28

**DEFENDANTS' CONTENTIONS OF LAW AND FACT**

1   *Associated Vendors, Inc. v. Oakland Meat Co.*, 210 Cal. App. 2d 825, 842, 26 Cal.

2   Rptr. 806 (1962)); *Mid-Century Ins. Co.*, supra, 9 Cal. App. 4th at 1213 ("'The

3   purpose of the doctrine is not to protect every unsatisfied creditor, but rather to

4   afford him protection, where some conduct amounting to bad faith makes it

5   inequitable, under the applicable rule above cited, for the equitable owner of a

6   corporation to hide behind its corporate veil,'" quoting *Associated Vendors*, supra,

7   210 Cal. App. 2d at 842).  Such bad faith conduct is lacking here.

8   **IX.  DAMAGES**

9        **A.  Contentions of Fact**

10       Plaintiffs would not have sold or rented a stabilizer system to any person

11  that rented a MakoHead from Defendants.  Plaintiffs have not lost any profits as a

12  result of any rentals by Defendants, and have not satisfied their burden of proof in

13  proving *any* damages (lost profits or otherwise).

14       Plaintiffs did not obtain a preliminary injunction in any infringement action

15  involving a MakoHead.  Every summary judgment motion by Plaintiffs relating to

16  infringement by a MakoHead has been denied.  In contrast, in the prior lawsuit,

17  this court granted a summary judgment of noninfringement, which was eventually

18  reversed on appeal.  Additionally, Tom Smith, an accomplished engineer and

19  architect of the MakoHead, confirmed that the MakoHead omits elements recited

20  in the claims of '662 patent.  Furthermore, Plaintiffs claims for infringement of the

21  MakoHead were rejected by the court in the Mako Products bankruptcy.

22       **B.  Contentions of Law**

23       As Plaintiffs would not have made any of Defendants' rentals, Plaintiffs are

24  not entitled to (and have not satisfied their burden to prove) lost profits (or any

25  other form of damages), even if infringement is found.  Additionally, as

26  Defendants' defenses are objectively reasonable and susceptible to a reasonable

27  conclusion in favor of Defendants, any infringement is not willful.

28

**DEFENDANTS' CONTENTIONS OF LAW AND FACT**

1    Respectfully submitted,

2    _/s/_ Mark J. Young                09-September-2019

3    Mark J. Young

     (Fla Bar No. 0078158)
4
     _Pro Hac Vice_
5    Mark Young, P.A.

     1638 Camden Avenue
6
     Jacksonville, FL 32207
7    Tel.: 904-996-8099

     Fax: 904-980-9234
8
     Email: myoungpa@gmail.com
9    Attorney for Defendants,

     Oceanic Production Equipment Ltd. and
10
     Jordan Klein Sr.
11

12
     _/s/_ Ashe Puri                    09-September 2019
13   James E. Doroshow (SBN 112,920)

14   Ashe Puri (SBN 297,814)

     FOX ROTHSCHILD LLP
15   10250 Constellation Blvd., Suite 900

     Los Angeles, CA 90067
16
     Tel. (310) 598-4150
17

18   Attorneys for Defendants Oppenheimer Cine Rental, LLC,
     Oppenheimer Camera Products, Inc., and Marty Oppenheimer
19

20

21

22

23

24

25

26

27

28

**DEFENDANTS' CONTENTIONS OF LAW AND FACT**