JAMES E. DOROSHOW (SBN 112920)
JDoroshow@FoxRothschild.com
ASHE P. PURI (SBN 297814)
APuri@FoxRothschild.com
**FOX ROTHSCHILD LLP**
Constellation Place
10250 Constellation Blvd, Suite 900
Los Angeles, CA 90067
Telephone: (310) 598-4150
Facsimile: (310) 556-9828

Attorneys for Defendants OPPENHEIMER CINE RENTAL, LLC; OPPENHEIMER CAMERA PRODUCTS, INC.; MARTY OPPENHEIMER

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

VOICE INTERNATIONAL, INC., a California corporation; DAVID GROBER, an individual,

Plaintiff,

v.

OPPENHEIMER CINE RENTAL, LLC, a Washington corporation; OPPENHEIMER CAMERA PRODUCTS, INC., a Washington corporation; MARTY OPPENHEIMER, an individual; JORDAN KLEIN, SR., an individual; JORDAN KLEIN, JR., an individual; JOHN DANN, an individual; MAKO PRODUCTS, an unknown entity; OCEANIC PRODUCTION EQUIPMENT, LTD., a Bahamian company; and DOES 1-10, inclusive,

Defendants.

Case No. 2:15-cv-08830-JAK-KS

Hon. John A. Kronstadt

**THE OPPENHEIMER DEFENDANTS' MOTION IN LIMINE TO EXCLUDE EVIDENCE AT TRIAL REGARDING PLAINTIFFS' ALLEGED DAMAGES AND FOR MONETARY SANCTIONS**

**DECLARATION OF ASHE P. PURI AND [PROPOSED] ORDER SUBMITTED UNDER SEPARATE COVER**

Hearing Date: September 30, 2019
Time: 1:30 p.m.
Courtroom: 10B

Final Pretrial Conf.: September 30, 2019
Trial Date: October 15, 2019

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on September 30, 2019, at 1:30 p.m., or as soon thereafter as counsel may be heard in Courtroom 10B of the United States Courthouse located at 350 W. First Street, Los Angeles, California 90012, Defendants Oppenheimer Cine Rental, LLC, Oppenheimer Camera Products, Inc. and Marty Oppenheimer (collectively, the "Oppenheimer Defendants") will and hereby do move for an order to preclude Plaintiffs Voice International, Inc. and David Grober (collectively, "Plaintiffs") from presenting any argument, evidence or witness at trial on the issue of alleged damages against the Oppenheimer Defendants and for monetary sanctions.

This motion is made following a conference of counsel pursuant to this Court's Standing Order (Dkt. Nos. 13, 295), which took place on September 9, 2019. *See* supporting Declaration of Ashe P. Puri at ¶ 2. This motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the supporting Declaration of Ashe Puri, the [Proposed] Order and such further evidence and arguments that the Court may consider.

Dated: September 16, 2019

FOX ROTHSCHILD LLP

By: /s/ Ashe P. Puri
James E. Doroshow
Ashe P. Puri
Attorneys for Defendants OPPENHEIMER CINE RENTAL, LLC; OPPENHEIMER CAMERA PRODUCTS, INC.; MARTY OPPENHEIMER

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Defendants Oppenheimer Cine Rental, LLC, Oppenheimer Camera Products, Inc. and Marty Oppenheimer (collectively, the "Oppenheimer Defendants") hereby move *in limine* for an order precluding Plaintiffs Voice International, Inc. and David Grober (collectively, "Plaintiffs") from presenting any argument, evidence or witness at trial on the issue of alleged damages arising from their claim of patent infringement against the Oppenheimer Defendants, and for monetary sanctions.

