MARK J. YOUNG
Fla. Bar No. 0078158
Pro Hac Vice
myoungpa@gmail.com
MARK YOUNG, P.A.
1638 Camden Avenue
Jacksonville, FL 32207
Tel.: 904-996-8099
Fax: 904-980-9234

Attorney for Oceanic Production Equipment, Ltd. and Jordan Klein Sr.

David A. Peck
SBN 171854
Coast Law Group LLP
1140 South Coast Highway 101
Encinitas, California 92024
Tel. 760.942.8505 x108
Fax 760.942.8515
Email dpeck@coastlawgroup.com

Attorneys for Oceanic Production Equipment, Ltd. and Jordan Klein Sr.

James E. Doroshow (SBN 112,920)
jdoroshow@foxrothschild.com
Ashe Puri (SBN 297,814)
apuri@foxrothschild.com
FOX ROTHSCHILD LLP
10250 Constellation Blvd., Suite 900
Los Angeles, CA 90067
Tel. (310) 598-4150
Attorneys for Defendants Oppenheimer Cine Rental, LLC, Oppenheimer Camera Products, Inc., and Marty Oppenheimer

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

VOICE INTERNATIONAL, INC., a California corporation; DAVID GROBER, an individual,

Plaintiffs,

vs.

OPPENHEIMER CINE RENTAL, LLC, a Washington corporation; OPPENHEIMER CAMERA PRODUCTS, INC., a Washington corporation; MARTY OPPENHEIMER, an individual; JORDAN KLEIN, SR., an individual; JORDAN KLEIN, JR., an individual; JOHN DANN, an individual; Mako Products, an unknown entity, Oceanic Production Equipment, Ltd., a Bahamian company; and DOES 1-10, inclusive,

Defendants.

Case No. 2:15-cv-08830-JAK-KS

*The Honorable John A. Kronstadt, Courtroom 750*

**DEFENDANTS' RESPONSE TO PLAINTIFFS' RESPONSE TO COURT'S ORDER TO PRODUCE CHARTS SUPPORTING LOST PROFITS CLAIM [DKT. 390]**

Complaint Filed: November 12, 2015

**Table of Contents**

I. INTRODUCTION ..... 3
II. BACKGROUND ..... 5
III. NEW ENTRY ..... 8
IV. SETTLEMENT STATEMENT ..... 9
V. SUPPLEMENTAL DISCOVERY ..... 9
VI. NO EVIDENCE OF PROFITS ..... 12
VII. TWO-PLAYER MARKET FALLACY ..... 13
VIII. NO EVIDENCE OF CAPABILITY TO MEET DEMAND ..... 16
IX. UNTIMELY PRODUCTION ..... 17
X. HARM ..... 18

**I. <u>INTRODUCTION</u>**

The Court [Dkt. 382, p. 3/11] directed Plaintiffs to prepare a summary chart regarding the basis for the data proffered in Dkt. 374-5, including pin citations to the documents that support each entry on the summary, by October 7, 2019. The Court directed that the chart must identify which of those documents were produced after the close of discovery. The Court also directed Plaintiffs to provide an evidentiary basis for the assertion that there are only two players in the relevant market.

The Court directed Defendants to respond by October 15, 2019, including with explanation as to the following: (i) what additional information, if any, is needed to respond, e.g. communications with customers and/or experts; (ii) how much time would be necessary to gather such information; and (iii) any claimed, resulting prejudice from the timing of the disclosure of Plaintiffs' evidence.

Plaintiffs did not comply with the Court's Order because they failed to identify any documents they produced in this lawsuit (by pin citations or otherwise) supporting the basis for their untimely lost profits damage calculation shown in Dkt. 374-5. In fact, Plaintiffs merely resubmitted the same lost profits chart again (Dkt. 390-1) that they submitted in their opposition to Defendants' Motion in Limine, except that in a footnote to their chart, Plaintiffs refer generally to documents they claimed were produced in a completely different lawsuit to which, for example, the Oppenheimer Defendants were not even a party. They also generally refer to documents that they claim "were also always in the possession of Klein Sr./OPEL," which again has no bearing on their damages against the Oppenheimer Defendants, nor does it explain why they could not identify their damage claim against any other defendant. By failing to identify any documents that they produced to support their damage calculation, it is also clear that

Plaintiffs in fact never produced any documents to support their untimely damage calculation reflected in Dkt. 374-5.