This relief is clearly warranted. Federal Rule 37 states that "[i]f a party fails to provide information as required by Rule 26(a) or 26(e), the party is not allowed to use that information … to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). In this case, Plaintiffs never served any Rule 26(a)(1) Initial Disclosures setting forth a computation of their damages; they never provided any damage expert disclosure under Federal Rule 26(a); and they never answered Defendants' interrogatory asking Plaintiffs to identify the basis of their damage claims and all theories, calculations and evidence supporting their alleged damage claim against any Defendant (as well as never supplementing their "response" to what damage they were claiming as required under Rule 26(e)). As such, Plaintiffs have provided absolutely no evidence or information whatsoever during discovery or otherwise to support any damage claim against the Oppenheimer Defendants.

Fact and expert discovery has now long been closed. With less than a month until trial, the Oppenheimer Defendants still have no information about which theory (or theories) of any alleged damages, calculations, or evidence that Plaintiffs intend to rely upon to prove damages.[1] At the same time, Plaintiffs cannot show that they were

[1] Even as of this late date, Plaintiffs still cannot decide which theory (or theories) of damages they now intend to pursue against the Oppenheimer Defendants. Most recently (after the close of discovery), Plaintiffs sent multiple different versions of their jury instructions to the Oppenheimer Defendants with completely different damage instructions and theories. One version sent by Plaintiffs included jury instructions limited

"substantially justified" in withholding any evidence or arguments supporting any specific damage claim during discovery (especially when the Oppenheimer Defendants were requested to and had produced all of the sales records for the Accused Product more than three and one half years ago to Plaintiffs. Plaintiffs had every opportunity to disclose their damage contentions since they filed this case nearly four-years ago, and they failed to do so. As such, with less than a month before trial, it would be improper and highly prejudicial to allow Plaintiffs to present any damage theories, calculations or evidence for the first time at trial.

## II. BACKGROUND

On November 12, 2015, Plaintiffs filed their Complaint against the Oppenheimer Defendants alleging infringement of U.S. Patent No. 6,611,662 (the "'662 Patent"). Plaintiff David Grober ("Grober") has alleged that he is the inventor and owner of the '662 patent and holds all rights and interest thereto. *See* Dkt. No. 313, at ¶ 13. Plaintiff Voice International ("Voice Int'l.") has alleged that it has an exclusive license from Grober to commercialize the '662 Patent. *See id.*

Plaintiffs have accused Defendant Oppenheimer Cine Rental of willful patent infringement (Claim 1) and induced patent infringement (Claim 2) arising from its rentals of the accused MakoHead product ("Accused Product"). Along with Defendant Oppenheimer Cine Rental, Plaintiffs have asserted claims of willful and induced infringement against Defendant Oppenheimer Camera Products alleging that Defendant Oppenheimer Camera Products was "involved" in renting and distributing the Accused Product. *See id.* at ¶ 7. For their part, Defendant Oppenheimer Camera Products has repeatedly denied renting or distributing the Accused Product, as well as any other use of the Accused Product. *See* Declaration of Ashe Puri in Support of Defendants' Motion in Limine ("Puri Decl."), Ex. A.

---

to a lost profits damage award. The second version sent by Plaintiffs included instructions seeking both a lost profits and a reasonable royalty award. *See* accompanying Declaration of Ashe P. Puri ("Puri Decl."), at **Exhibits I and J.**

In addition, Plaintiffs have asserted claims for willful and induced infringement against Defendant Marty Oppenheimer, the owner of Oppenheimer Cine Rental and Oppenheimer Camera Products. In doing so, Plaintiffs allege that Mr. Oppenheimer was "personally involved in, coordinating, supporting and/or directing the alleged infringing activities individually and through Oppenheimer Cine and Oppenheimer Camera." *See id.* at ¶ 8. On his part, Mr. Oppenheimer has repeatedly denied any personal involvement relating to any rental, distribution or other use of the Accused Product, and that any involvement any corporate entity may have had in any alleged rental or other use of the Accused Product involved Mr. Oppenheimer solely in his capacity as an officer of Oppenheimer Cine Rental. Thus, under the corporate shield doctrine, Mr. Oppenheimer will show that he cannot possibly be personally liable for any corporate activities by Oppenheimer Cine Rental where, as here, his involvement in any rental of the Accused Product was limited solely to his involvement as a corporate officer for Oppenheimer Cine Rental.