Given Plaintiffs' failure to produce any documents during discovery supporting their lost profits calculation, Defendants are at a complete loss as to what lost profits the Plaintiffs are now seeking and their grounds for seeking lost profits. As shown by the following few examples, by resubmitting the same damage chart again, by their own admission, Plaintiffs cannot identify a single document where they ever disclosed during discovery that they were seeking lost profits, including based on any of Oppenheimer Cine Rental's clients. Plaintiffs also cannot identify a single document that they ever produced during discovery where they identified what damages they now claim they "would have billed" to any of Oppenheimer Cine Rental's clients.[1] The same rationale applies to the other Defendants.

Plaintiffs' failure to identify a single document produced during discovery to support their lost profits damage chart is obviously prejudicial to Defendants in this case. Plaintiffs have completely deprived Defendants of any opportunity to consult with a damages expert or conduct discovery from Plaintiffs, any third party customers or any other witness Plaintiffs may now be relying upon to establish lost profits.

Given the total absence of Plaintiffs' damage claim during discovery, Defendants respectfully request that this Court grant Defendants' Motion in

---

[1] Plaintiffs only state in their chart that documents were "in Defendants' possession before they were received by Plaintiffs." Defendants do not understand what Plaintiffs mean by this statement, but in any event, it is clear that Plaintiffs have admittedly failed to produce during discovery any evidence or arguments supporting their untimely damage chart.

Limine precluding Plaintiffs from offering any arguments, evidence or witnesses at trial on the issue of damages.

## II. BACKGROUND

The parties have been litigating this case for about four years. Plaintiffs initiated this lawsuit against the Oppenheimer Defendants on November 12, 2015. The discovery cutoff for the Oppenheimer Defendants was April 10, 2017 [Dkt. 57, p. 2]. The discovery cutoff for Oceanic Production Equipment Ltd. (OPEL) was April 30, 2018 [Dkt. 224, p. 1].

To their own detriment, Plaintiffs squandered every opportunity to advance a claim for damages. Plaintiffs failed to provide any initial disclosures. Plaintiffs did not provide a computation of each category of damages, as required by Rule 26(a)(1)(A)(iii) of the Federal Rules of Civil Procedure. After failing to provide initial disclosures, even when prompted by discovery requesting computations and evidence of damages, Plaintiffs again chose to withhold responsive information. [Dkt. 357, p. 5]. Plaintiffs also chose not to provide any expert report in support of a damages claim. These facts are undeniable.

In an order [Dkt. 311, p. 2] dated May 13, 2019, the Court set September 16, 2109 as a deadline for all pretrial documents, including motions in limine. Defendants timely moved to exclude evidence of damages at trial. [Dkts. 344, 357, 358]. The deadline for responses was September 23, 2019 [Dkt. 311, p. 2]. Plaintiffs responded to Defendants' motions on September 23, 2019 (herein, "Plaintiffs' September 23, 2019 MIL Response") [Dkt. 374]. A final pretrial conference, status conference regarding disputed exhibits, and hearing on motions in limine was scheduled [Dkt. 311, p. 2] and held on September 30, 2019. Each party had notice and opportunity to present argument.

Plaintiffs attached several exhibits to their response [Dkt. 374] filed on September 23, 2019. The first exhibit [Dkt. 374-1] is a damages report provided by Plaintiffs to other defendants in an entirely different lawsuit. The report

consists largely of snippets of law relating to damages and self-serving conclusory assertions by Plaintiffs. The report ***was not provided*** to Defendants in this lawsuit at any time prior to Plaintiffs' September 23, 2019 MIL Response. Moreover, Plaintiffs' report does not include any damage theories or claims against the Oppenheimer Defendants, much less address any of the untimely damage theories that Plaintiffs are now offering on the eve of trial against the Oppenheimer Defendants.