On May 23, 2016, Defendant Oppenheimer Cine Rental produced to Plaintiffs a complete set of its sales records involving the Accused Product. *See* Puri Decl. at ¶ 6, **Exhibit A**. As shown in its sales records (*id.*), Defendant Oppenheimer Cine Rental merely earned a gross profit of $69,062.00 from renting the Accused Product between the period of July 2, 2009 to February 5, 2016. In doing so, Oppenheimer Cine Rental received total revenues of $183,013.00 from renting the Accused Product (and other unrelated equipment) out of which $103,608.00 was paid by Oppenheimer Cine Rental to rent the Accused Product from its suppliers, Mako Products (now defunct) and Defendant Oceanic Production Equipment, Ltd.[2] ("OPEL"). *See id*.

Although Defendants Marty Oppenheimer and Oppenheimer Camera Products have repeatedly denied any personal involvement in the sale, distribution or any other alleged use of the Accused Product, and given the small amount of rentals and revenue

[2] In addition, out of the $183,013.00 in revenues, Oppenheimer Cine Rental's customers paid $10,343.00 for equipment unrelated to the Accused Product (e.g., other accessories and components).

Oppenheimer Cine Rental made and received from any use of the Accused Product, Plaintiffs nevertheless have steadfastly refused to dismiss the Oppenheimer Defendants from this lawsuit. Instead, Plaintiffs have made this case onerous and highly expensive by forcing those Defendants to incur significant, time and expense responding to a large volume of discovery requests[3] served by each Plaintiff, including being forced to defend multiple discovery motions preceded by several meet and confer letters. *See* Puri Decl. at ¶ 7. Moreover, to date, the Oppenheimer Defendants have already incurred fees far exceeding Oppenheimer Cine Rental's profits on the Accused Product, and thus surpassing any damage that Plaintiffs could ever possibly be able to recover in this lawsuit. *See id*.

In contrast, Plaintiffs have repeatedly refused to divulge any information regarding the basis of their alleged damage claims and theories against any of the Oppenheimer Defendants, even after receiving all of the requested financial data from Oppenheimer Cine Rental more than three-and-one-half-years ago.[4] At the same time, at the outset of this litigation, Plaintiffs never served any Rule 26(a) Initial Disclosures which specifically required them to disclose their "computation of each category of damages."[5] *See* Puri Decl. at ¶ 8. Plaintiffs as noted have refused to answer an interrogatory disclosing the basis for damage, including specifically asking them to set forth their alleged theories, calculations and evidence they intend to rely upon for any alleged

[3] In total, Plaintiffs served the Oppenheimer Defendant with more than 10 separate sets of discovery requests between the period of February 1, 2016 to January 3, 2017. *See* Puri Decl. at ¶ 7.

[4] In the parties' Rule 26(f) Report, Plaintiffs stated merely that they were seeking "lost profits and actual damages" (Dkt. No. 21 at p. 6) without divulging any further information about the nature and scope of any alleged damages Plaintiffs might be seeking. More recently (as explained further below), Plaintiffs have now belatedly included a jury instruction claiming that they are entitled to a reasonable royalty award. Thus, to this day, it still remains entirely unclear what theory (or theories) of damages that Plaintiffs are seeking to advance in this action, especially given their failure to produce any Rule 26(a)(1) Initial Disclosures or Rule 26(a)(2) expert disclosures, and their refusal to respond to Defendants' damage requests in discovery.