The second exhibit [Dkt. 374-2] is 84 pages of emails, invoices, checks and agreements that apparently relate to business by Motion Picture Marine, Inc., who is not a party in this case. All of the items are dated more than six years before the commencement of this lawsuit. All of the documents include a bates stamp that has not been used in this lawsuit.

The third exhibit [Dkt. 374-3] is 114 pages of emails, invoices, checks and agreements that apparently relate to business by Motion Picture Marine, Inc., who is not a party in this case. All of the items are dated more than six years before the commencement of this lawsuit. All of the documents include a bates stamp that has not been used in this lawsuit.

The fourth exhibit [Dkt. 374-4] is ten pages of tables, an alleged statement by Matt Kutchner and some photographs. Most of the table entries have dates that precede this lawsuit by more than six years. All of the entries precede the date on which Defendant OPEL was formed, May 29, 2013. All of the entries precede the close of the Mako Products, Inc. bankruptcy, October 7, 2014. None of the documents are bates marked. None of the documents was provided to Defendants in this lawsuit at any time prior to September 23, 2019.

The fifth exhibit [Dkt. 374-5] is a table manufactured by Plaintiffs for their response [Dkt. 374]. Several entries in the table precede the date of this lawsuit by more than six years. OPEL was not named as a defendant until the First Amended Complaint (FAC) [Dkt. 36], which was filed on June 15, 2016. Many of the entries precede the date of the FAC by more than six years. Many of the entries

precede the date on which Defendant OPEL was formed, May 29, 2013. Many of the entries precede the close of the Mako Products, Inc. bankruptcy October 7, 2014. This document is not bates marked. It was not provided to Defendants in this lawsuit at any time prior to September 23, 2019.

On October 7, 2019, in response to the Court's September 30, 2019 order [Dkt. 382], Plaintiffs filed Dkt. 390. In their response [Dkt. 390] Plaintiffs attach as Exhibit 1 [Dkt. 390-1] a new version of the previous table [Dkt. 374-5]. Again, Several entries in the table precede the date of this lawsuit (November 12, 2015) by more than six years. Such claims are time barred under 35 USC §286. OPEL was not named as a defendant until the First Amended Complaint (FAC) [Dkt. 36], which was filed on June 15, 2016. Many of the entries precede the date of the FAC by more than six years. Such claims are time barred as against OPEL under 35 USC §286.. Many of the entries precede the date on which Defendant OPEL was formed, i.e., May 29, 2013. Such claims are illogical and are not supported by any evidence. Many of the entries are for actions of Mako Products, Inc. and precede the close of the Mako Products, Inc. bankruptcy October 7, 2014. Such claims are barred by principles of res judicata[2]. Additionally, the new table Dkt. 390-1 adds a new entry for OPEL for 09/07/12, an entry that was not included in the previous table [Dkt. 374-5]. That new entry precedes OPEL's formation and the close of the Mako Products, Inc. bankruptcy. The new table [Dkt. 390-1] was

---

2 This Court has mandated: "Throughout Mako's bankruptcy proceedings, Plaintiffs were aware of its alleged infringement. They sought to participate in those proceedings to assert claims. That request was denied by the bankruptcy court. Plaintiffs did not seek any appellate review. Because those findings have res judicata effect, Plaintiff is barred from seeking to relitigate them in this action. Thus, it cannot advance the claim that the Kleins, Dann, and OPEL are successors of Mako." March 7, 2017 Order, Dkt. 118, pp 13-14.

not provided to Defendants in this lawsuit at any time prior to the October 7, 2019 response.

Plaintiffs' new table [Dkt. 390-1] is unavailing as it relies heavily on documents provided after the close of discovery, including Bates DG 09465, 09466, 09468, 09471, and documents from an earlier lawsuit involving different parties, including BSA 0343, 0346, 0347, 0352, and ASL 1050. The new table [Dkt. 390-1] also relies upon documents for Mako Products rentals, for which damages are barred by res judicata (see footnote 1), including DG1901, DG 1902, DG 1904, DG 1905, DG, 1908, and DG 1914. None of the documents provide financial information from which Plaintiffs alleged profit can be computed. None of the documents constitute evidence of any Panduit factor or "but for" analysis. Thus, the new chart is an assertion not supported by actual evidence.