[5] By email on September 11, 2019, Oppenheimer Defendants confirmed with Plaintiffs that they never received Plaintiffs' Rule 26(a) Initial Disclosures. *See* Puri Decl. at ¶ 8. In response, Plaintiffs had no explanation as to why they never served their Initial Disclosures. *See id.*

damages against any of the Oppenheimer Defendants. More specifically, on February 16, 2018, Plaintiffs David Grober and Voice International, Inc. were served with a set of interrogatories by Defendant OPEL. Among other interrogatories served on Plaintiffs, Plaintiffs were each asked to describe the basis of all of their damage claims against each Defendant. The full text of Defendants' Interrogatory is shown below (*see* Puri Decl. at ¶ 9, **Exhibits C and D**):

> **INTERROGATORY NO. 13:** Describe all bases for Plaintiffs' damages claims against each Defendant, including, but not limited to, each legal theory under which damages are sought and evidence in support of each such legal theory, and calculations supporting all damages that Plaintiff's claim.

On March 22, 2018, Plaintiffs served their objections and responses to OPEL's interrogatories. In response to the above-quoted Interrogatory No. 13, Plaintiffs insisted that this interrogatory was somehow "premature" and that Plaintiffs did not have "all [of] the facts to complete its damages analysis," as reflected in their response below:[6]

> **RESPONSE TO INTERROGATORY NO. 13:** Plaintiff objects to this interrogatory as ***premature***, in that fact discovery is ongoing and ***Plaintiff does not yet have all the facts to complete its damages analysis***. Plaintiff expects to fully supplement this response.

*See* Puri Decl. at ¶ 10, **Exhibits E and F.**

Plaintiffs of course had no excuse for refusing to answer Interrogatory No. 13 since the Oppenheimer Defendants had completed their document production well before Defendants' interrogatories were served. *See id.* at ¶ 6. In fact, as discussed above, Oppenheimer Cine Rental had already produced all of its requested sales record to Plaintiffs almost two years prior to Plaintiffs' quoted response to Defendants' Interrogatory No. 13. *See id.* at ¶ 6.

---

[6] Plaintiff Grober and Voice International, Inc. served identical responses to Interrogatory No. 13. *See* Puri Decl. at ¶ 10.

On April 11, 2018, Defendants wrote to Plaintiffs about the deficiencies in their discovery responses, asking them to immediately supplement their response to Interrogatory No. 13. Puri Decl. at ¶ 12, **Exhibit G**. In response, Plaintiffs stood again by their objections stating that they "previously and accurately responded" to Interrogatory No. 13. *See id.*, **Exhibit H**. Yet, to date, *Plaintiffs have never supplemented their response to Interrogatory No. 13. See id.*

In addition, Plaintiffs never served a damage expert written report as required under Fed. R. Civ. P. 26(a)(2), which was due on August 7, 2017. *Id.* at ¶ 13. Consequently, Plaintiffs have never disclosed any information in support of their damage claim against the Oppenheimer Defendants, including any theories, calculations and evidence that they may rely upon to prove damage at trial against any of the Oppenheimer Defendants.

In fact, nearly four-years after filing this lawsuit, and with trial less than a month away, Plaintiffs apparently still do not know which theory (or theories) of damage they are pursuing against the Oppenheimer Defendants, as they have received conflicting information from the Plaintiffs over the past week about which theories of damage Plaintiffs intend to present to a jury. *See* Puri Decl. at ¶ 14. Specifically, on September, 3, 2019, Plaintiffs served a proposed jury instruction which included an instruction seeking only a lost profits award. *See id.*. One week later, on September 9, 2019, a week after the deadline had passed to serve proposed jury instructions, Plaintiffs sent the Oppenheimer Defendants a "revised" set of jury instructions (without leave of court) containing instructions seeking a reasonable royalty award (along with a lost profits award). *See id*.

## III. ARGUMENT

A motion *in limine* is a procedural mechanism to limit in advance testimony or evidence in a particular area. *United States v Heller*, 551 F.3d 1108, 1111-12 (9th Cir. 2009). Motions in limine serve to "streamline trials and settle evidentiary disputes in advance, so that trials are not interrupted mid-course for the consideration of lengthy and

complex evidentiary issues." *Ellis v. Navarro*, 2012 U.S. Dist. LEXIS 116491, at *4 (N.D. Cal. Aug. 17, 2012) (citation omitted).