## III. NEW ENTRY

Plaintiffs are not being forthright with this Court and have not been honest with Defendants. With a sleight of hand, and *without leave*, Plaintiffs surreptitiously slipped a new entry into the new table [Dkt. 390-1] for OPEL. Specifically, the new entry is dated 9/7/12, which precedes OPEL's formation and the close of the Mako Products bankruptcy. That entry does not appear in the previous table [Dkt. 374-5]. That entry is barred by res judicata and logic, because it precedes OPEL's formation and the close of the Mako Products bankruptcy (*See footnote 1*).

Plaintiffs not only continue to pad their damages table with unsupportable entries, but they do so with subterfuge. Plaintiffs' declare that they "are resubmitting doc. 374-5 with some clarifications to meet the Court's requirements." [Dkt. 390, p. 2 of 4, lines 7-8]. Conspicuously absent from their brief [Dkt. 390] is any mention of the new entry, which cannot by any stretch of the imagination be deemed a mere "clarification."

**IV. <u>SETTLEMENT STATEMENT</u>**

On March 14, 2018, United States Magistrate Judge Karen L. Stevenson issued an Order Setting a Settlement Conference [Dkt. 234]. The order instructed the parties to exchange Settlement Conference Statements for a limited purpose. The Order instructs: "These Statements **shall not** become a part of the file of the case, but shall be for the use of the Magistrate Judge in preparing for and conducting the settlement conference." [Dkt. 234, p. 3 of 5] Plaintiffs now seek to contravene the Order and Federal Rule of Evidence 408, by using their Settlement Conference Statement [Dkt. 387-1] to support Plaintiffs' claim of lost profits.

On Friday, October 4, 2019, Plaintiffs filed an ex parte application [Dkt. 387] to admit an April 11, 2018 Settlement Conference Statement ("Settlement Statement") [Dkt. 387-1], under the pretense that the Settlement Statement is being offered to prove that Defendants had notice of Plaintiffs' damages claim as of April 11, 2018. On Monday, October 7, 2019, Defendants timely opposed Plaintiffs' application as improper and untimely, and prohibited by rules of evidence [Dkt. 388].

Plaintiffs have now abandoned the pretense that the Settlement Statement is being offered to prove that Defendants had notice. Plaintiffs now contend that the Settlement Statement is evidence that supports Plaintiffs claim for damages. Plaintiffs refer to the Settlement Statement as "a disclosure of Plaintiffs' lost profits claim." Such use of the Settlement Statement to preserve a damages claim would run directly into Rule 408's prohibition of using the former to establish the latter. For this reason, and the reasons set forth in Defendants' opposition [Dkt. 388], the Court should deny Plaintiffs' application [Dkt. 387] and not consider the Settlement Statement in support of Plaintiffs' damages claim.

**V. <u>SUPPLEMENTAL DISCOVERY</u>**

Plaintiffs are not being forthright with this Court and have not been honest with Defendants regarding discovery. Plaintiffs claim that untimely production

was made at the request of Mark Young, counsel for OEPL To the contrary, after the close of discovery, when Plaintiff David Grober demanded that OPEL supplement its discovery with any newly discovered responsive documents that were not previously produced, Mr. Young reciprocated, asking Plaintiffs to do the same, i.e., to be sure to supplement their discovery with any newly discovered responsive documents that were not previously produced, consistent with Fed. R. Civ. P. 26(e). This was not an expansion of discovery or a request for voluminous dumps of documents that Plaintiffs' possessed for years. Rather, it was reminder of an existing obligation imposed by the Federal Rules of Civil Procedure, with which Plaintiffs still failed to comply.