FRCP 26(a)(1) requires three separate categories of disclosures, including a "computation of each category of damages claimed by" a party. Fed. R. Civ. P. 26(a)(1)(A)(iii). "Plaintiff should provide its assessment of damages in light of the information currently available to it in sufficient detail so as to enable each of the multiple Defendants in this case to understand the contours of its potential exposure and make informed decisions as to settlement and discovery." *See Frontline Med. Assoc. v. Coventry Health Care*, 263 F.R.D. 567, 569 (C.D. Cal. 2009). A computation of damages requires "some analysis" including at a minimum the time period for which the Plaintiffs are claiming damages, their computation of lost profits and a description of expenses. *See id.* There are limited exceptions. "Plaintiff's precise method of calculation need not be disclosed to the extent the method is ***properly the subject of expert testimony and the parties will be turning over expert evidence in the future***." *See id.* (emphasis added). "Once document production has been substantially completed, however, Plaintiffs will have to provide more detailed disclosure of their calculations ***either by way of Rule 26 disclosure or through interrogatory responses***." *See City and County of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 222 (N.D. Cal. 2003) (emphasis added), *cited in Frontline Med. Assoc.*, at 570.

*"If a party fails to provide information or identify a witness as required by Rule 26(a) or 26(e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless*." Fed. R. Civ. P. 37(c)(1). "In addition to or instead of this sanction, the court on motion and after given an opportunity to be heard: (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure; (B) may inform the jury of the party's failure; and (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi)." *See id.*

Rule 26(e) provides that a "party who has … responded to an interrogatory … must supplement or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."

Plaintiffs, as the alleged patent owner, bear the burden of proof with respect to all damage claims, including as to any claim for lost profits or a reasonable royalty. *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Lucent Tech., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2013). Lost profits cannot be awarded to a patentee unless the patent holder can prove infringement and that there is a reasonable probability that the patentee would have made the infringer's infringing sales "but for" the infringement. *DSU Med. Corp. v. JMS Co., Ltd.*, 296 F. Supp. 2d 1140, 1148 (N.D. Cal. 2003) (citing *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1577 (Fed. Cir. 1989)). "But for" causation requires "reliable economic evidence" based on "sound economic proof of the nature of the market and the likely outcomes with infringement factored out of the economic picture." *Grain Processing Corp.*, 185 F.3d at 1350. Similarly, the economic evidence or analysis or calculations must be sufficient to guide a fact-finder in determining the measure of Plaintiffs' lost profits. *Linear Tech. Corp. v. Micrel, Inc.*, 2006 U.S. Dist. LEXIS 96860, at *262 (N.D. Cal. 2006) (excluding expert testimony on patent damages "as unreliable because (1) the calculations are not based upon sufficient facts or data and (2) the calculations are not the product of reliable principles and methods").

The Federal Circuit has enumerated the following four-part "Panduit test" that must be met in order for the patentee to be awarded lost profits: (1) demand for the patented product, (2) absence of acceptable noninfringing substitutes, (3) manufacturing and marketing capability to exploit the demand, and (4) the amount of profit the patentee would have made. *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978); *Calico Brand, Inc. v. Ameritek Imps., Inc.*, 527 Fed. Appx. 987, 995

(Fed. Cir. 2013). A patentee is not entitled to lost profits "if the patentee fails to establish any of the [Panduit] requirements." *Vnus Med. Techs., Inc. v. Diomed Holdings, Inc.*, 2007 U.S. Dist. LEXIS 80863, *4 (N.D. Cal. 2007), citing *SmithKline Diagnostics, Inc. v. Helena Laboratories Corp.*, 926 F. 2d 1161, 1165 (Fed. Cir.1991) (emphasis added).