Even after being reminded of their discovery obligations, Plaintiffs failed to respond to discovery on damages. During discovery, Defendant OPEL properly requested, from Plaintiff Grober and from Plaintiff Voice International, evidence for Plaintiffs' damages claims, which Plaintiffs ignored. Specifically, Interrogatory No. 13 of Defendant Oceanic Production Equipment, LTD's Interrogatories served on February 16, 2018 and Plaintiffs' response provide:

> **INTERROGATORY NO. 13:** Describe all bases for Plaintiffs' damages claims against each Defendant, including, but not limited to, each legal theory under which damages are sought and evidence in support of each such legal theory, and calculations supporting all damages that Plaintiffs' claim.
>
> **RESPONSE TO INTERROGATORY NO. 13:** Plaintiff objects to this interrogatory as premature, in that fact discovery is ongoing and Plaintiff does not yet have all the facts to complete its damages analysis. Plaintiff expects to fully supplement this response.
>
> [Dkt. 357-1, ¶ 6; Dkt. 357-2]

To their own detriment, even after being reminded, Plaintiffs never supplemented their response.

Likewise, Plaintiffs failed to respond to or supplement their responses to other discovery for damages also served on February 16, 2018 [Exhibit 1 ¶1; Exhibit 2], as follows:

**DOCUMENT REQUEST NO. 25:** Documents sufficient to show, on a monthly or quarterly basis, receivables, receipts, sales, rentals, prices, gross revenue, expenses, costs, profits, profit margins, terms and conditions of sale or rental, for Plaintiffs' business involving Stabilization Systems, from the earliest date for which Plaintiffs seek damages in this lawsuit until present.

**RESPONSE TO DOCUMENT REQUEST NO. 25:**

Plaintiff will produce the requested documents.

**DOCUMENT REQUEST NO. 28:** All documents relating to any profits Grober contends it has lost or may lose as a result of OPEL's alleged infringement of the Patent.

**RESPONSE TO DOCUMENT REQUEST NO. 28:** Plaintiffs are still doing discovery and ongoing preparation for trial and reserve the right to produce documents as they are obtained when applicable. Plaintiff Grober has been traveling outside of California and does not have access to many records. He will provide them once he returns to California.

Plaintiff David Grober and Plaintiff Voice International responded identically to these requests. Plaintiffs withheld calculations and theories for all damage claims. Plaintiffs withheld initial disclosures relating to damages. Even when reminded of their obligation under Fed. R. Civ. P. 26(e) to supplement responses, Plaintiffs chose not to do so.

## VI. NO EVIDENCE OF PROFITS

While Plaintiffs assert profits, they have provided no documents or information from which Plaintiffs' profits, if any, can be determined. Despite initial disclosure requirements and Defendants' discovery, particularly Document Request No. 25, Plaintiffs withheld financial records from which profits can be determined. Plaintiffs have left Defendants with no way of determining Plaintiffs' profits. Without such information, Defendants could not retain an accounting expert to compute Plaintiffs profits.

Plaintiffs withheld financial records from which profits can be determined. Plaintiffs did not provide any information or documentation on receivables, receipts, sales, gross revenue, taxes, expenses, costs, terms and conditions of sale or rental, or other information that would allow a relaible computation of profit. Plaintiffs did not provide such infromation during discovery or after discovery. Without such information and documentation, it would have been futile for Defendants to retain an accounting expert to independently determine Plaintiffs' profits, if any.

After withholding information and documents relating to alleged lost profits, Plaintiffs make conclusory allegations of lost profits. None of the chart entries or referenced documents contain any information from which Plaintiffs profits can reliably be determined. In their new table [Dkt. 390-1], Plaintiffs consistently assert that their "profits" substantially exceed the gross receipts of all Defendants combined. While the combined total alleged gross receipts in the table is $239,106.25, Plaintiffs allege lost profits of $441,800, an amount that exceeds Defendants' alleged gross revenue by 85%, making it nearly double Defendants' alleged gross revenue. There is simply no evidentiary basis for Plaintiffs' incredible damages claim.