A reasonable royalty is "merely the floor below which damages shall not fall." Bandag, Inc. v. Gerrard Tire Co., 704 F.2d 1578, 1583 (Fed.Cir.1983). Two approaches have been adopted for calculating a reasonable royalty. The first, the analytical method, focuses on the infringer's projections of profit for the infringing product. See TWM Mfg. Co. v. Dura Corp., 789 F.2d 895, 899 (Fed. Cir. 1986) (describing the analytical method as "subtract[ing] the infringer's usual or acceptable net profit from its anticipated net profit realized from sales of infringing devices"). The second, more common approach, called the hypothetical negotiation or the "willing licensor-willing licensee" approach, attempts to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began. See *Georgia–Pacific Corp. v. U.S. Plywood Corp.*, 318 F.Supp. 1116, 1120 (S.D.N.Y.1970*); Radio Steel & Mfg. Co. v. MTD Prods., Inc.*, 788 F.2d 1554, 1557 (Fed.Cir.1986) ("The determination of a reasonable royalty, however, is based not on the infringer's profit, but on the royalty to which a willing licensor and a willing licensee would have agreed at the time the infringement began.");

In this case, Plaintiffs have failed to provide any Rule 26(a)(1) Initial Disclosures, including any computation of damages of lost profits or a reasonable royalty, as required under Rule 26(a)(1), and they failed to respond and/or supplement their response to Defendants' interrogatory seeking the basis of Plaintiffs' damage claim, and an identification of all evidence and theories that Plaintiffs intend to rely upon at trial for damages, in clear violation of Rule 26(e). At the same time, Plaintiffs have never produced any damage expert report, and have never disclosed or identified any evidence, testimony, or information (such as an expert report) that would support a finding that any of the four Panduit factors have been met; that Plaintiffs would have profited "but for"

Defendants' alleged infringement; or that Plaintiffs are entitled to any reasonable royalty under either the analytical method or the hypothetical negotiation approach. Plaintiffs have also never provided any economic evidence or analysis or calculations to guide a fact-finder in determining the measure of any lost profits or royalty. Similarly, in the same vein, Plaintiffs never disclosed or identified any evidence, testimony, or expert opinion to determine a demand for the patented or the availability of noninfringing substitutes, and adamantly refused to answer Defendants' interrogatory seeking the basis of their damage claim (including any evidence or damage theories that they might assert) against any of the Oppenheimer Defendants.

Accordingly, under FRCP 37, Plaintiffs should be precluded from presenting any argument, evidence or witness at trial on any damage theory due to their complete failure to disclose any damage contentions or evidence during discovery or otherwise. If they intended to seek damages, Plaintiffs have no excuse for failing to provide their damage contentions and evidence from the Oppenheimer Defendants. This case has been pending for nearly four-years; Plaintiffs have had Oppenheimer Cine Rental's sale records for more than three and one half-years; and Plaintiffs have had every opportunity to disclose their damage theories and evidence as part of their Initial Disclosures and before discovery closed. At the same time, the Oppenheimer Defendants would clearly be prejudiced if Plaintiffs were now allowed to introduce their damage theories, calculations and evidence for the first time shortly before trial.

## IV. Conclusion

For the foregoing reasons, the Oppenheimer Defendants respectfully request this Court preclude Plaintiffs from presenting any argument, evidence or witness at trial on the issue of damages against the Oppenheimer Defendants. In addition, the Oppenheimer Defendants respectfully request that this Court impose monetary sanctions on Plaintiffs for the fees and cost associated with preparing this motion *in limine* and responding to Plaintiffs' multiple versions of jury instructions with inconsistent instructions on Plaintiffs' proposed damage awards.

Dated: September 16, 2019

FOX ROTHSCHILD LLP

By: /s/ Ashe P. Puri
James E. Doroshow
Ashe P. Puri
Attorneys for Defendants OPPENHEIMER CINE RENTAL, LLC; OPPENHEIMER CAMERA PRODUCTS, INC.; MARTY OPPENHEIMER