## VII. TWO-PLAYER MARKET FALLACY

Plaintiffs erroneously contend that an exhibit [Dkt. 390-2] to their brief summarizes Plaintiffs' contention and supporting evidence of a two-player market. The exhibit [Dkt. 390-2] was manufactured by Plaintiffs for their response [Dkt. 390]. It was not previously provided to Defendants.

Even a cursory review of the exhibit [Dkt. 390-2] reveals that the so-called evidence does not come close to supporting a finding of a tow-player market. First, Plaintiffs refer to the Alvarez email, which is indamissible hearsay, a communication by Luis Alvarez offered to prove the truth of the matter asserted. Plaintiffs wrongfully marked the email DG03887 from Mr. Alvarez as "CONFIDENTIAL-- ATTORNEY'S EYES ONLY." In fact, the email was part of a file consisting of 617 pages, in which every page was wrongfully marked "CONFIDENTIAL-- ATTORNEY'S EYES ONLY." The email is attached to Plaintiffs' exhibit [Dkt. 390-2, p. 5 of 11.] Even a cursory review of the hearsay email shows that it does not address the market, much less a two-player market. Rather, it indicates that Mr. Alvarez has a lower bid. It does not mention who made the lower bid. It is not clear if the lower bid really exists or is mentioned by Mr., Alvarez as a negotiating strategy.

Additionally, the email is stale. Market conditions in 2004 are irrelevant to damages issues in this case.

Next, Plaintiffs refer to an October 22, 2003 letter DG04054 from David Grober to Shane Hurlbut. The letter is hearsay, an out of court statement offered to prove the truth of the matter asserted. It is unknown if the letter had ever been received by Mr. Hurlbut. Regardless, the letter is a quote from Plaintiffs, which does not evidence a two-player market.

Additionally, the letter is stale. Market conditions in 2003 are irrelevant to damages issues in this case.

Next Plaintiffs refer to a 2008 email DG015379 from Norberto Garcia, requesting a quote for a gyrostabilizer. The email is hearsay, an out of court statement offered to prove the truth of the matter asserted. It is unknown if the email was actually sent by Mr. Garcia. Regardless, the email is a request for a quote, which does not evidence a two-player market.

Additionally, the email is stale. Market conditions in 2008, which is more than 6 years before this lawsuit commenced, are irrelevant to damages issues in this case.

Next Plaintiffs refer to an email string DG016033 between David Grober and Leah Sadallah, in which David Grober solicits business, and Leah Sadallah politely turns him down. The email string is hearsay. It does not address the market, much less whether the market is a two-player market.

To the contrary, this email string acually evidences that the market includes alternatives. As noted by Plaintiffs, David Grober made the email inquiry after OPEL ceased further use of the MakoHead. Yet, Original Productions turned down the Perfect Horizon and the Deadliest Catch is still produced on boats at sea, without use of Plaintiffs' or Defendants' products. There must be an alternative.

This email also evidences that Plaintiffs cannot meet the "but for" test. Even after the MakoHead was unavailable, Original Productions turned down business with Plaintiffs.

Next, Plaintiffs refer to an informal question and answer session with Ryan Servant that allegedly took place in 2004. The session is hearsay. It appears to be taken out of context. It is incredibly unclear. It does not address the market, much less whether the 2004 market is a two-player market. Mr. Servant's relationship with Plaintiffs and his motivation for the statements are unknown. Also unknown is Mr. Servant's knowledge of the market. Interestingly, Servant opines that the technologies are different between the two stabilizers.

Additionally, the session is stale. Market conditions in 2004, which is more than 6 years before this lawsuit commenced, are irrelevant to damages issues in this case.

Plaintiffs reference a video DG9082, which appears to be a heavily edited self-serving promotional piece manufactured by Plaintiffs. As noted above in Section IV, Mark Young did not request the document dump of which the video was a part. The video is replete with hearsay. It chronicles events from long before this lawsuit commenced, and is irrelevant to damages issues in this case.

Next, Plaintiffs go so far as to contend that because different parties in an earlier case *unsuccessfully* alleged antitrust counterclaims, that the market at all times relevant in this later action must be a two-player market. In dismissing the counterclaims, the Hon. Nora M. Manella found that the defendants' counterclaims were nothing more than unsupported conclusory allegations:

> "Here, Mako and Spectrum posit the relevant product market to be "stabilization system[s] for television and film cameras." Mako's Countercls. at 8, ¶ 5; Spectrum's Countercls. at 9, ¶ 5. They fail, however, to define a relevant geographic market. Nor do they allege the portion of the relevant market allegedly dominated by Grober's patented device. Mako and Spectrum merely allege in conclusory language that Grober "has a dangerous probability of attaining monopoly power through predatory and anti-competitive conduct." Mako's Countercls. at 9, ¶ 8; Spectrum's Countercls. At 9, ¶ 8."
>
> *David Grober v. Mako Products Inc et al.*, Case 2:04-cv-08604-JZ-DTB, Dkt. 49 (May 2, 2005), Page 6 of 13.

A failed argument by different parties in a different lawsuit from 2005 has no relevance to the issue of market conditions at times relevant to the

present lawsuit, and certainly does not support a finding of a two-player market.

Next Plaintiffs argue that the video DG9082 referenced above also shows the MakoHead operating side-by-side with a Perfect Horizon around 2006. Plaintiffs also attach a photo [390-2, p. 11] that allegedly depicts such a test in 2008. Plaintiffs seem to argue that if the two stabilizers do their job of stabilizing, then the market must be a two-player market. The reasoning is illogical. Two stabilizers that have very different hardware and configurations, may perform similarly. But that does not support a finding of infringement or a finding of a two-player market. They may exist in a market with many other competing alternatives that have allowed (and continue to allow) film crews to capture stable video without use of either a MakoHead or Perfect Horizon.

Additionally, the video and photo are stale. Market conditions in 2006 and 2008, which is more than 6 years before this lawsuit commenced, are irrelevant to damages issues in this case.

## VIII. NO EVIDENCE OF CAPABILITY TO MEET DEMAND

Plaintiffs produced no evidence to support an adequate manufacturing, marketing and staffing capability to meet demand. Exhibit 3 is replete with mere conclusory assertions. Perfect Horizon is only rented with a trained technician, which creates staffing issues. Additionally, film crews may not want an additional technician on board. In contrast, the MakoHead did not require a technician. Inventory is not addressed. Production schedules and costs are not addressed. Marketing schedules and costs are not addressed. The geographic market is not defined. The demand is not defined. There is simply no way to determine what was within Plaintiffs' capabilities in terms of staffing, finances, inventory and production. These are complete unknowns.

Plaintiffs again refer to the video DG9082, which is old, irrelevant and does not support a capability to meet demand at times relevant in this action. Plaintiffs also refer to an undated advertisement [Dkt. 390-3, p. 4] under the name of Motion Picture Marine, a company that is not a party to this case and believed to no longer exist. Plaintiffs refer to a 2005 article [Dkt. 390-3, p. 5], which says nothing about meeting demand. Plaintiffs refer to an old marketing tri-fold [Dkt. 390-3, p. 6] for Motion Pictiuure Marine. This document was produced after discovery closed. Plaintiffs refer to another old advertisement [Dkt. 390-3, p. 6], which again is undated and references Motion Picture Marine and a predecessor product, the Hydro Gyro. This document was produced after discovery closed.

In sum, Plaintiffs failed to comply with initial disclosure and discovery requirements, and now cannot support a damages claim with anything other than conclusory statements, innuendo, supposition and incompetent opinion from Plaintiff David Grober.

## IX. UNTIMELY PRODUCTION

Exhibit 4 [Dkt. 390-4] to Plaintiffs brief is a remarkable attempt to shift blame for Plaintiffs own discovery failures. Plaintiffs failed to provide any initial disclosures. Plaintiffs did not provide a computation of each category of damages, as required by Rule 26(a)(1)(A)(iii) of the Federal Rules of Civil Procedure. After failing to provide initial disclosures, even when prompted by discovery requesting computations and evidence of damages, Plaintiffs again chose to withhold responsive information. [Dkt. 357, p. 5]. Plaintiffs also chose not to provide any expert report in support of a damages claim. These facts are undeniable.

Discovery closed on April 30, 2018. Long after the close of discovery, on January 16, 2019, again on February 7, 2019 and even more recently, Plaintiffs "supplemented" their discovery responses. The documents were produced inexcusably late. Plaintiffs have no one to blame but themselves. Many

documents produced in the dump include dates. The context and dates reveal that Plaintiffs possessed these documents for years. Many of the documents are correspondence or invoices to or from Plaintiffs, or between third parties. Many are dated. The dates precede this lawsuit by years.

More importantly, even the documents produced late do not support a claim for damages in this case against the Defendants. What may have been argued years ago in an earlier case, under different market conditions, with different defendants, and different rentals, has no bearing on the damages issue in this case. What little can be gleaned from hearsay emails, old photographs and manufactured videos is not evidence that can support a damages claim.

**X. HARM**

Plaintiffs have failed to articulate its theories of lost profits in detail. Plaintiffs' conclusory statements without supporting evidence are precisely the sort of conclusory theory that the Court should exclude.

Plaintiffs' non-disclosure of damages computations is not harmless. In fact, the failure to disclose damages computations at any time before the non-expert and expert discovery cutoffs, has prevented Defendants from taking necessary discovery into, and performing necessary analysis of Plaintiffs' damages computations, including with the help of appropriate lay witnesses and experts. Since the discovery deadlines have passed, and this case is at the eve of trial, Defendants cannot depose Plaintiffs about any calculations or locate, identify and disclose lay or expert witnesses who could analyze and help Defendants respond to Plaintiffs assumptions regarding damages.

Plaintiffs' failure to disclose their damages computations as required by Rule 26 cannot be deemed harmless and the prejudice to Defendants is undeniable.

If the Court were to allow Plaintiffs to now develop a damages claim, it would be necessary to reopen discovery to allow Defendants a reasonable amount

of time to obtain and review plaintiffs financials, damages computations and damages evidence, and to consult with appropriate lay witnesses and hire experts to analyze the financials, computations and other evidence, and to prepare written reports, and be deposed. Defendants would require at least an accounting expert to accurately assess Plaintiffs' profits and an economic expert to opine on the *Panduit* factors. Additionally, Defendants would require time to identify additional witnesses willing to testify against Plaintiffs newly presented damages theories, including testimony of unwillingness to do business with Plaintiffs. Furthermore, Defendants would require an opportunity to depose David Grober, and other any other witnesses he may rely upon to support a damages claim. Further, Defendants would require time for additional motion practice to exclude overreaching damages claims, such as claims for transactions that occurred more than 6 years before this lawsuit.

Defendants estimate that at least six months would be required to complete these tasks after Plaintiffs provide their full, complete initial disclosures and responses to all damages discovery.

Excluding evidence of undisclosed damages, where the result otherwise would be to reopen discovery and motion practice and delay the trial date indefinitely is appropriate because Plaintiffs' nondisclosure is not harmless.

Lastly, this case has been pending for about 4 years and the case finally is at the eve of trial. The public policy interest of ensuring the integrity of the judicial process, including fairness through enforcing deadlines, mandates the exclusion of Plaintiff's damages evidence.

Dated: October 15, 2019

Respectfully submitted,

MARK YOUNG, P.A.

By: *s/Mark J. Young*

MARK J. YOUNG

Attorney for Defendants Oceanic Production Equipment Ltd. and Jordan Klein Sr.

David A. Peck
SBN 171854

By: *s/David A. Peck*

Attorney for Defendants Oceanic Production Equipment Ltd. and Jordan Klein Sr.

/s/ Ashe Puri
James E. Doroshow (SBN 112,920)
Ashe Puri (SBN 297,814)
FOX ROTHSCHILD LLP
10250 Constellation Blvd., Suite 900
Los Angeles, CA 90067
Tel. (310) 598-4150

Attorneys for Defendants Oppenheimer Cine Rental, LLC, Oppenheimer Camera Products, Inc., and Marty Oppenheimer